| | |
|---|---|
| **VIRGINIA & AMBINDER, LLP**<br>Marc A. Tenenbaum, Esq.<br>111 Broadway, Suite 1403<br>New York, New York 10006<br>Phone: (212) 943-9080<br>mtenenbaum@vandallp.com | Hearing Date: May 30, 2012 at 10:00 AM<br>Response Deadline: May 23, 2012 at 4:00 PM |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------x
In re:                                                                                             :    Chapter 11
                                                                                                        :    Case No. 12-22052 (RDD)
**HOSTESS BRANDS, INC.,** *et al.,*                                    :
                                                                                                        :    Jointly Administered
                                                            Debtors.                     :
---------------------------------------------------------------------------x

## MOTION OF BAKERY AND SALES DRIVERS LOCAL UNION NO. 33 INDUSTRY PENSION FUND FOR ENTRY OF AN ORDER ALLOWING AND DIRECTING PAYMENT OF ADMINISTRATIVE EXPENSES

Pursuant to §§ 503(b)(1)(A), 507(a)(2) and 1113(f) of Title 11 of the United States Code (the "**Bankruptcy Code**"), the Bakery and Sales Drivers Local Union No. 33 Industry Pension Fund (the "**Pension Fund**") respectfully moves this Court for an order authorizing and compelling debtor Hostess Brands, Inc., et al. (collectively the "**Debtors**") to pay all contributions due and owing to the Pension Fund, and award administrative expenses status with respect to the same.

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§157(b) and 1334 and the *Amended Standing Order of Reference* M10-468 dated January 31, 2012 by Chief District Court Judge Loretta A. Preska.

2.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.     The statutory predicates for relief sought herein are 11 U.S.C. §§ 503(b)(1)(A), 507(a)(2) and 1113(f).

## INTRODUCTION AND BACKGROUND

5.     On January 11, 2012 (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

6.     From the Petition Date through the present, the Debtor has continued to operate its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

7.     The Pension Fund is a multiemployer employee benefit plan as those terms are defined in §§ 3(3) and (37) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1002(3) and (37).  The Pension Fund is established and maintained according to the provisions of its Restated Agreement and Declaration of Trust.  The Pension Fund provides pension benefits to eligible participants employed by employers that are required to contribute to the Pension Fund pursuant to a collective bargaining agreement[1], and to eligible beneficiaries of such participants.  (Declaration of Joseph R. Swann, hereinafter the "**Swann Declaration**", ¶ 2.)

---

[1] Debtors' contribution obligation to the Pension Fund has been subject to several modifications over the past decade as a result of agreed upon extensions by the collective bargaining parties, the Debtors' prior bankruptcy and the Pension Fund's adoption of a Funding Improvement Plan pursuant to the Pension Protection Act of 2006 (the "**PPA '06**" ). In January 2001, the Debtors and the International Brotherhood of the Teamsters Local 246 (which was subsequently merged into Teamster Local Union 639) entered into a collective bargaining agreement mandating, the continuation of employer contributions to the Pension Fund. The collective bargaining agreement was effective retroactive to April 16, 2000 and established an expiration date of April 16, 2005. In February 2005 the collective bargaining agreement was extended by mutual agreement of the bargaining parties through April 16, 2006. In October 2005, the collective bargaining agreement was again extended, until August 1, 2010 by mutual agreement of the collective bargaining parties (the "**October 2005 Extension**").

