Alan D. Halperin, Esq.  
Walter Benzija, Esq.  
Debra J. Cohen, Esq.  
**HALPERIN BATTAGLIA RAICHT, LLP**  
555 Madison Avenue, 9th Floor  
New York, New York 10022  
Phone: (212) 765-9100  
Fax: (212) 765-0964  
ahalperin@halperinlaw.net  
wbenzija@halperinlaw.net  
dcohen@halperinlaw.net  

Hearing Date: May 30, 2012 at 10:00 AM

*Counsel to Central Pension Fund*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------x  

| | |
|---|---|
| In re: | Chapter 11<br>Case No. 12-22052 (RDD) |
| **HOSTESS BRANDS, INC.** *et al.,* | Jointly Administered |
| Debtors. | |

------------------------------------------------------------x  

**REPLY OF THE CENTRAL PENSION FUND TO THE OMNIBUS OBJECTION OF DEBTORS AND DEBTORS IN POSSESSION TO MOTIONS OF NINE PENSION FUNDS AND THE BCT REQUESTING ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND IN FURTHER SUPPORT OF THE MOTION OF THE CENTRAL PENSION FUND FOR ENTRY OF AN ORDER ALLOWING AND DIRECTING PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

Central Pension Fund (the "Fund"), as and for its reply to the *Omnibus Objection of Debtors and Debtors in Possession to Motions of Nine Pension Funds and the BCT Requesting Allowance and Payment of Administrative Expense Claims* (the "Objection") and in further support of its motion (the "Motion") for entry of an order, pursuant to §§ 503(b)(1)(A), 507(a)(2) and 1113(f) the Bankruptcy Code, allowing, and directing the Debtors to pay, its administration expense claim for unpaid post-petition pension contributions due and owing under the CBAs[1], respectfully states as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

{00191357.3 / 0947-001 }

1. There are only three (3) issue raised in the Objection that may be attributable to the Fund's Motion: (a) whether any portion of the Administration Claim arises from contributions accrued as a result of employees' services performed prior to the Petition Date, (b) whether any portion of the Administration Claim is attributable to any underfunding due to historical investment losses and insufficient contributions received by the Fund, and (c) whether the Administration Claim ought to be paid only in connection with the resolution of the Debtors' several 1113 Motions, most likely under a chapter 11 plan. In each case, the answer is an unqualified "no".

2. Although the Debtors attempt to paint the Fund with the same broad brush as the motions made by the other funds, the Fund's Motion should and, indeed, must be treated on its own merits. Cutting through the verbiage of the Objection, the Debtors' real quarrel boils down to the fact that they would rather not have to pay the post-petition pension contributions for the very employees who make their efforts at reorganization possible. In other words, the employees should do 100% of the work but receive something less than 100% of the pay and benefits they are entitled to receive. While the reorganization efforts of the Debtor are important, in obtaining the benefits of Chapter 11, the Debtors are not permitted to unilaterally ignore its burdens. It is simply not good enough for the Debtors to say, as they do in the Objection, that because the obligation was not included in the DIP budget, they should not be required to pay what they owe now.

3. The Debtors are obligated by federal statutes, 29 U.S.C. § 1145 and section 1113(f) of the Bankruptcy Code, and by the terms of the CBAs to pay the post-petition contributions due under the CBAs *currently*. In the Fund's case, it has clearly set forth the

factual and legal basis for its administrative claim. The amounts of the post-petition contributions are quantified for the entire post-petition period through April 30, 2012, derived from reports prepared and delivered by the Debtors themselves. In addition, no portion of the post-petition contributions can be attributed to any underfunded obligations of the Fund because the Fund is not classified as endangered, severely endangered, or in critical status and has been certified as being in the "green zone" or in "safe status." Finally, the Debtors have not established any credible basis to delay the payment of these contributions another day. The contributions are vitally important to the employees and the Fund itself, for whom the Debtors' failure to pay creates an unfunded obligation that the Fund may be called upon to honor in its fiduciary capacity. Accordingly, the Fund respectfully submits that the Motion should be granted.

### The Administration Claim Arises Solely From Contributions Accrued as a Result of Employees' Services Performed After the Petition Date.

4.   The Administration Claim arises solely from contributions accrued as a result of services performed by the Employees *after* the Petition Date. The Debtors are obligated to contribute to the Fund on behalf of the Employees represented by the IUOE at a specified rate per hour worked, as detailed in the various CBAs (the "Rate"). The Administration Claim is based upon the Rate multiplied by hours worked by the Employees since the Petition Date, all as calculated *by the Debtors*. Indeed, each month, the Debtors prepare, and remit to the Fund the Reports in which the Debtors list the aggregate hours each of the Employees worked during the month at the Rate, and calculating the Obligation for the month. The January and February, 2012 Reports were included as exhibits to the Motion and supporting declarations and the March and April contributions reports (redacted to protect the privacy of the employees) are included as Exhibits 5 and 6 to the *Reply Declaration of Michael A. Crabtree in Further Support of Motion*

{00191357.3 / 0947-001 }

3

*of the Central Pension Fund for entry of an Order Allowing and Directing Payment of Administrative Expense Claim,* filed simultaneously herewith. As is clear from these Reports, the post-petition Obligations for the month of January 2012 aggregates $32,562.87[2], the post-petition Obligations for the month of February 2012 aggregate $45,587.49, the post-petition Obligations for the month of March 2012 aggregate $56,523.13 and the post-petition Obligations for the month of April 2012 aggregates $45,880.37. As such, as of the end of April 2012, the aggregate Post-petition Debt owed to the Fund is $180,553.86 (hereinafter, the "<u>Current Post-petition Debt</u>"). Thus, contrary to the Debtors' assertion in the Objection, the amount of the Current Post-petition Debt is in fact known at this time, and since it is based upon the Debtors' calculation and reporting[3], the amount of the Fund's Administration Claim through the end of April 2012 is incontrovertible.

