Eugene S. Friedman, Esq.  
William K. Wolf, Esq.  
FRIEDMAN & WOLF  
1500 Broadway, Suite 2300  
New York, New York 10036  
(212) 354-4500  
wwolf@friedmanwolf.com

**Hearing Date: May 30, 2012 at 10:00 AM**  
**Response Deadline: May 23, 2012 at 4:00 PM**  
**Reply Deadline: May 29, 2012 at 12:00 P.M.**

Attorneys for the Board of Trustees  
of the Retail, Wholesale and Department Store  
International Union and Industry RWDSU Pension Fund

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
---------------------------------------------------------X  
In re                                                                 Chapter 11

HOSTESS BRANDS, INC., *et al.*,                    Case No. 12-22052 (RDD)

                    Debtors.                                    The Hon. Robert D. Drain

---------------------------------------------------------X

REPLY OF THE TRUSTEES OF THE RWDSU AND INDUSTRY PENSION FUND
TO THE OMNIBUS OBJECTION OF DEBTORS AND DEBTORS IN POSSESSION TO
MOTIONS OF NINE PENSION FUNDS AND THE BCT REQUESTING ALLOWANCE
AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND IN FURTHER
SUPPORT OF THE MOTION OF THE RWDSU PENSION FUND FOR AN ORDER
DIRECTING PAYMENT OF EMPLOYEE BENEFIT CONTRIBUTIONS OR,
IN THE ALTERNATIVE, ALLOWING AN ADMINISTRATIVE EXPENSE CLAIM

INTRODUCTION

Pursuant to Sections 503(b), 507(a)(1), and 1113 of the Bankruptcy Code, 11 U.S.C. §§ 503(b), 507(a)(1), and 1113, the Board of Trustees of the Retail, Wholesale and Department Store International Union and Industry Pension Fund (the "RWDSU Pension Fund"), a Creditor of Hostess Brands, Inc. and its applicable affiliates ("Hostess" or the "Debtor"), submit this Reply in further support of its Motion for an Order directing Hostess to make immediate payment of all employee benefit contributions owed for the period of January

1

112871

11, 2012 through the date of this Motion and to continue to make employee benefit contributions to the RWDSU Pension Fund in a timely manner until further order of this Court or, in the alternative, allow the RWDSU Pension Fund a claim for an administrative expense for the amount of the post-petition employee benefit contributions. Specifically, the RWDSU Pension Fund is seeking payment of $203,395.00 in employee benefit contributions that Hostess owes for the period from January 11, 2012, the day Hostess filed its petition for bankruptcy relief, through April 30, 2012, plus employee benefit contributions it owes from May 1, 2012 forward. See Supplemental Declaration of Mark Davis in Further Support of the Motion of the Trustees of the RWDSU and Industry Pension Fund for an Order Directing Immediate Payment of Employee Benefit Contributions or, in the Alternative, Allowing an Administrative Expense Claim, dated March 25, 2012 (the "Supplemental Davis Decl."), ¶¶ 3-6.

As it must, Hostess concedes that it owes employee benefit contributions that are based upon postpetition service. See Omnibus Objection of Debtors and Debtors in Possession to Motions of Nine Pension Funds and the BCT Requesting Allowance and Payment of Administrative Expense Claims, dated May 23, 2012 (the "Objection"), pp. 13, 16. But, rather than agreeing to pay the contributions owed in an expedient manner, Hostess raises unfounded arguments in a bid to delay the proceedings. Specifically, Hostess has raised three objections that apply to the instant motion: (1) that part of the claim by the RWDSU Pension Fund is based on prepetition service; (2) that part of the instant claim is not due to postpetition service and, instead, is attributable to underfunding based on prepetition service; and (3) that the Court should not order immediate payment of the postpetition employee benefit contributions because Hostess did not plan on paying it.