In 2009 the Debtor emerged from bankruptcy. On February 8, 2009, the "Modifications to the IBC-IBT Local Agreements between Interstate Brands Corporation and Affiliates of the International Brotherhood of Teamsters to Exit Interstate Brands Corporation from Bankruptcy" (the "**Modification Agreement**") became effective. Pursuant to Section C of Appendix C of the Modification Agreement, "[i]f, at the expiration of any Long-Term Extension Agreement, an increase in contributions to a pension plan is required under the PPA '06 for the employees covered by such Long-Term Extension Agreement, IBC agrees to make the level of contributions required to comply with PPA '06 and proposed by the applicable Plan Trustees, but not to exceed a maximum increase of 10% per year." (The October 2005 Extension agreement between IBC and Local 639 constitutes a Long-Term Extension under the Modification Agreement. Specifically, Appendix A of the Modification Agreement lists the "Collective Bargaining

8. At all relevant times, the Debtor and Teamsters Local Union No. 639 (the "Union") have been parties to a collective bargaining agreement (the "**CBA**") pursuant to which the Debtor is obligated to contribute a specified amount to the Pension Fund in connection with each week of employment within the trade and geographical jurisdiction of the Union. (Swann Declaration ¶ Ex. 1-4.) At all relevant times, the Debtor has been required to submit monthly reports ("Reports") showing the number of covered employees per week worked and the corresponding amounts due to the Fund.

9. The Debtors have made no contributions to the Funds in connection with work performed by its covered employees from the Petition Date through the present. (Swann Declaration ¶ 11.)

10. The Debtors have submitted reports covering worked performed by each covered employee for the months of January, February, and March 2012. (Swann Declaration ¶ 12.)

11. Based on the above-referenced reports, in connection with the post-petition labor performed from January 11, 2012 through March 31, 2012, the Debtor owes a total of $183,623.68 in contributions to the Pension Fund. (Swann Declaration Ex. 6)

12. Pursuant to the Plaintiffs' Restated Agreement and Declaration of Trust, and the Agreement and Collection Procedure adopted by the Trustees of the Bakery and Sales Drivers Local No. 33 Industry Pension Fund dated March 19, 2003, an employer who fails to timely pay

---

Agreements and Long-Term Extension Agreements" of all IBT Local Unions, including Local 639. Page A-2 of Appendix A states that Local 639 had ratified a Long-Term Extension Agreement that expired August 1, 2010.)

Effective September 1, 2008, the Plan's funding status was categorized as "Seriously Endangered" under Internal Revenue Code §432(b), as amended by PPA'06; accordingly, the Pension Fund was required to implement a Funding Improvement Plan, including a schedule setting forth contribution rates. Consistent with the terms of the Modification Agreement cited above, under the enclosed Update Default Schedule, the Debtor's contribution rate in effect from September 1, 2011 through August 2012 is $179.32 per person per week. This is the contribution rate the Pension Fund administrator uses to ascertain the post-petition contributions owed to the Pension Fund.

3

required contributions is liable for liquidated damages in the amount of 20% of the total contributions owed.

13. Pursuant to the Plaintiffs' Restated Agreement and Declaration of Trust and the Agreement and Collection Procedure adopted by the Trustees of the Bakery and Sales Drivers Local No. 33 Industry Pension Fund dated March 19, 2003, an employer who fails to timely pay required contributions is liable for interest at the rate of 12% per annum from the date due through the date of payment.

## RELIEF REQUESTED

14. Pursuant to §§ 503(b)(1)(A), 507(a)(2) and 1113(f) of the Bankruptcy Code, the Pension Fund seeks entry of an Order authorizing and compelling the Debtor to remit as post-petition administrative expenses contributions totaling $183,623.68, interest totaling $2,761.25, and liquidated damages totaling $36,724.74. (Swann Declaration ¶¶ 12, 14, 15.)  The Pension Fund also requests that the Court direct the Debtors to remain current with respect to their post-petition obligations to the Pension Fund unless and until those obligations granting the Pension Fund and administrative expense claim in the amount of the outstanding.

15. Section 507(a)(2) of the Bankruptcy Code grants priority status to administrative claims and expenses enumerated in §503(b) of the Bankruptcy Code.  Among the administrative expenses entitled to payment under §503(b) are the "actual, necessary costs and expenses of preserving the estate including… wages, salaries, and commissions for services rendered after the commencement of the case."  11 U.S.C. § 503(b).  This list is not exclusive. See 11 U.S.C. §102(3). "Congress granted priority to administrative expenses in order to facilitate the efforts of the trustee or debtor in possession to rehabilitate the business for the benefit of all the estate's creditors." *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2nd Cir.