### No Portion of the Administration Claim Is Attributable To Any Underfunding.

5.   No portion of the Administration Claim is attributable to any underfunding due to historical investment losses or insufficient contributions received by the Fund. Indeed, as set forth in the *Declaration of Michael A. Crabtree in Support of IUOE Stationary Engineers Objection to and Memorandum in opposition to Second Motion of Debtors to Reject their Collective Bargaining Agreements Pursuant to Sections 1113(c) of the Bankruptcy Code* dated May 11, 2012 [Dkt # 925] (the "<u>Prior Declaration</u>"), a copy of which is attached as Exhibit 7 to

---

[2] In its Motion, the Fund estimated the portion of the January Report attributable to the post-petition period by *pro rating* the entire January 2012 Obligations for the twenty days of January that occurred post-petition. However, by the *Declaration of Laurie Reed in Support of the Omnibus Objection of Debtors and Debtors in Possession to Motions of Nine Pension Funds and the BCT Requesting Allowance and Payment of Administrative Expense Claims,* dated May 23, 2012, filed in support of the Objection [Dkt. # 1005] (the "<u>Reed Declaration</u>"), the Debtors confirm that the post-petition Obligations for January aggregate $32,562.87. The Fund stipulates to the calculation contained in the Reed Declaration concerning the January post-petition pension contribution.

[3] Additionally, the January and February amounts are confirmed by the Debtors in the Reed Declaration.

{00191357.3 / 0947-001 }

4

the Reply Declaration, the Fund retained Horizon Actuarial Services, LLC as actuary ("Horizon"), which certified that the Fund was not in endangered, seriously endangered, or in critical status for the plan year commencing February 2012 (the "2012 Certification"). Thus, pursuant to the 2012 Certification, the Fund was and is in the green zone with a safe status. A copy of the 2012 Certification is attached to the Prior Declaration as exhibit B. The Fund has thus remained stable and has not charged the Debtors for any losses or insufficient contributions since the Petition Date. Accordingly, contrary to the Debtors' insinuations, the Administration Claim is comprised solely of pension contributions related to post-petition services provided by the Employees.

### The Debtor Should Be Compelled to Pay the Administration Claim Promptly.

6.      Sections 503(b)(1) and 1113(f) of the Bankruptcy Code require the Debtors to remain current with respect to their post-petition Obligations to the Fund. Indeed, the Debtors are required to fully comply with the terms of the CBAs through the date they are effectively rejected or modified in accordance with § 1113 of the Bankruptcy Code. Furthermore, these Obligations are contractually provided for under the CBAs and mandated by section 515 of ERISA, which provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. The ERISA provision is wholly consistent with the Bankruptcy Code and in particular section 1113(f), which requires a debtor to pay its administrative obligations under any applicable collective bargaining agreement as and when due until such time as the debtor may be relieved of its duty in accordance with section 1113.

7. In addition to failing to pay what is rightfully owed to the member employees, the Debtors' intentional failure to comply with the CBAs place a burden on the Fund which must account and be responsible for the unfunded obligation created thereby. The Post-petition Services being provided to the Debtors by the Employees in the post-petition period confer an actual and necessary benefit to the Debtors' estates since they enable the Debtors to continue their businesses.

8. As discussed above, the Debtors' argument that the Post-petition Debt Obligations cannot be paid now because they were excluded from the approved cash collateral budget should not be countenanced. The Debtors were fully aware of these obligations and their willful exclusion from the budget does not excuse the Debtors from the mandates of Bankruptcy Code that they be paid as and when due. As a practical matter, the amount of the undisputed Current Post-petition Debt Obligations would be a financially insignificant outlay for the Debtors. Indeed, the impact on the Debtors' compliance with the budget in a case where the total DIP facility is $75 million and, according to the monthly fee statements filed in the case, the burn rate for professional fees was in excess of $3 million in April alone, would be immaterial.

9. Accordingly, as the Debtors have not articulated any valid reason for delay, the Debtors' Current Post-petition Debt Obligations to the Fund under the CBAs should be afforded administrative expense status, be paid promptly by the Debtors and the Debtors should remain current with respect to their remaining post-petition Obligations to the Fund while the CBAs remain in effect.

**WHEREFORE**, the Fund respectfully requests this Court to enter an order granting the Fund an allowed administrative expense claim in the amount of the Current Post-petition Debt, directing the Debtors to pay the Administration Claim to the Fund, directing the Debtors to remain current with respect to their post-petition Obligations to the Fund while the CBAs remain in effect and granting to the Fund such other and further relief as the Court deems just and proper under the circumstances.

Dated: New York, New York
      May 25, 2012

CENTRAL PENSION FUND
By its Counsel,
HALPERIN BATTAGLIA RAICHT, LLP

By: */s/ Walter Benzija*
     Alan D. Halperin, Esq.
     Walter Benzija, Esq.
     Debra J. Cohen, Esq.
     555 Madison Avenue-9th Floor
     New York, NY 10022-3301
     Telephone (212) 765-9100
     Facsimile (212) 765-0964
     ahalperin@halperinlaw.net
     wbenzija@halperinlaw.net
     dcohen@halperinlaw.net