The Court must reject these objections because the RWDSU Pension Fund agrees to the amount of postpetition contributions as stated in Paragraphs 4 and 5 and Exhibit A of the May 23, 2012 Declaration of Laura Reed in Support of the Omnibus Objection of Debtors and Debtors in Possession to Motions of Nine Pension Funds and the BCT Requesting Allowance and Payment of Administrative Expense Claims (the "Reed Decl."), ¶¶ 4, 5, Exh. A. Further, Hostess' own documents establish that the instant claim for postpetition employee benefit contributions arose only from postpetition labor. Moreover, the RWDSU Pension Fund is in the "Green Zone," and has always been in the "Green Zone." See Declaration of Mark Davis in Support of the Objection of the Trustees of the RWDSU and Industry Pension Fund to the Second Motion of Debtors and Debtors in Possession to Reject Certain Collective Bargaining Agreements Pursuant to Section 1113(c), dated May 11, 2012 (the "May 11, 2012 Davis Decl."), ¶ 5. Finally, the Court must not allow Hostess to delay payment it all but acknowledges it owes. The employees of Hostess have performed their service to maintain the Debtor's operations, and there is no reason to delay the payment of the monies due on their behalf.

Accordingly, the Trustees of the RWDSU Pension Fund respectfully request that the Court order Hostess to pay it $203,395.00 in employee benefit contributions immediately and to continue to pay the employee benefit contributions in accord with the subject collective bargaining agreements.

## DISCUSSION

A.  **The Court Must Order Hostess To Pay The RWDSU Pension Fund's Claim Because There Is No Dispute As To The Amount Owed**

1. The RWDSU Pension Fund accepts Hostess' calculation of $153,010.00 as the amount of post-petition employee benefit contributions due to the RWDSU Pension Fund for January, February, and March 2012. Supplemental Davis Decl., ¶ 3; Reed Decl., ¶¶ 4, 5, Exh. A.

2. In addition to the $153,010.00 listed above as the amount owed for post-petition employee benefit contributions for January through March 2012 and based upon the remittance reports submitted by Hostess for April 2012, Hostess owes $50,385.80 more in employee benefit contributions to the RWDSU Pension Fund. Supplemental Davis Decl., ¶ 4.

3. Therefore, it is undisputed that Hostess owes a total of $203,395.00 in postpetition employee benefit contributions to the RWDSU Pension Fund for the time period from January 11, 2012, the day Hostess filed its petition for bankruptcy relief, through April 30, 2012. Id., ¶ 5.

4. Accordingly, the Court must order Hostess to pay the RWDSU Pension Fund $203,395.00 in postpetition employee benefit contributions.

B.  **The Court Must Reject Hostess' Unsupported Claim That Multiemployer Pension Contributions Owed Pursuant To Contract Must Be Divided For The Purpose Of Defining Administrative Expenses**

5. Pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, an administrative expense claim includes "the actual necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement

4

112871

of the case." 11 U.S.C. § 503(b)(1)(A). Here, employee benefit contributions, like wages, are contractually-mandated compensation for an employee continuing to provide service to the Debtor's estate.

6. In the Second Circuit, the two-pronged test for determining whether a transaction constitutes an administrative claim requires that such a claim:

> (1) arise out of a postpetition transaction between the creditor and the trustee or debtor in possession and (2) be allowable only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor's estate in the operation of its business.

In re: Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, 160 B. R. 882, 889 (Bankr. S.D.N.Y. 1993); Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc., 789 F.2d 98, 101 (2d Cir. 1986).

7. The Court must reject Hostess' attempt to raise a question regarding the fact of postpetition work by Hostess employees who are participants of the RWDSU Pension Fund. Debtor's Objection is merely a ploy to delay payment by engaging in unnecessary discovery. Here, Hostess' own records submitted to the RWDSU Pension Fund demonstrate that the work at issue was a series of postpetition transactions between the employees and the Debtor (the employee works a day, the employer compensates him), and that the contributions were owed only for the postpetition transactions.