1986) (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950, 953 (1st Cir. 1976)). "Congress reasoned that unless the debts incurred by the debtor in possession could be given priority over the debts which forced the estate into bankruptcy in the first place, persons would not do business with the debtor in possession, which would inhibit rehabilitation of the business and thus harm the creditors." *Id*.

16.     The Court should allow an administrative expense if it arises from a post-petition "transaction between the creditor and the … debtor in possession", provided that the "consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession's operation of the business." *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2nd Cir. 2007). In the instant case, the Pension Fund seeks employee benefit contributions totaling $183,623.68 that were earned in exchange for post-petition work. Inasmuch as the employees' labor performed from January 11, 2012 through March 31, 2012 was beneficial to the debtor-in-possession's business operations, the Court should allow that amount as an administrative expense and instruct the Debtors to contribute that amount to the Pension Fund forthwith.

17.     In addition, the Pension Fund's claims for interest and liquidated damages are appropriately categorized as administrative expenses because they are directly tied to post-petition labor that was beneficial to the estate. See, e.g. *In re World Sales, Inc.*, 183 B.R. 872, 878 (Bankr. 9th Cir. 1995); *In re Sen-Wel Industries, Inc.*, 1993 WL 328488 (Bankr. W.D.N.Y. Mar. 17, 1993).

## RESERVATION OF RIGHTS

18.     The Pension Fund reserves all of its rights to supplement this Motion prior to or during the hearing thereon.

## NO PRIOR REQUEST

19. No prior request for the foregoing relief has been made to this or any other Court.

## NOTICE

20. Notice of this Motion has been provided to: (a) Debtors and their counsel, (b) the Office of the United States Trustee for the Southern District of New York, (c) counsel to the Official Committee of Unsecured Creditors, (d) counsel for the agent under the Debtors' debtor in possession financing facility, (e) counsel to the General Electric Capital Corporation, as agent under the Debtors' first lien asset-backed revolving credit facility, (f) counsel to Silver Point Finance, LLC, as agent under the Debtors' first lien term loan facility and third lien credit facility, (g) counsel to the Bank of New York Mellon Trust Company, as indenture Trustee for the Debtors fourth lien 5% secured convertible notes, (h) counsel to IBC Investors I, LLC, IBC Investors II,LLC and IBC Investors III, LLC, (i) counsel to the International Brotherhood of Teamsters, (j) counsel to the Bakery, Confectionary, Tobacco Workers & Grain Millers International Union, and (k) all parties who have filed requests for notice in these cases, which notice satisfies the Bankruptcy Code, the Federal Rues of Bankruptcy Procedure, the Local Rules of this Court and the Court's Administrative Order, Pursuant to Rule 1015(c) of the Federal Rules of Bankruptcy Procedure, Establishing Case Management and Scheduling Procedures dated February 21, 2012.

## WAIVER OF MEMORANDUM OF LAW

21. The Pension Fund respectfully requests a waiver of the requirement to submit a memorandum of law in connection with this motion because there are no novel or difficult legal issues presented herein.

WHEREFORE, the Pension Fund respectfully requests that the Court enter an order allowing and compelling immediate payment of its claim for administrative expenses totaling $223,109.67, and directing the Debtors to remain current with respect to their post-petition obligations to the Pension Fund unless and until these obligations are modified in compliance with the Bankruptcy Code pursuant to further order of this Court, together with such other and further relief as is just and proper under the circumstances.

Dated: New York, New York
       May 10, 2012

Respectfully submitted,

VIRGINIA & AMBINDER, LLP

By: /s/ *Marc A. Tenenbaum*
Marc A. Tenenbaum
111 Broadway, Suite 1403
New York, New York 10006
(212) 943-9080

*Counsel for Bakery & Sales Drivers Local No. 33 Industry Pension Fund*