8. Hostess submitted monthly statements (the "remittance reports") to the RWDSU Pension Fund reporting contemporaneously the work by employees of Hostess that was covered by the CBAs through April 30, 2012. Declaration of Mark Davis in Support of the Motion of the Trustees of the RWDSU and Industry Pension Fund for an Order Directing Employee Benefit Contributions or, in the Alternative, Allowing an Administrative Expense

Claim, dated April 13, 2012 (the "4/13/12 Davis Decl."), ¶¶ 5-6, Exh. A (copies of the remittance reports for January, February, and March 2012); Supplemental Davis Decl., ¶ 3-5.

9. As shown on the remittance reports, Hostess was obligated "to pay employee benefit contributions to the Fund on behalf of their employees that performed work covered by the CBAs in the subject month." 4/13/12 Davis Decl., ¶¶ 5-7, Exh. A; Supplemental Davis Decl., ¶ 3-5. It was not obligated to pay employee benefit contributions on behalf of an employee that did not perform work covered by the CBAs in the subject month. Id.

10. Further, Hostess acknowledges the fact that certain work performed by Hostess employees who are participants of the RWDSU Pension Fund was performed postpetition when it calculated the contributions owed prepetition and postpetition to the RWDSU Pension Fund. Reed Decl., ¶ 4, Exh. A.

11. In short, each of the transaction that gave rise to the expense of the employee benefit contributions at issue was based on time worked postpetition by a Hostess employee, and nothing more.

12. In Finley, Kumble, supra, a case relied on by Hostess in its Objection, the Court's holding that the part of a Minimum Funding Claim "that arose postpetition from the postpetition labor of Debtor's remaining thirty-eight employees . . . merits priority treatment" as an administrative claim is directly applicable to the instant case. Finley, Kumble, 160 B.R. at 891. In so deciding, the Court noted that "a claim arises for Code purposes . . . upon 'the time when the acts giving rise to the alleged liability were performed[.]'" Id. at 892.

13. Here, as demonstrated above, Hostess cannot contest that the instant claim is based on anything other than the postpetition labor of its employees that are participants of the RWDSU Pension Fund because as shown by Debtors' submissions and the Fund's submissions,

such a claim only arises after an employee performs her work. If the employee does not work, the employer owes nothing.

14. Accordingly, the employee benefit contributions at issue clearly arose out of postpetition transactions.

15. In addition, it is undisputed that the consideration supporting the claim of the RWDSU Pension Fund "was both supplied to and beneficial to the debtor's estate in the operation of its business."

16. As noted above, Hostess' own records show when the work was performed that is the consideration for the Fund's claim. See 4/13/12 Davis Decl., ¶¶ 5-7, Exh. A; Supplemental Davis Decl., ¶ 3-5; Reed Decl., ¶ 4, Exh. A.

17. Moreover, the employees performed work beneficial to Hostess' estate. As the Third Circuit explained recently in the context of finding that withdrawal liability based on post-petition work is entitled to administrative priority:

> [I]t is clear that the covered employees were required to perform work post-petition in order to keep . . . [the debtor in possession] in operation, unquestionably conferring a benefit to the estate. Pursuant to the continued-CBA and pension plan, . . . [the debtor] promised to provide pension benefits in exchange for that post-petition work. . . . Therefore, the requirements of 11 U.S.C. §§ 503(b)(1)(A) & 507(a)(2) of the Bankruptcy Code are satisfied.

In re Marcal Paper Mills, Inc., 650 F.3d 311, 317 (3d Cir. 2011).

18. In In re: Jones Truck Lines, Inc., 130 F.3d 323 (8th Cir. 1997), the Eighth Circuit, in analyzing issues arising under Section 547 of the Bankruptcy Code, explained that an employer's payments for salary and benefits are "contemporaneous exchanges for . . . the employee's continuing services," and noted:

> An employer pays wages and benefits in exchange for employee services. That is true even if wages and benefits are collectively bargained, and even if the parties to a

7

112871

collective bargaining agreement designate a third party benefit fund to receive, invest, and pay out benefits on behalf of the employees.

Jones Truck Lines, 130 F.3d at 327.

19.    Employee benefit contributions, like hourly wages, are simply the compensation due to employees for the services they provide to a debtor-in-possession. If the Court takes Hostess' argument to its logical extreme, then Hostess could seek to disallow administrative expense status to wages by arguing that it should not pay for any part of a wage rate that was possibly attributable to prepetition service, such as seniority, past promotions, skill acquisitions, and so on.

20.    Thus, Hostess is inviting the Court and/or the parties to assume a tremendous burden of parsing out the elements that make up a wage rate or a benefit contribution rate that has not been used in any case involving a multiemployer pension plan.

21.    Further, implementation of Hostess' novel theory would cause chaos in the reorganization of a debtor. If an employee loses the ability to count on payment of the contractually-mandated amount of his benefit contribution and thereby learns that his pension benefit is at risk of not being paid for, he may choose to withhold his services from the debtor. This result is contrary to the policies underlying the Bankruptcy Code and, in particular, may cause a disruption that the priority given to administrative expenses is designed to avoid.

22.    As explained by the Second Circuit in Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc., 789 F.2d 98 (2d Cir. 1986):

> Congress granted priority to administrative expenses in order to facilitate the efforts of the trustee or debtor in possession to rehabilitate the business for the benefit of all of the estate's creditors.

McFarlin's, 789 F.2d at 101. Further, the Eighth Circuit, in analyzing a different section of the Bankruptcy Code, concisely noted the problem created when an employee can no longer rely on the benefit of his bargain:

> It would not encourage employees to stick with a troubled business if their current wages and benefits could later be attacked as preferential on the ground that their labor was not worth what the employer agreed to pay.

Jones Truck Lines, 130 F.3d at 327.

23. Moreover, Hostess' argument is immaterial to the RWDSU Pension Fund because the Fund is financially stable in that it is in the "Green Zone," and has never been out of the "Green Zone." May 11, 2012 Davis Decl., ¶ 5.

24. Finally, Hostess has not cited to any case that has divided employee benefit contributions owed to a multiemployer fund that accrue only when the employee performs postpetition work. In every other case, the source of the claim was prepetition labor. Objection, ¶¶ 22-26.

25. Thus, the Court must reject Hostess' attempt to avoid payments on behalf of its employees who have served the estate, deny its request for an unworkable division of the employee benefit contributions, deny its request for discovery on that issue, and order immediate payment of the subject employee benefit contributions.

C. The Court Must Grant The Instant Motion Because Hostess Refused To Respond To The RWDSU Pension Fund's Argument That Failure To Pay The Contributions Is Unfair And Inequitable.

26. In its moving papers, the RWDSU Pension Fund established that Hostess is in violation of the requirement under 11 U.S.C. 1113(b)(1)(A) that all creditors be

treated "fairly and equitably" because it was paying its postpetition trade creditors and its secured lenders in full, but refusing to pay employee benefit fund contributions to the RWDSU Pension Fund on behalf of its employees represented by the RWDSU. Thus, Debtor was treating its employee-creditors and the RWDSU Pension Fund, as creditor, unfairly in comparison to other creditors, and the Court should order it to immediately pay its postpetition employee benefit contributions and stay current on its employee benefit obligations. See Motion of the Trustees of the RWDSU and Industry Pension Fund for an Order Directing Payment of Employee Benefit Contributions or, in the Alternative, Allowing an Administrative Expense Claim, dated April 16, 2012 (the "RWDSU Pension Fund's Administrative Expenses Motion"), ¶¶ 17-19.

27.    In opposition, Debtor did not address this argument stating, without citation, "[t]his is an argument properly addressed in the context of the Second 1113 motion." Objection, p. 34 n. 11.

28.    Accordingly, because Debtor did not oppose this argument and in compliance with Paragraph 14 of the Administrative Order, Pursuant to Rule 1015(c) of the Federal Rules of Bankruptcy Procedure, Establishing Case Management and Scheduling Procedures, dated February 12, 2012, and the Presentment Notice in the Notice of Motion of the Trustees of the RWDSU and Industry Pension Fund for an Order Directing Payment of Employee Benefit Contributions or, in the Alternative, Allowing an Administrative Expense Claim, dated April 16, 2012, p. 3, the Court should grant the RWDSU Pension Fund's motion.

D.   **The Court Must Deny Hostess' Request To Delay Payment Of The Postpetition Employee Benefit Contributions**

29. In yet another attempt to delay payment of monies owed on behalf of its employees, Hostess asks the Court not to order payment until some undefined date in the future. Objection ¶¶ 34-37. It takes the outrageous position that that it seeks such relief because it did not budget for the payment of employee benefit contributions. Id.

30. Hostess' position is directly contrary to the Bankruptcy Code and to decades of law governing multiemployer pension plans. See RWDSU Pension Fund's Administrative Expenses Motion, ¶¶ 12-19; Central States, SE & SW Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 572-74 (1985) (A fundamental duty of a benefit plan trustee is to assure full and prompt collection of contributions owed); Iron Workers District Council of Western New York v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506-07 (2d Cir. 1995) (Congress amended ERISA to permit trustees of plans to collect contributions efficaciously and promptly); Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 313-14 (2d Cir. 1990) (Congress intended trustees of a plans to be able to collect contributions quickly and efficiently).

31. Moreover, based on its representations to the Court, it appears that Hostess is paying extraordinary amounts in administrative expenses to entities other than those acting on behalf of its employees. And, as noted above, the claim of the RWDSU Pension Fund of $203,395.00 is agreed-upon with Hostess, and would not be a burden on the estate.

32. Accordingly, we request that the Court order immediate payment of $203,395.00 in employee benefit contributions that Hostess owes for the period from January 11,

2012, the day Hostess filed its petition for bankruptcy relief, through April 30, 2012, plus employee benefit contributions it owes from May 1, 2012 forward.

## RESERVATION OF RIGHTS

33. Nothing herein shall be construed as a waiver or limitation on the rights of the RWDSU Pension Fund to pursue any and all claims it holds against Hostess. The RWDSU Pension Fund expressly reserves its right to assert additional claims against Hostess and its estate and to amend, modify and/or supplement this request for relief.[1]

## NOTICE

34. In compliance with the Administrative Order, Pursuant to Rule 1015(c) of the Federal Rules of Bankruptcy Procedure, establishing Case Management and Scheduling Procedures, dated February 12, 2012 (the "Administrative Order"), the Trustees of the RWDSU Pension Fund have served Notice of this Motion by email (in electronic PDF format ) and by regular U.S. mail service, as appropriate, upon the parties designated in the Administrative Order and upon the other entities listed to receive service in this case. The RWDSU Pension Fund submits that such notice satisfies the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court and the Court's Administrative Order.

---

[1] Specifically, the RWDSU Pension Fund reserves the right to supplement this Motion with remittance reports from Hostess (or other evidence) that show monies owed for work performed after March 31, 2012.

12

112871

## CONCLUSION

For the foregoing reasons, the Trustees of the RWDSU Pension Fund respectfully request that the Court order Hostess to pay the RWDSU Pension Fund $203,395.00 in employee benefit contributions that Hostess owes for the period from January 11, 2012 through April 30, 2012, plus employee benefit contributions it owes from May 1, 2012 forward.

Dated: May 29, 2012
      New York, New York

By: _____
Eugene S. Friedman (EF-5273)
William K. Wolf (WW-7906)

FRIEDMAN & WOLF
1500 Broadway, Suite 2300
New York, New York 10036
Ph:   (212) 354-4500
Fax:  (212) 719-9072
wwolf@friedmanwolf.com

Attorneys for the Board of Trustees
of the Retail, Wholesale and Department
Store Int'l Union and Industry Pension Fund