**Hearing Date and Time:  TBD**
**Response Deadline:  TBD**

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball
Heather Lennox
Lisa Laukitis
Veerle Roovers

 - and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Ryan T. Routh

Attorneys for Debtors
and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| Hostess Brands, Inc., *et al.,*[1] | : | Case No. 12-22052 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
----------------------------------------------------------------x

## MOTION OF DEBTORS AND DEBTORS
## IN POSSESSION FOR AN ORDER (A) APPROVING THE DEBTORS'
## ENTRY INTO NEW 3-MONTH POLICIES WITH ACE AMERICAN
## INSURANCE COMPANY AND (B) GRANTING CERTAIN RELATED RELIEF

---

[1]     The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Hostess Brands, Inc. (0322), IBC Sales Corporation (3634), IBC Services, LLC (3639), IBC Trucking, LLC (8328), Interstate Brands Corporation (6705) and MCF Legacy, Inc. (0599).

TO THE HONORABLE
UNITED STATES BANKRUPTCY JUDGE:

       Hostess Brands, Inc. and its five domestic direct and indirect subsidiaries, as debtors and debtors in possession (collectively, "Hostess" or the "Debtors"), respectfully represent as follows:

### Background

      1.     On January 11, 2012 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated and are being administered jointly for procedural purposes only.

      2.     The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

      3.     Upon a motion filed by the Debtors (the "Insurance Motion"), on January 12, 2012, the Court entered the Order (I) Approving the Debtors' Entry into Amendment of Certain Insurance Agreements, (II) Authorizing the Debtors' Assumption of Prepetition Insurance Agreements, (III) Authorizing the Debtors to Enter Into Postpetition Insurance Agreements and (IV) Granting Certain Related Relief (Docket No. 70) (the "Insurance Order").

      4.     On January 18, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors, pursuant to section 1102 of the Bankruptcy Code (the "Creditors Committee"). The U.S. Trustee subsequently amended such appointments to the Creditors Committee on January 30, 2012.

      5.     On February 3, 2012, the Court entered the Final Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364

-2-

and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Adequate

Protection to Pre-Petition Secured Parties (Docket No. 254) (the "Final DIP Order") approving,

on a final basis, the Debtors' entry into that certain Debtor-in-Possession Credit, Guaranty and

Security Agreement (the "DIP Credit Agreement").

6.      Founded in 1930, Hostess is one of the largest wholesale bakers and

distributors of bread and snack cakes in the United States.  Today, Hostess sells an array of

popular products under new and iconic brands such as Butternut®, Ding Dongs®, Dolly

Madison®, Drake's®, Home Pride®, Ho Hos®, Hostess®, Merita®, Nature's Pride®,

Twinkies® and Wonder®.

**Facts Relevant to This Motion**

*The ACE Insurance Program*

7.      As described in greater detail in the Insurance Motion,[2] prior to the

Petition Date, ACE American Insurance Company (together with certain of its affiliates,

"ACE")[3] issued to the Debtors various workers' compensation insurance policies, as well as

general liability and automobile liability policies (together, and including any prepetition

renewals and extensions thereof and the ACE Amendment and certain agreements related thereto,

the "Prepetition Insurance Agreements").  The Debtors are required to maintain these types of

insurance, either under the laws of the states in which they operate, or as a general matter of

prudence.

---

[2]      Capitalized terms not otherwise defined in this Motion have the meanings given to them in the Insurance Motion.

[3]      Any reference to ACE shall include ESIS, Inc. as applicable and for the avoidance of doubt, any reference to New Program (as defined herein) shall include any and all agreements between any of the Debtors and ESIS, Inc. for services provided after July 1, 2012.

8.       In connection with their payment obligations to ACE, the Debtors have
been required to provide ACE with various forms of cash collateral.[4]  In accordance with certain
prepetition agreements described in greater detail in the Insurance Motion, ACE has a first
priority lien on all ACE Collateral senior to the liens of the Debtors' various prepetition secured
lenders.  Further, ACE's lien on existing ACE Collateral is superior to the liens granted to the
DIP Lenders (as defined in the Final DIP Order) and remains senior to the liens of the Debtors'
various prepetition secured lenders, including any Adequate Protection Liens (as defined in the
Final DIP Order).  (See Final DIP Order ¶ 10(b); Insurance Order ¶¶ 3-4).  Finally, pursuant to
the terms of the Insurance Order, the priority of ACE's liens extends to any ACE Collateral
subsequently provided to ACE by the Debtors after the entry of the Insurance Order.  (See
Insurance Order ¶¶ 3-4).

9.       In December 2011, ACE and the Debtors entered into Prepetition
Insurance Agreements with respect to the Debtors' workers' compensation, general liability and
automobile liability insurance effective as of January 1, 2012 and expiring on April 1, 2012, and,
in connection therewith, gave ACE an additional $6,240,423 in cash collateral.  This prepetition
arrangement was approved by the Insurance Order.  (See Insurance Order ¶ 2).  Further, the
Debtors, in accordance with the terms of the Insurance Order, entered into a three-month
extension of their insurance program with ACE (together with the Prepetition Insurance
Agreements, the "ACE Insurance Program") in the ordinary course of business that extended the
ACE Insurance Program for the period from April 1, 2012 to July 1, 2012 at 12:00 a.m and, in
addition, gave ACE an additional $6,272,692 in cash collateral.

---

[4]     As of the Petition Date, ACE's collateral included:  (a) a letter of credit issued by Comerica Bank to ACE in
the amount of approximately $50,677,141.00; (b) collateral in a pledged securities account controlled by
ACE in the approximate amount of $63,268,226.10; (c) a paid loss deposit fund  in the amount of
$580,298.00; and (d) a paid loss deposit fund held by ESIS (collectively, the "ACE Collateral").

10.    Accordingly, the Debtors' current workers' compensation, general liability and automobile liability insurance coverage with ACE is set to expire at July 1, 2012 at 12:00 a.m. (collectively, the "Current Coverage").[5]

11.    ACE has offered to provide workers' compensation, general liability and automobile liability insurance coverage to the Debtors for a three month period from July 7, 2012 at 12:01 a.m. through October 7, 2012 at 12:00 a.m. (the "New 3-Month Policies").[6] The New 3-Month Policies are not an extension or renewal of the Current Coverage but are instead, new policies providing a different coverage structure.  Specifically, as to the automobile liability and workers' compensation liability coverages, pursuant and subject to the terms thereof and as set forth more specifically therein, the premiums for the New Program have been determined by application of retrospective incurred loss rating and are not subject to deductible reimbursement, whereas the premiums for the Current Coverage were determined by  application of deductible loss rating and are subject to deductible reimbursement. The premiums for the New Program total $14,531,108.00 (collectively, the "New Premiums").  The payment of the New Premiums, while not originally contemplated by the form of the budget (the "Budget") approved by the Final DIP Order, has been approved by the Pre-Petition Revolving Agent (as defined in the Final DIP Order), and the Debtors have requested the approval of the DIP Agent (as defined in the Final DIP Order), which they hope to obtain prior to the hearing on this Motion.  Once approved, the New Premiums will be reflected in an updated Budget submitted in accordance with Paragraph 12(a) of the Final DIP Order.

---

[5]    Subject to the terms and conditions thereof, the Agreement (as defined herein) provides for an extension of the policies providing the Current Coverage until July 7, 2012 to allow the necessary time to obtain the Order (as defined herein).

[6]    A copy of the agreement memorializing the Debtors' agreement with ACE with respect to the New 3-Month Policies (together with any other agreements executed in connection therewith, the "Agreement" and together with the New 3-Month Policies, the "New Program") is attached hereto as Exhibit A.

12.    Finally, as a condition precedent to the issuance of the New 3-Month Policies, ACE is requiring the Debtors to obtain an order, which order will be substantially similar to the Insurance Order, approving, among other things, the Debtors' entry into the Agreement and payment of the New Premiums.

### Jurisdiction

13.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

14.    By this Motion, the Debtors respectfully request entry of the order (the "Order"), substantially in the form attached hereto as Exhibit B, pursuant to sections 362, 363 and 364 of the Bankruptcy Code, *inter alia*:

(a)    approving the Debtors' payment of the New Premiums to ACE in connection with the New 3-Month Policies;

(b)    confirming ACE's various rights under the Agreement; and

(c)    providing that (i) the order approving this Motion is immediately enforceable upon entry; and (ii) the stay set forth in the Federal Rule of Bankruptcy Procedure 6004(h) shall be waived.

### Argument

***Entry Into the Agreement is an
Exercise of the Debtors' Sound Business Judgment***

15.    Section 363(c) of the Bankruptcy Code permits a debtor to enter into transactions in the ordinary course of business. See 11 U.S.C. § 363(c)(1). In addition, section 363(b)(1) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts approve transactions under section 363(b) of the Bankruptcy

Code where there is a "good business reason."  See In re Lionel Corp., 722 F.2d 1063, 1070

(2d Cir. 1983); see also In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992) (same);

Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal

circumstances, courts defer to a trustee's judgment concerning use of property under section

363(b) when there is a legitimate business justification).

        16.     A debtor has the burden of establishing that a valid business purpose exists

for the use of estate property in a manner outside the ordinary course of business.  See Lionel

Corp., 722 F.2d at 1071.  Once the debtor articulates a valid business justification for the

proposed action, it is presumed that the decision was made "on an informed basis, in good faith

and in the honest belief that the action was in the best interests of the company."

Integrated Res., Inc., 147 B.R. at 656 (quoting Smith v. Van Gorkom, 488 A.2d 858, 872

(Del. 1985)).  Essentially, the business judgment rule under section 363(b) shields a debtor's

management from judicial second-guessing and mandates that a court approve a debtor's

business decision unless the decision is a product of bad faith or gross abuse of discretion.  See

In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); see also In re Johns-Manville

Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct.").

        17.     The Debtors' entry into the Agreement is an ordinary course transaction.

Further, while not originally contemplated by the original Budget, the payment of the New

Premiums has been approved by the Pre-Petition Revolving Agent in accordance with the terms

of the Final DIP Order, and the Debtors have requested the approval of the DIP Agent, which

they hope to obtain prior to the hearing on this Motion.  Therefore, the Debtors' entry into the

Agreement and the payment of the New Premiums to ACE will be permitted pursuant to

section 363(c) of the Bankruptcy Code.

18.    To the extent the Debtors' entry into the Agreement is deemed to be a

transaction outside the ordinary course of business, the Debtors have acted in the sound exercise

of their business judgment.  Failure to enter into the Agreement would result in the Debtors

having no general liability, automotive and workers' compensation insurance.  This would, in

turn, leave the Debtors exposed to new workers' compensation, general liability and automobile

liability claims on an uninsured basis, or force them to obtain replacement coverage on an

expedited basis, at a potentially even more significant cost to their estates.  Further, the Debtors

must maintain insurance coverage to comply with their legal obligations.  Under the laws of

various states in which the Debtors operate, the Debtors are required to maintain workers'

compensation insurance as well as general liability and automobile liability insurance.  Failure to

comply with workers' compensation laws can result in criminal liability and result in the Debtors'

ongoing business operations in certain states being enjoined.  Also, the Guidelines of the Office

of the United States Trustee for the Southern District of New York require the Debtors to

maintain insurance coverage throughout these chapter 11 cases.

### Request for Modification of the Automatic Stay

19.    Section 362(d) of the Bankruptcy Code provides that the automatic stay

established in section 362(a) of the Bankruptcy Code may be lifted or modified upon the request

of any party in interest

(1) for cause, including the lack of adequate protection of an
interest in property of such party in interest;

(2) with respect to a stay of an act against property under
subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization . . . .

11 U.S.C. § 362(d).

20.     The Debtors submit that the lifting or modification of the automatic stay, to the extent it is applicable, pursuant to section 362(d) of the Bankruptcy Code, is justified. Specifically, as set forth above and in the Insurance Motion, cause exists to lift the stay (to the extent it is applicable) to:  (a) allow claimants with valid workers' compensation claims that are covered by the New 3-Month Policies to proceed with their claims; and (b) allow ACE, in the ordinary course of business, to (i) administer, handle, defend, settle and/or pay all workers' compensation claims arising in connection therewith; (ii) cancel any New 3-Month Policies in accordance with their terms; and (iii) take other actions to the extent permitted under applicable non-bankruptcy law and the Agreement.

**Request for Waiver of Stay**

21.     Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).

22.     For the reasons set forth above, the approval of the Debtors' entry in the Agreement without delay and the other relief requested herein is essential to the Debtors' ability to administer these chapter 11 cases and to maximize the value available to the Debtors' stakeholders.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## **Notice**

23.      Pursuant to the Administrative Order, Pursuant to Rule 1015(c) of the

Federal Rules of Bankruptcy Procedure, Establishing Case Management and Scheduling

Procedures (Docket No. 371) (the "Case Management Order"), entered on February 21, 2012,

notice of this Motion has been given to the parties identified on the Special Service List, the

parties indentified on the General Service List (as such terms are defined in the Case

Management Order) and counsel to ACE.  The Debtors submit that no other or further notice

need be provided.

## **No Prior Request**

24.      No prior request for the relief sought in this Motion has been made to this

or any other Court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully request that the Court:  (i) enter an order

substantially in the form annexed hereto as <u>Exhibit B</u>, granting the relief requested herein; and

(ii) grant such other and further relief to the Debtors as the Court may deem proper.


Dated:  June 8, 2012
           New York, New York

                                         Respectfully submitted,


                                          _/s/ Corinne Ball_____
                                         Corinne Ball
                                         Heather Lennox
                                         Lisa Laukitis
                                         Veerle Roovers
                                         JONES DAY
                                         222 East 41st Street
                                         New York, New York  10017
                                         Telephone:  (212) 326-3939
                                         Facsimile:  (212) 755-7306

                                          - and -

                                         Ryan T. Routh
                                         JONES DAY
                                         North Point
                                         901 Lakeside Avenue
                                         Cleveland, Ohio  44114
                                         Telephone:  (216) 586-3939
                                         Facsimile:  (216) 579-0212

                                         ATTORNEYS FOR DEBTORS AND
                                         DEBTORS IN POSSESSION

# EXHIBIT A

Agreement


TM

# Casualty Program Proposal

For

HOSTESS BRANDS, INC. FKA INTERSTATE BAKERIES CORPORATION

Effective 07/01/2012

Producer:

LOCKTON COMPANIES LLC

Prepared by:

ACE Risk Management®

Part of ACE USA

Las Colinas Tower II, 225 East John Carpenter Freeway

Irving, TX 75062

Michael Icenogle

06/01/2012

# Table of Contents

| Section A | Memorandum |
|-----------|------------|
| Section I | Notice of Election |
| Section II | Limits and Coverages |
| Section III | Additional Proposal Conditions |
| Section IV | TRIA Disclosures |

The Proposal includes all of the sections listed above.  By instructing us to bind this Proposal, you are accepting the Proposal in its entirety.

**Section A**
**MEMORANDUM**

# MEMORANDUM

This Memorandum describes a proposal ("**Proposal**") by ACE American Insurance Company and its affiliated insurance companies (collectively, the "**Company**") to Hostess Brands, Inc. fka Interstate Bakeries Corporation, debtor and debtor-in-possession for itself and certain of its affiliates and subsidiaries including HOSTESS BRANDS INC FKA INTERSTATE BAKERIES CORPORATION (collectively referred to in this memorandum as the "**Insured**"), to provide the Insured with a casualty insurance program for workers' compensation, general liability and automobile liability insurance pursuant to certain insurance policies for the period beginning on July 7, 2012 at 12:01 a.m. (the "**Policy Effective Date**") and ending on October 7, 2012 at 12:00 a.m. (this Memorandum, the Proposal, the Policies, the agreements together with the Collateral Agreement (with respect to non-premium charges and any non-monetary rights and obligations) and any other agreement referenced herein, are collectively referred to herein as the "**Program**").  The Company's Proposal, and binding coverage under the Program described in the Proposal, are subject to satisfaction of all of the conditions precedent described below in part B of this Memorandum; and in the event that all of the conditions precedent are not satisfied prior to the Policy Effective Date, then the Policies (as defined below) shall not be issued and no coverage will be provided.

A.   **Description of the Proposal for the Program**

The Proposal for the Program consists of this Memorandum and the following items which are attached to this Memorandum and incorporated herein:

1. The Notice of Election, (Section I of the Proposal), which contains:  (i) a schedule of the insurance policies ("**Policies**") to be issued in connection with the Program, (ii) the premium calculation and adjustment, (iii) the claims administration and expenses, (iv) losses subject to a loss limitation, (v) the non-premium surcharges and assessments, (vi) program payment terms, and (vii) a description of certain important contractual terms.

   Attached to the Notice of Election are (a) the Initial Statement of Adjustment; (b) the Arkansas Workers Compensation Individual Risk Filing, and (c) the Notice of Election of Retrospective Rating Plan for New York Large Risk Ration Option.

2. Statements of Limits and Coverages (Section II of the Proposal), for the workers' compensation, the general liability and the automobile liability Policies that will be issued as part of the Program.

4. The Additional Proposal Conditions, (Section III of the Proposal), for the workers' compensation, the general liability and the automobile liability Policies that will be issued as part of the Program.

5. The Form of Policy Disclosure Notice, (Section IV of the Proposal), for terrorism insurance coverage under the Terrorism Risk Insurance Act, as amended in 2007.

B.   **Conditions Precedent to Coverage**

This Proposal, and binding coverage under the Program, are subject to all of the following conditions precedent:

1.      This Proposal may be withdrawn at any time prior to its acceptance by the Insured, and the Company's receipt of this Memorandum, properly executed by the Insured.

2.      Unless this Proposal has been accepted in writing by the Insured, the Company has received the written acceptance, and the Company has received this Memorandum, properly executed by the Insured, this Proposal automatically expires on **June 8, 2012** at midnight.

3.      This proposal has been developed and drafted in reliance upon the statements and information made and provided in the underwriting submission and any application connected thereto (collectively "the Submission"). The statements and information provided are material to the acceptance of this risk and hazard assumed by the Insurer under this proposal and any policy(ies) issued therewith. This proposal is issued in reliance upon the truth and accuracy of the Submission and in reliance that all relevant information affecting the pricing and underwriting of this risk and hazard has been provided, that there are no material omissions or material nondisclosures, and that all information is current and effective at the time of the Submission. In the event that the Submission contains any material misrepresentation, material omissions or material nondisclosure, this proposal and any policy (ies) issued therewith are, subject to applicable law, invalid from the outset.

4.      On or before the close of business on **June 28, 2012**, as conditions precedent to coverage under the Policies, the Insured will deliver, or cause to be delivered to the Company:

(a)      payment in full of all required premium, and other required estimated premiums and surcharges, as provided in the Notice of Election and Agreement (Section I), and such payment shall be made by wire transfer of immediately available funds pursuant to the Company's instructions;

(b)      the Notice of Election and Agreement (Section I), properly executed by the Insured;

(c)      each of the following: (i) the Arkansas Workers Compensation Individual Risk Filing; and (ii) the Notice of Election of Retrospective Rating Plan for New York Large Risk Ration Option, each properly executed by the Insured;

(d)      additional documents and agreements, as the Company may reasonably require; and

(e)      the Company has received, in form and substance satisfactory to the Company (i) evidence of the consent of the DIP Agent (as defined in the DIP Order, such term as defined herein) to the provision of all premium and surcharges required hereunder, and (ii) a written representation by the Debtors that the provision and payment  of the premium and of other charges hereunder do not in any way violate any credit agreements or indentures between the Debtors (as defined herein) and any of the Junior Lien Creditors (as defined in the Pledge and Security Agreement) including, but not limited to, those credit agreements and indentures identified in section 1.23 of the Pledge and Security Agreement.

5.      As an additional condition precedent to coverage under the Policies and to any renewal or extension thereof, and time being of the essence:

(i)      the Insured shall file, on or before **June 8, 2012**, a motion (the "Motion") requesting the entry of an order that approves this Proposal and the Policies (the "Order"), which Motion and Order shall be in form and substance acceptable to the Company and its counsel; and

(ii)      the Insured shall obtain a hearing on the Motion before the United States Bankruptcy Court for the Southern District of New York (the "Court") with jurisdiction over the Insured (as applicable, the "Debtors"), so that the Order is entered by the Court on or before **June 19, 2012**; and

(iii)      the Order shall have been both entered by the Court and become a Final Order (with no appeals or other challenges to the Order having been filed or commenced) on or before **July 4, 2012**.

The Order and the Final Order shall provide that:

(a)      the Debtors are authorized to enter into this Memorandum, the Proposal and the Policies and to execute and deliver all related documents and agreements or amendments thereto, and to perform their obligations hereunder and thereunder, pursuant to Section 363(b) or 363(c) of the Bankruptcy Code;

(b)      the Debtors are authorized to deliver or cause to be delivered to the Company, any and all consideration required by this Memorandum, the Proposal, the Policies, the related documents and/or any agreement including, but not limited to, any and all required premiums and the Debtors' failure to pay and deliver such consideration will result in no coverage being provided;

(c)      the Debtors are authorized to agree to future renewals and extensions of the Policies, to enter into new policies and claims servicing agreements, and to enter into related agreements, and to take other actions in order to effectuate such renewals, extensions or new policies without further order of the Court;

(d)      the claims of the Company with respect to the Program and claims servicing agreements, including any and all renewals and extensions thereof, shall be paid in the ordinary course of the Debtors' businesses;

(e)      the Company shall have an allowed administrative expense claim under Section 503(b)(1)(A) of the Bankruptcy Code for all payment obligations of the Debtors under the Program and any new policies, including any and all renewals and extensions thereof, regardless of when such amounts are or shall become liquidated, due or paid, and no proof of claim bar date shall apply to any claims of the Company that it may assert in respect of the Program;

(f)      the Company shall have the right to cancel the Policies, and to take other actions permitted under applicable non-bankruptcy law and the Program without further order of the Court, and for this purpose, the

automatic stay, to the extent applicable, is deemed lifted pursuant to Section 362(d) of the Bankruptcy Code;

(g) the Program, including without limitation, any agreement to arbitrate disputes between the Insured and the Insurer and the Order shall not be altered by any plan of reorganization or other order of the Court;

(h) providing that (i) the Order is immediately enforceable by the Company upon entry; and (ii) the stay set forth in the Federal Rule of Bankruptcy Procedures 6004(h) shall be waived; and

(i) nothing in the Order or this Memorandum, Proposal or the Policies alters, impairs or otherwise modifies the terms of the Order (I) Approving the Debtors' Entry into Amendment of Certain Insurance Agreements, (II) Authorizing the Debtors' Assumption of the Prepetition Insurance Agreements, (III) Authorizing the Debtors to Enter into Postpetition Insurance Agreements and (IV) Granting Certain Related Relief Entered by the Bankruptcy Court on or about January 13, 2012 (the "ACE Order"),.

6.      At the request of the Insured, the Company has agreed on certain conditions to provide an extension until **July 7, 2012** of the currently in-force workers compensation, general liability, and automobile liability insurance policies (the "Current Policies") that are currently due to expire and terminate on July 1, 2012.  A copy of a letter memorializing the agreement on the extension is attached to this Memorandum as Exhibit A.   As noted therein, the Company has agreed to provide the extension to the Current Policies only if the Order mentioned in Paragraph 5 above is entered on or before June 19, 2012, time being of the essence. Accordingly, if this condition precedent is not met, then the extension shall not occur and the Current Policies shall terminate by their own terms on July 1, 2012.

7.      The Debtors shall give all required notices of the Motion to all appropriate parties in interest in their bankruptcy cases.

8.      If the Order does not become a Final Order by **July 4, 2012**, time being of the essence, the Insured agrees that the Company shall be under no obligation to issue the Policies or provide any coverage thereunder.

9.      Binding of the Company under the terms of this Proposal for auto coverage is further conditioned upon receipt of state coverage selection forms properly executed by the Insured prior to the Policy Effective Date.  Failure to return all required selection forms shall be deemed to be the Insured's acceptance that the auto Policy(ies) will be issued and rated to include the limits of UM/UIM coverage equal to such Policy limits, or equal to the maximum limits required by law if lower than such Policy limits, and the limit for PIP coverage that we are required to offer for each state.  If the Company does not receive the properly executed forms and the Company applies UM/UIM and PIP limits as described herein, an additional charge for this coverage will be added to the Insured's automobile liability insurance premium.  Please note that rules on whether or not selection or rejection of these benefits is required or permitted vary greatly from state to state.

10.     The Insured represents that it has the power and authority to enter into this Memorandum, the Proposal and the Policies and to execute and deliver all

related documents and agreements, and to provide the premium and other amounts to the Company as provided in the Proposal.

If the Proposal outlined in this Memorandum is acceptable to the Insured, please sign this Memorandum in the space provided below and return a signed copy of this Memorandum to the Company no later than the date provided in Section B.2 of this Memorandum.  Upon receipt of a signed copy of this Memorandum, and, subject to satisfaction of the conditions precedent set forth above, time being of the essence, we will prepare and deliver to you the Policies and other documents and agreements for the Program.

 The Proposal is accepted by the undersigned, intending to be legally bound hereby.

**HOSTESS BRANDS, INC. FKA INTERSTATE BAKERIES CORPORATION**
 **ON BEHALF OF ITSELF AND ITS SUBSIDIARIES AND AFFILIATES**

By: _____

Name: JOHN O. STEWART

Title: EVP, CFO & CAO

Dated: 6/8/12

# Section I
# NOTICE OF ELECTION

# NOTICE OF ELECTION
# INCURRED LOSS PROGRAM

Insured's Name:         HOSTESS BRANDS INC FKA INTERSTATE BAKERIES CORPORATION
Insured's Address:      12 E Armour Blvd
                        Kansas City, Missouri 64111

## A)  SCHEDULE OF POLICIES

| Line of Business | Policy Number | Effective Date | Expiration Date | Issuing Company |
|---|---|---|---|---|
| General Liability | XSL G27010271 | 07/07/2012 | 10/07/2012 | ACE American Insurance Company |
| Automobile Liability | RAL H08709889 | 07/07/2012 | 10/07/2012 | ACE American Insurance Company |
| Workers Compensation | SCF C46786464 | 07/07/2012 | 10/07/2012 | ACE American Insurance Company |

## B)  PREMIUM CALCULATION AND ADJUSTMENT

| Policy Number(s) | SCF C46786464 |
|---|---|

| Premium Component | Estimated Premium ($) | Minimum (%) | Rate | Basis of Adjustment |
|---|---|---|---|---|
| Estimated Workers Compensation Premium | 11,191,401 | 100 | | Flat and not adjustable |
| Broker Commission | 0 | | | |
| **Total Estimated Written Premium** | 11,191,401 | | | |
| **Non Premium Surcharges** | 246,172 | | | |
| **Total Estimated Cost** | 11,437,573 | | | |

ACE Risk Management ®

| Policy Number(s) | RAL H08709889 |
|---|---|

| Premium Component | Estimated Premium ($) | Minimum (%) | Rate | Basis of Adjustment |
|---|---|---|---|---|
| Estimated Auto Liability Premium | 2,977,335 | 100 | | Flat and not adjustable |
| Broker Commission | 0 | | | |
| Total Estimated Written Premium | 2,977,335 | | | |
| Non Premium Surcharges | 10,406 | | | |
| Total Estimated Cost | 2,987,741 | | | |

| Policy Number(s) | XSL G27010271 |
|---|---|

| Premium Component | Estimated Premium ($) | Minimum (%) | Rate | Basis of Adjustment |
|---|---|---|---|---|
| Estimated Excess Liability Premium | 105,683 | 100 | | Flat and not adjustable |
| Broker Commission | 0 | | | |
| Total Estimated Written Premium | 105,683 | | | |
| Non Premium Surcharges | 111 | | | |
| Total Estimated Cost | 105,794 | | | |

ACE Risk Management ®

## C)  CLAIMS ADMINISTRATION AND EXPENSE

### A.  Claims Adjusting Service

| Policy Number | Claims Adjusting Service |
|---|---|
| XSL G27010271 | ESIS |
| RAL H08709889 | ESIS |
| SCF C46786464 | ESIS |

| Policy Number(s) | SCF C46786464 | |
|---|---|---|
| Type of Claim | State | Fee per Claim(s) |
| Blended – Indemnity and Managed Medical | All Except for all State Exceptions | 1,056 |
| Blended – Indemnity and Managed Medical | Texas | 1,056 |
| Blended – Indemnity and Managed Medical | Florida | 1,056 |
| Record Only | All Except for all State Exceptions | 57 |
| Medical Only | All Except for all State Exceptions | 143 |
| Employers' Liability | All Except for all State Exceptions | 2,040 |
| USL&H | All Except for all State Exceptions | 1,933 |

| Policy Number(s) | RAL H08709889 | |
|---|---|---|
| Type of Claim | State | Fee per Claim(s) |
| Bodily Injury | All Except for all State Exceptions | 628 |
| Property Damage | All Except for all State Exceptions | 628 |
| Personal Injury Protection | All Except for all State Exceptions | 648 |

## D) LOSSES SUBJECT TO A LOSS LIMITATION

| Policy Number(s) | Loss Limitation | ALAE Treatment | Expected Loss Amount |
|---|---|---|---|
| RAL H08709889 | 1,500,000 | Erodes Retention | 2,012,409 |
| SCF C46786464 | 1,000,000 | Erodes Retention | 8,865,102 |

ACE Risk Management ®

## E) COLLATERAL

No collateral security is required.

## F) PROGRAM AGGREGATE PROTECTION

### NOT APPLICABLE

## G) NON-PREMIUM SURCHARGES AND ASSESSMENTS

| Policy Number(s) | State | Description | Adjustment Base | Adjustment Base ($) | Estimated Surcharge($) |
|---|---|---|---|---|---|
| XSL G27010271 | FL | Florida Hurricane Catastrophe Fund | Written Premium | 4,793 | 62 |
| XSL G27010271 | KY | Kentucky Domestic, Foreign and Alien Insurers | Written Premium | 1,231 | 22 |
| XSL G27010271 | NJ | New Jersey Insurance Guarantee | Written Premium | 2,792 | 25 |
| XSL G27010271 | WV | West Virginia Insurance Premium | Written Premium | 440 | 2 |
| RAL H08709889 | CA | California Auto Fraud Assessment | Number of Vehicles | 934 | 1,681 |
| RAL H08709889 | CO | Colorado Automobile Theft Prevention Authority Fee | Number of Vehicles | 166 | 166 |
| RAL H08709889 | FL | Florida Hurricane Catastrophe Fund | Written Premium | 281,504 | 3,660 |
| RAL H08709889 | NJ | New Jersey Insurance Guarantee | Written Premium | 26,586 | 239 |
| RAL H08709889 | NY | New York Vehicle Law Enforcement Fee | Number of Power Units | 466 | 4,660 |
| SCF C46786464 | AK | Alaska Insurance Guaranty Association Assessment | Written Premium (State Only) | 113,556 | 738 |
| SCF C46786464 | CT | Connecticut Assessment Fund | Standard Premium (State Only) | 110,882 | 2,107 |
| SCF C46786464 | CT | Connecticut Second Injury Fund Surcharge | Written Premium (State Only) plus Deductible Credit | 190,634 | 5,242 |
| SCF C46786464 | IL | Industrial Commission Operations Surcharge | Written Premium (State Only) | 1,934,316 | 19,537 |
| SCF C46786464 | KY | Kentucky Assessment Rate | Manual Premium (State Only) x ILF x Experience Mod + TRIA + DTEC + Retro Adjustments | 141,657 | 8,896 |
| SCF C46786464 | MA | Massachusetts Department of Industrial Accidents Assessment | DIA Standard Premium | 120,056 | 7,083 |
| SCF C46786464 | ME | Maine Workers | Standard Premium | 369,235 | 10,966 |

ACE Risk Management ®

| | | Compensation Administrative Fund | (State Only) | | |
|---|---|---|---|---|---|
| SCF C46786464 | MN | Special Compensation Fund Surcharge | Modified Loss Cost | 35,276 | 3,140 |
| SCF C46786464 | MN | WCRA Retrospective Assessment | Modified Loss Cost | 35,276 | 561 |
| SCF C46786464 | MT | Stay-at-Work/Return-to-Work Surcharge | Written Premium plus Deductible Credit | 189,530 | 155 |
| SCF C46786464 | MT | Workers Compensation Regulatory Assessment Charge | Written Premium plus Deductible Credit | 189,530 | 3,937 |
| SCF C46786464 | MT | Workers Compensation Subsequent Injury Fund Surcharge | Written Premium plus Deductible Credit | 189,530 | 237 |
| SCF C46786464 | NJ | New Jersey Second Injury Fund Surcharge | Total Modified Premium | 733,261 | 57,341 |
| SCF C46786464 | NJ | New Jersey Uninsured Employers Fund | Total Modified Premium | 733,261 | 1,247 |
| SCF C46786464 | NY | Workers Compensation Regulatory Assessment Surcharge | Standard Premium plus TRIA plus DTEC | 589,017 | 118,981 |
| SCF C46786464 | OR | Oregon Premium Assessment | Written Premium (State Only) | 23,159 | 1,436 |
| SCF C46786464 | SD | South Dakota Insurance Policy Fee | Number of Policies | 1 | 14 |
| SCF C46786464 | VT | Vermont Workers Compensation Administration Fund Assessment | Written Premium | 19,466 | 341 |
| SCF C46786464 | WV | West Virginia Surcharge | Written Premium | 548 | 3 |
| SCF C46786464 | WV | WV Debt Reduction Surcharge | Written Premium less EL ILF premium plus Deductible Credit | 29,035 | 2,613 |
| SCF C46786464 | WV | WV Regulatory Surcharge | Written Premium less EL ILF premium plus Deductible Credit | 29,035 | 1,597 |
| **TOTAL** | | | | | 256,689 |

Surcharges will be adjusted at audit and concurrent with any other applicable premium adjustment.  The rates used to adjust the surcharges are set by the states and will be reflected on the declarations, state schedule, endorsement, or audit of each policy. The formulae for the adjustment bases used to adjust the surcharges are also set by the states.  The written description of the adjustment base is provided for your information in understanding the result of the formulae set by the states.

ACE Risk Management ®

## H)  PROGRAM > PAYMENT TERMS

| PAYMENT TERMS | | | | | |
|---|---|---|---|---|---|
| **Item** | **Payee** | **Payment Plan** | **Total Estimated Cost ($)** | **Deferral ($)** | **Total Pay – In ($)** |
| Estimated Workers Compensation Premium | ACE USA | Prepaid | 11,191,401 | | **11,191,401** |
| Estimated Auto Liability Premium | ACE USA | Prepaid | 2,977,335 | | **2,977,335** |
| Estimated Excess Liability Premium | ACE USA | Prepaid | 105,683 | | **105,683** |
| Surcharges | ACE USA | Prepaid | 256,689 | | **256,689** |
| TOTALS | | | 14,531,108 | | **14,531,108** |

*__Deferrals__*

**Other Deferred Items**

Other items shown as deferred in the schedule below are deferred until we calculate a premium adjustment.  At adjustment we calculate revised premiums and surcharges; compare those revised premiums and surcharges to what has been paid; and bill the difference.  Items shown as deferred may have a different value associated with them after the premium adjustment calculation.

ACE Risk Management ®

| ACE USA INSTALLMENT SCHEDULE | | | |
|---|---|---|---|

| Installment Date | XSL G27010271 | RAL H08709889 | SCF C46786464 |
|---|---|---|---|
| 06/28/2012 | 105,794 | 2,987,741 | 11,437,573 |
| **Total Cash Pay-In to ACE** | 105,794 | 2,987,741 | 11,437,573 |

| Installment Date | Payment Amount ($) |
|---|---|
| 06/28/2012 | 14,531,108 |
| **Total Cash Pay-In to ACE** | 14,531,108 |

ACE Risk Management ®

## I) AGREEMENT BETWEEN "YOU" AND "US"

### 1. General Terms

Except as modified by this Proposal, the Notice of Election is subject to the Collateral and Payment Agreement (hereinafter, the "Collateral Agreement") executed between the Insured and the Company (with respect to non-premium charges and any non-monetary rights and obligations) and is a "Notice of Election" as that term is defined in the "Collateral Agreement". The terms "you", "yours" and the "Insured" refer to the named insured on the Policies listed in **A) Schedule of Policies**. (the "Policies") The terms "us", "ours", "we" and the "Company" refer to the Issuing Companies listed in **A) Schedule of Policies**. All other capitalized terms in this Notice of Election are defined as provided in the Collateral Agreement.

This agreement describes the mutual agreement between you and us under which the final countrywide premiums for the Policies will be determined. If a state does not allow the adjustment of premium based upon this mutual agreement, the terms of premium adjustment for that state will be found on an endorsement to the policy and this agreement serves as the notice of election for that state. For those states, we will adjust your premiums in accordance with the applicable Policy and allocate the difference to the states that allow the premium to be adjusted in accordance with this agreement.

### 2. Premium Payment and Loss Reimbursement Terms

You are responsible for losses and Allocated Loss Adjustment Expense within the Loss Limitation of each Retrospectively Rated Policy, as shown in **D) Reimbursable Losses**. You are responsible for the final premiums for each Policy, adjusted for exposure as set out in **B) Premium Calculation and Adjustment**.

You also agree to pay any state surcharges and/or assessments that are not included in the final premiums, as shown in **G) Non-Premium Surcharges and Assessments** herein and on the Policies.

Any payment due us, or return payment due you will be payable in its entirety within fifteen (15) days from the date of our invoice.

### 3. Premium Calculation and Adjustment

The premiums shown in **B) Premium Calculation and Adjustment** for the scheduled Policies were calculated in accordance with approved rating plans or are subject to deregulation. You certify that you have elected the use of those rating plans. You also certify that you understand all terms, conditions, and provisions of those plans, including the methods of adjustment, payment, and penalties for cancellation outlined herein and/or in endorsements to the policies listed in the Schedule of Policies (the "Policies").

The premium shown in **B) Premium Calculation and Adjustment** for the scheduled Policies is earned at inception. The minimums shown in **B) Premium Calculation and Adjustment** for the scheduled Policies are absolute minimums.

No premium charge has been made for war-risk hazard, it being understood that the United States Government self-insures the exposures falling under the provisions of the War Hazards Compensation Act.

### 4. Claims Administration and Expense

The Company has contracted with the Claims Adjusting Service(s) shown in C) Claims Administration and Expense as its agent to investigate, adjust, settle and provide for the defense of claims in all states in accordance with the terms of the scheduled policies and to collect, calculate and administer the Paid Loss Deposit Fund and/or Claims Administration Expenses on the Company's behalf.

Should the Company terminate the contractual arrangement between the Company and any Claims Adjusting Service(s) at the request of the Insured or should the Claims Adjusting Service no longer meet the Company's minimum requirements, the Company and the Insured shall select another Claims Adjusting Service that meets the Company's minimum requirements to handle future claims and possibly take over existing claims. Notwithstanding the previous

ACE Risk Management ®

sentence, if the Company and the Insured cannot come to a mutual agreement within a reasonable time needed to transfer claims, or if the Company believes in good faith that the finances of the existing Claims Adjusting Service have deteriorated or could deteriorate rapidly, then the Company shall select the new Claims Adjusting Service. Once the new Claims Adjusting Service is selected, this Agreement will be deemed automatically amended to reflect the new Claims Adjusting Service, and the Company will inform the Insured of the revised or additional Claims Administration Expenses. The Insured shall pay such amounts by the Required Payment Date.

In the event of the termination of such contractual arrangement, the Company shall administer, calculate and collect the Paid Loss Deposit Fund itself, or shall assign such responsibility to the replacement Claims Adjusting Service.

If an adjustment is determined to be necessary by the Company, Claims Administration Expense will be adjusted with loss information valued at 6 months after Policy expiration and as of each anniversary of Policy expiration thereafter. Adjustments will be calculated in accordance with the fees listed in **C) Claims Administration and Expense**.

Claims Administration Expense will be charged for each individual type of claim listed in **C) Claims Administration and Expense** resulting from an accident, incident or occurrence.

Unless otherwise specified in an agreement between the Claims Adjusting Service and the Company, a Workers Compensation claim is considered a Medical Only type of claim if it is closed within 90 days from the date of receipt and has medical payments totaling less than $2,500. Otherwise the claim is adjusted at the appropriate Indemnity type of claim rate.

## 5.  *Losses Subject to a Loss Limitation*

When a workers compensation policy is subject to a Loss Limitation, as defined herein, the Loss Limitation applies as follows: (i) in the case of bodily injury as the result of disease, the Loss Limitation applies separately to each employee who sustains such bodily injury; and separately, (ii) in the case of bodily injury as the result of an accident, the Loss Limitation applies to the aggregate of all employees who sustain such bodily injury in a single accident or occurrence.

When an automobile policy is subject to a Loss Limitation, the Loss Limitation applies per accident.

When any Basis of Adjustment, as shown in B) Premium Calculation and Adjustment, is based upon Losses Subject to a Loss Limitation then that adjusted premium component will include the following:

> **Erodes the Retention:** A dollar amount for each Incurred Loss including related Allocated Loss Adjustment Expense, up to the amount of the Loss Limitation.

Incurred Loss means the amount we have paid plus amounts we estimate we will pay in connection with an incident, occurrence, or accident.

Allocated Loss Adjustment Expense, or ALAE, means such claim expenses, costs and any interest incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or lawsuit that the Company directly allocates to a particular claim

Losses subject to a Loss Limitation are considered premium. If the Company determines that such an adjustment is necessary based on applicable state law and regulatory requirements, this portion of your premium, along with any premium charge dependent upon the value of Losses Subject to a Loss Limitation may be adjusted in accordance with the terms outlined in Section B – PREMIUM CALCULATION AND ADJUSTMENT, using loss information valued 6 months after the expiration date of the Policy and each anniversary of such expiration annually thereafter. In calculating a premium adjustment we may apply loss development factors to the incurred losses limited to the Loss Limitation.

## 6.  *Collateral*

You are not required to provide any collateral or other security.

## 7.  *Taxes, Assessments, and Surcharges*

The tax and assessment charges herein are based upon the Company's current knowledge of the state's interpretation of current law. If current law or a state interpretation thereof changes, or a rate or basis of assessment changes, then the Insured and the Company agree that the Company shall have the right to amend such prior tax and/or assessment charges to the Insured in order to match the state interpretation, and the Company shall bill the Insured for such retrospective

ACE Risk Management ®

taxes and/or assessments accordingly.

If audited exposures and/or adjusted premiums generate a basis of assessment for any tax, assessment, or surcharge not listed in schedule G) NON-PREMIUM SURCHARGES AND ASSESSMENTS, then the Insured and the Company agree that the Company shall have the right to add such charges to the schedule and bill the Insured accordingly.

## 8.  Audit Cooperation for Policies Subject to Audit

The Policies require the Insured to keep records of information needed to compute premium and to allow the Company examination of the Insured's books and records as they relate to the Policy or Policies.

If the Insured does not allow this examination or furnish the Company the records or information as requested or does not otherwise cooperate in allowing the Company to perform the audit(s) within ninety days after the expiration or cancellation of the Policies, the Company may estimate the Insured's premium adjustment, subject to applicable state law requirements. The Company, in its sole discretion, will base its calculation upon the assumption that the Insured's exposure base will increase by an amount up to two hundred percent (200%) above the original estimate. Such calculation will be authorized by the Director of Premium Audit Field Operations of the Company's ACE Risk Management business having supervisory authority over audit services, or their designee.   The Company will calculate the Insured's premium adjustment based on the applicable increase.  The Insured will also be responsible for cooperating in the completion of any employer documentation required by a governmental or regulatory body regarding a premium audit, such as an explanation or certification when no actual audit is performed.  The Insured will be responsible to indemnify the Company for any fines or penalties that we may incur as a result of the Insured's failure to cooperate in the completion of an actual premium audit or of any required documentation.

## 9.  Uninsured / Underinsured Motorist Insurance & Personal Injury Protection: Returning of Required Executed Selection Forms

The terms of this Notice of Election pertaining to Automobile Liability will be amended as provided in this paragraph if we do not receive properly executed state coverage selection forms prior to the effective date.  Failure to return all required selection forms shall be deemed your consent and acceptance that the auto policy (ices) will be issued and rated to include the limits of UM/UIM coverage equal to the policy limits, or equal to the maximum limits required by law if lower than policy limits, and the limit for PIP coverage that we are required to offer for each state.  In the event we do not receive the properly executed forms and we apply UM/UIM and PIP limits as described herein, an additional charge for this coverage will be added to your Auto premium.

## 10. Deregulation Disclosures and Certifications

Certain states may require that deregulation disclosures and/or certifications be in writing and agreed to between the Insured and the Company.  Any such disclosures and/or certifications are listed below: N/A

ACE Risk Management ®

**IN WITNESS WHEREOF**, this Notice of Election has been executed by the parties hereto, as officers of each, each of which intends by its execution hereof to be legally bound by the terms of this agreement, subject to the entry of an order by the Bankruptcy Court approving the Insured's entry into and performance under this agreement. This agreement shall be effective when signed below or in counterpart, subject to the entry of an order by the Bankruptcy Court approving the Insured's entry into and performance under this agreement, and photocopy, facsimile, electronic or other copies shall have the same effect for all purposes as an ink-signed original.

HOSTESS BRANDS INC FKA INTERSTATE
BAKERIES CORPORATION

The "Company"

Name: _____
        (Please Print)

Name: _____
        (Please Print)

Title: _____

Title: _____

Signature: _____

Signature: _____

Date: _____

Date: _____

Branch Office Address:
Las Colinas Tower II, 225 East John Carpenter Freeway
Irving, TX 75062

ACE Risk Management ®

# INITIAL STATEMENT OF ADJUSTMENT

Insured's Name:          HOSTESS BRANDS INC FKA INTERSTATE
                         BAKERIES CORPORATION
Insured's Address:       12 E Armour Blvd
                         Kansas City, Missouri 64111

## Workers' Compensation

SCF C46786464

| State | Estimated Policy Premium ($) | Initial AARO Adjustment ($) | Total Estimated Written Premium ($) |
|---|---|---|---|
| Alabama | 82,372 | 51,611 | 133,983 |
| Alaska | 71,934 | 41,622 | 113,556 |
| Arizona | 91,806 | 65,149 | 156,955 |
| Arkansas | 33,980 | 24,506 | 58,486 |
| Colorado | 110,129 | 85,501 | 195,630 |
| Connecticut | 111,316 | 79,318 | 190,634 |
| Delaware | 9,262 | 3,362 | 12,624 |
| Florida | 422,650 | 176,366 | 599,016 |
| Georgia | 332,325 | 214,963 | 547,288 |
| Idaho | 45,896 | 17,470 | 63,366 |
| Illinois | 1,347,223 | 587,093 | 1,934,316 |
| Iowa | 157,064 | 72,140 | 229,204 |
| Kansas | 402,043 | 236,053 | 638,096 |
| Kentucky | 81,982 | 59,675 | 141,657 |
| Maine | 370,237 | 298,814 | 669,051 |
| Maryland | 130,658 | 86,664 | 217,322 |
| Massachusetts | 121,104 | 103,077 | 224,181 |
| Minnesota | 66,436 | 33,762 | 100,198 |
| Mississippi | 59,072 | 22,457 | 81,529 |
| Montana | 113,567 | 75,963 | 189,530 |
| Nebraska | 30,310 | 10,039 | 40,349 |
| Nevada | 108,626 | 58,274 | 166,900 |
| New Hampshire | 60,221 | 27,959 | 88,180 |
| New Jersey | 735,824 | 466,623 | 1,202,447 |
| New York | 589,017 | 355,968 | 944,985 |
| North Carolina | 232,075 | 154,340 | 386,415 |
| North Dakota | 332 | 0 | 332 |
| Oklahoma | 229,633 | 107,383 | 337,016 |
| Oregon | 23,159 | 15,011 | 38,170 |
| Rhode Island | 43,406 | 34,022 | 77,428 |
| South Carolina | 74,543 | 14,328 | 88,871 |
| South Dakota | 5,039 | 1,370 | 6,409 |
| Tennessee | 486,433 | 221,480 | 707,913 |
| Texas | 124,238 | 48,147 | 172,385 |
| Utah | 115,634 | 74,676 | 190,310 |
| Vermont | 13,634 | 5,832 | 19,466 |
| Virginia | 88,661 | 30,181 | 118,842 |
| West Virginia | 20,381 | 9,203 | 29,584 |
| Wisconsin | 69,171 | 8,694 | 77,865 |
| Wyoming | 912 | 0 | 912 |
| | | | |
| **TOTAL:** | 7,212,305 | 3,979,096 | 11,191,401 |

ACE Risk Management ®

## General Liability

XSL G27010271

| State | Estimated Policy Premium ($) | Initial AARO Adjustment ($) | Total Estimated Written Premium ($) |
|---|---|---|---|
| Alabama | 730 | 362 | 1,092 |
| Alaska | 333 | 162 | 495 |
| Arizona | 845 | 404 | 1,249 |
| Arkansas | 1,105 | 551 | 1,656 |
| California | 13,944 | 6,967 | 20,911 |
| Colorado | 605 | 289 | 894 |
| Connecticut | 1,155 | 565 | 1,720 |
| Delaware | 93 | 46 | 139 |
| Dist. of Col. | 143 | 72 | 215 |
| Florida | 4,793 | 0 | 4,793 |
| Georgia | 619 | 306 | 925 |
| Hawaii | 24 | 12 | 36 |
| Idaho | 478 | 230 | 708 |
| Illinois | 3,672 | 1,785 | 5,457 |
| Indiana | 1,458 | 702 | 2,160 |
| Iowa | 612 | 289 | 901 |
| Kansas | 537 | 256 | 793 |
| Kentucky | 834 | 397 | 1,231 |
| Louisiana | 1,410 | 711 | 2,121 |
| Maine | 445 | 222 | 667 |
| Maryland | 607 | 290 | 897 |
| Massachusetts | 1,643 | 798 | 2,441 |
| Michigan | 1,571 | 747 | 2,318 |
| Minnesota | 468 | 224 | 692 |
| Mississippi | 861 | 428 | 1,289 |
| Missouri | 1,880 | 907 | 2,787 |
| Montana | 607 | 304 | 911 |
| Nebraska | 257 | 119 | 376 |
| Nevada | 872 | 438 | 1,310 |
| New Hampshire | 457 | 231 | 688 |
| New Jersey | 1,873 | 919 | 2,792 |
| New Mexico | 170 | 84 | 254 |
| New York | 14,145 | 7,584 | 21,729 |
| North Carolina | 1,168 | 557 | 1,725 |
| North Dakota | 94 | 45 | 139 |
| Ohio | 1,916 | 913 | 2,829 |
| Oklahoma | 1,065 | 513 | 1,578 |
| Oregon | 223 | 0 | 223 |
| Pennsylvania | 974 | 461 | 1,435 |
| Rhode Island | 375 | 190 | 565 |
| South Carolina | 574 | 284 | 858 |
| South Dakota | 36 | 17 | 53 |
| Tennessee | 1,196 | 572 | 1,768 |
| Texas | 1,797 | 932 | 2,729 |
| Utah | 844 | 417 | 1,261 |
| Vermont | 91 | 45 | 136 |
| Virginia | 839 | 397 | 1,236 |
| Washington | 575 | 265 | 840 |
| West Virginia | 292 | 148 | 440 |
| Wisconsin | 584 | 277 | 861 |

ACE Risk Management ®

| Wyoming | 242 | 118 | 360 |
|---|---|---|---|
| | | | |
| **TOTAL:** | 72,131 | 33,552 | 105,683 |

## Automobile Liability

RAL H08709889

| State | Estimated Policy Premium ($) | Initial AARO Adjustment ($) | Total Estimated Written Premium ($) |
|---|---|---|---|
| Alabama | 26,904 | 0 | 26,904 |
| Alaska | 10,024 | 0 | 10,024 |
| California | 273,641 | 60,988 | 334,629 |
| Colorado | 42,331 | 0 | 42,331 |
| Florida | 281,504 | 0 | 281,504 |
| Georgia | 53,690 | 0 | 53,690 |
| Illinois | 208,105 | 0 | 208,105 |
| Indiana | 57,059 | 0 | 57,059 |
| Iowa | 38,439 | 0 | 38,439 |
| Kansas | 95,967 | 0 | 95,967 |
| Louisiana | 224,570 | 0 | 224,570 |
| Maine | 115,205 | 0 | 115,205 |
| Missouri | 81,139 | 0 | 81,139 |
| Montana | 26,856 | 0 | 26,856 |
| Nevada | 120,691 | 0 | 120,691 |
| New Jersey | 26,586 | 0 | 26,586 |
| New York | 285,515 | 0 | 285,515 |
| North Carolina | 161,163 | 0 | 161,163 |
| Ohio | 242,901 | 0 | 242,901 |
| Oklahoma | 92,344 | 0 | 92,344 |
| Pennsylvania | 158,018 | 0 | 158,018 |
| Tennessee | 135,176 | 0 | 135,176 |
| Utah | 109,161 | 0 | 109,161 |
| Washington | 49,358 | 0 | 49,358 |
| | | | |
| **TOTAL:** | 2,916,347 | 60,988 | 2,977,335 |

## Totals – All Policies

| Policy Number(s) | Estimated Policy Premium ($) | Initial AARO Adjustment ($) | Total Estimated Written Premium ($) |
|---|---|---|---|
| SCF C46786464 | 7,212,305 | 3,979,096 | 11,191,401 |
| XSL G27010271 | 72,131 | 33,552 | 105,683 |
| RAL H08709889 | 2,916,347 | 60,988 | 2,977,335 |
| | | | |
| **TOTAL:** | 10,200,783 | 4,073,636 | 14,274,419 |

ACE Risk Management ®

**ARKANSAS**
**WORKERS COMPENSATION**
**INDIVIDUAL RISK FILING**

| | |
|---|---|
| ACE American Insurance Company | 626-22667 |
| Indemnity Insurance Company of North America | 626-43575 |
| ACE Fire Underwriters Insurance Company | 626-20702 |
| ACE Property & Casualty Insurance Company | 626-20699 |

Named Insured:                HOSTESS BRANDS INC. FKA INTERSTATE BAKERIES

                              CORPORATION

Effective Date:               07/01/2012

Policy Number:                SCF C46786464

Carrier Name:                 ACE American Insurance Company

Arkansas Standard Premium has been amended due to the application of a Large Deductible Credit and/or ARM Alternative Rating Option adjustment as follows:

Arkansas Standard Premium:          $ 33,642

Arkansas Deductible Credit:         $ 33,642

Arkansas AARO Adjustment:           $ (167)

Arkansas Total Estimated Premium:   $ 58,486

I certify that I agree with the company to the premium adjustments outlined above.

Name:        _____

Title:       _____

Signature:   _____

Date:        _____

                                        Arkansas Insurance Department
                                        1200 West 3rd Street
                                        Little Rock, AR 72201-1904
                                        ATTN: Carol Stiffler

ACE Risk Management ®

NEW YORK RETROSPECTIVE RATING PLAN MANUAL                                        APPENDIX
---------------------------------------------------------------------------------------------------------------------------------------------

NOTICE OF ELECTION
OF
RETROSPECTIVE RATING PLAN
NEW YORK LARGE RISK RATING OPTION

The undersigned certifies that the named Insured has elected the use of the Retrospective Rating Plan as detailed below. It is also certified that the insured understands all terms, conditions and provisions of the Plan,including method of premium computation, payment and penalties for cancellation.

1. Name of Insured  HOSTESS BRANDS INC FKA INTERSTATE BAKERIES CORPORATION

2. Address of Insured  12 E Armour Blvd  Kansas City, Missouri 64111

3. Name of Carrier  ACE American Insurance Company

4. Policy Number(s)  SCF C46786464

5. Effective Date of Plan  07/01/2012

6. Term of Plan (Check One)  ☐ One-Year   ☐ Three-Year   ☐ Wrap-Up   ☒ Three-Month

7. Line(s) of Insurance  _____

8. a. Estimated Annual New York WC Standard Premium       $ 585,166

   b. Estimated Annual WC Standard Premium for States
   Other Than NY            $ 6,593,378

   c. Estimated Annual Premium for All Lines Other
   Than WC            $ 3,083,018

9. Retrospective Rating Values

   a. Maximum Premium Factor (or Maximum Ratable Incurred Loss Rate) 0

   b. Minimum Premium Factor (or Minimum Ratable Incurred Loss Rate) 0.218

   Minimum/Maximum Exposure Base      PAYROLL

   c. Net Variable Expense Factor (or Loss Conversion Factor) 0.026

   d. Tax Multiplier   0.054

   e. WC Loss Limitation Factor        _____ $ Loss Limit  1,000,000

      Other than WC Loss Base        _____ $ Loss Limit  _____

      Loss Limitation Exposure Base        PAYROLL

   f. Basic Expense Factor (Fixed Expense Factor)  0.218

      Basic Expense Exposure Base   PAYROLL

   g. Retrospective Development Factors Applicable  ☐ Yes   ☑ No

10. Special Conditions   N/A_____
    _____

_____       _____
         Signature of Insured                                    Date Signed

_____
      Signature of Carrier Representative

ACE Risk Management ®

# Section II

# LIMITS AND COVERAGES

ACE Risk Management ®

# Limits and Coverages

Workers Compensation
Policy Number**:**  SCF C46786464

Policy Limits - Workers Compensation

| | | |
|---|---|---|
| Part One | Statutory | |
| Part Two | Bodily Injury by Accident , each Accident | $1,000,000 |
| | Bodily Injury by Disease, Policy Limit | $1,000,000 |
| | Bodily Injury by Disease, each Employee | $1,000,000 |

Other states Insurance: Part three applies to:

All states except ND, OH, WA, WY

Policy Form and Endorsements

- The policy forms and endorsements being offered may be different than those requested.
- State mandatory endorsements will be attached to the policy in addition to those listed below.

| Title | Form # | Edition | Comments |
|---|---|---|---|
| NCCI | WC 00 00 00 B | 07-11 | |
| EARLIER NOTICE OF CANCELLATION AND NONRENEWAL | CKE10290 | 0301 | 90 |
| NOTIFICATION OF PREMIUM ADJUSTMENT | WC990409 | 0305 | |
| VOLUNTARY COMP - MARITIME | WC000203 | 0484 | Description of work: If Any; WC Law: State of Hire |
| MARITIME COVERAGE | WC000201A | 0492 | Description of Work: If Any; TWM&C: Included; Limits of Liability: $1,000,000 |
| FEDERAL EMPLOYERS LIABILITY ACT | WC000104 | 0484 | Limits of Liability: $1,000,000; State: If Any |
| LONGSHORE AND HARBOR WORKERS COMPENSATION ACT | WC000106A | 0492 | |
| VOLUNTARY COMP & EL - AOS | WC000311A | 0891 | Employees:Any employee EXEMPT from the Workers Compensation Law. NJ & WI are excluded; State of Employment: All states listed under Item 3.a. of the Information Page except NJ & WI; Designated WC Law: |
| DESIGNATED WORKPLACES EXCLUSION | WC000302 | 0484 | Any workplace in the states of CA, IN, LA, MI, MO, OH, PA and WA except those workplaces where an employee hired in a state listed in Item 3A of the |

ACE Risk Management ®

| | | | | Information Page is located |
|---|---|---|---|---|
| ALTERNATE EMPLOYER | WC000301A | 0289 | | Alternate Employer: As per schedule on file with us; Address: Does not apply to Alaska, or to any employee lease contract/arrangement; State: any state shown in Item 3.A. of the Information Page; Contract or Project: |
| VOLUNTARY COMP - FOREIGN | WC990302B | 0697 | | Employees: Any US Employee while temporarily OUTSIDE the United States or Canada; Designated Country or Location of Operations: Anywhere else in the world unless subject to trade/economic sanctions by US; Designated WC Law: State of Hire; Repatriation Exp: $25,000 |
| STOP-GAP EMPLOYERS LIABILITY | WC990303C | 0492 | | |
| WAIVER OF OUR RIGHTS - UT | WC430305 | 1000 | | Any person or organization against whom you have agreed to waive your right of recovery in a written contract, provided such contract was executed prior to the date of loss. |
| TRADE OR ECONOMIC SANCTIONS ENDORSEMENT | WC990773 | 1106 | | |
| WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS | WC000313 | 1105 | | Any person or organization against whom you have agreed to waive your right of recovery in a written contract, provided such contract was executed prior to the date of loss. |
| FEDERAL EMPLOYERS LIABILITY ACT | WC000104A | 1004 | | Limits of Liability: $1,000,000; State: If Any |
| WEST VIRGINIA EL INTENTIONAL ACT EXCLUSION ENDORSEMENT | WC470301A | 0308 | | |

ACE Risk Management ®

# Limits and Coverages

General Liability
Policy Number**:** XSL G27010271

Policy Limits - General Liability
| | |
|---|---|
| General Aggregate Limit | $5,000,000 |
| Products-Completed Operations Aggregate Limit | $4,000,000 |
| Personal and Advertising Injury Limit | $1,000,000 |
| Each Occurrence Limit | $1,500,000 |
| Damage To Premises Rented To You Limit | $1,000,000 |
| Medical Expense Limit | $0 |

This is an excess policy in which your Retained Limits are as follows:
| | |
|---|---|
| Each Occurrence | $1,000,000 |
| Personal & Advertising Injury | $1,000,000 |

Policy Form and Endorsements

- The policy forms and endorsements being offered may be different than those requested.
- State mandatory endorsements will be attached to the policy in addition to those listed below.

| Title | Form # | Edition | Comments |
|---|---|---|---|
| Excess Commercial General Liability Policy | XS6U91d | 06-10 | |
| RADIOACTIVE MATTER EXCLUSION | XS21232a | 0510 | |
| SILICA, DUST AND PARTICULATE MATTER EXCLUSION | XS21233 | 1106 | |
| ADDITIONAL INSURED WHERE REQUIRED BY WRITTEN CONTRACT | XS21234 | 1106 | |
| EARLIER NOTICE OF CANCELLATION AND NON-RENEWAL | ALL10617a | 0606 | 90 |
| TRADE OR ECONOMIC SANCTIONS ENDORSEMENT | ALL21101 | 1106 | |
| CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM | ALL23684 | 0108 | |
| INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE | LD20036 | 0206 | |
| MENTAL INJURY COVERAGE | LD20038 | 0206 | |
| AMENDMENT OF DUTIES IN EVENT OF OCCURRENCE | LD20283 | 0606 | |
| UNINTENTIONAL FAILURE TO DISCLOSE | LD2X62a | 0408 | |
| DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT | TRIA11b | 0108 | |

ACE Risk Management ®

| | | | |
|---|---|---|---|
| FUNGI OR BACTERIA EXCLUSION | XS18225 | 0405 | |
| AMENDMENT OF CONDITIONS | XS18355a | 0610 | |
| FIRE, EXPLOSION, SMOKE AND WATER DAMAGE LEGAL LIABILITY | XS18357a | 0610 | |
| NON CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS | XS20288 | 0606 | All persons or entities added as additional insureds through an endorsement with the term "Additional Insured" in the title. |
| BROAD FORM NAMED INSURED | XS20290 | 0606 | |
| LOT OR BATCH CLAUSE | XS20301 | 0606 | |
| PESTICIDE OR HERBICIDE APPLICATOR COVERAGE | XS20511 | 1106 | |
| ALIENATED PREMISES | XS20722a | 0510 | |
| CONTRACTUAL LIABILITY - RAILROADS | XS20723a | 0510 | Scheduled RR:  North Carolina Railroad Company; Designated job site: 2809 Highwoods Blvd., Raleigh, NC 27609 |
| EXCLUSION - INTERCOMPANY PRODUCTS SUITS | XS21183 | 1106 | |
| ADDITIONAL INSURED - EMPLOYEES FELLOW EMPLOYEE - BI ONLY | XS21219a | 0510 | |
| FELLOW EMPLOYEE COVERAGE | XS21225 | 1106 | |
| KNOWLEDGE OF OCCURRENCE | XS21226a | 0510 | Your executive officers or anyone responsible for administering your insurance program. |
| NONOWNED WATERCRAFT EXCEPTION | XS21227 | 1106 | <51 |
| EMPLOYEE BENEFIT LIABILITY | XS6W24A | 0199 | 1,500,000; 5,000,000; 07/01/2005; check Year 2000 box |
| ADDITIONAL INSURED-DESIGNATED PERSON OR ORGANIZATION | XS6W25a | 0610 | Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss. |
| ADDITIONAL INSURED-LESSOR OF LEASED EQUIPMENT | XS6W29 | 0995 | Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss. |
| ADDITIONAL INSURED - VENDORS | XS6W31b | 0610 | Name of Person: Any Vendor whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss.; Your Products: All of your products. |
| AMENDMENT OF CONTRACTUAL LIABILITY-EXCLUSION FOR PERSONAL | XS6W32a | 0407 | |

ACE Risk Management ®

| | | | |
|---|---|---|---|
| INJURY | | | |
| WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS BY US | XS6W34 | 0995 | Any person or organization against whom you have agreed to waive your right of recovery in a written contract, provided such contract was executed prior to the date of loss. |
| POLLUTION EXCLUSION-HOSTILE FIRE EXCEPTION | XS6W35 | 0995 | |
| NOTICE TO OTHERS ENDORSEMENT - SCHEDULE - NOTICE BY INSURED'S REPRESENTATIVE | ALL32686 | 0111 | |
| NOTIFICATION OF PREMIUM ADJUSTMENT | ALL18057 | 1211 | |
| ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION | XS-6W25a | 0610 | APC Capital Partners, LLC 60 Madison Avenue, Suite 1215 New York, NY 10006 |
| ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION | XS-6W25a | 0610 | Gelson's Markets |
| ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION | XS-6W25a | 0610 | General Electric Capital Corporation, as Agent Attn: Account Manager (Interstate Bakeries) 299 Park Ave., 6th Floor New York, NY 10171 |
| ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION | XS-6W25a | 0610 | County of Kern County Board Members, Officials, Agents, Officers, and Employees 1115 Truxtun Ave. Bakersfield, CA 93301 |
| ADDITIONAL INSURED - VENDORS | XS-6W31b | 0610 | All of your products Name: Costco Wholesale Corporation and/or any subsidiary, proprietary company or corporation, partnership or joint venture (as required by written contract) |
| DEFENSE, INVESTIGATION, SETTLEMENT, LEGAL EXPENSE AND INTEREST ON JUDGMENTS | XS-609226 | 0610 | |

ACE Risk Management ®

# Limits and Coverages

Automobile
Policy Number**:** RAL H08709889

Policy Limits - Automobile Liability

| Coverage | Symbol | Limit |
|---|---|---|
| Liability | 1 | 3,500,000 |
| Medical Payments | 2 | 5,000 |
| Personal Injury Protection | 5 | Stat & Reject |
| Additional Personal Injury Protection | | Not Covered |
| Uninsured Motorist | 6 | Stat Min/Reject |
| Underinsured Motorist | 6 | Stat Min/Reject |

Policy Form and Endorsements

- The policy forms and endorsements offered may be different than those requested.
- State mandatory endorsements will be attached to the policy in addition to those listed below.

| Title | Form # | Edition | Comments |
|---|---|---|---|
| BUSINESS AUTO | CA 00 01 | 03-10 | |
| EMPLOYEES AS INSUREDS | CA9933 | 0299 | |
| MEXICO COVERAGE ENDORSEMENT | DA9T51 | 0793 | |
| NAMED INSUREDS | DA13118 | 1202 | |
| WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS | DA13115 | 1202 | Any person or organization against whom you have agreed to waive your right of recovery in a written contract, provided such contract was executed prior to the date of loss. |
| KNOWLEDGE OF AN ACCIDENT | DA5X68a | 0506 | Your executive officers or anyone responsible for administering your insurance program. |
| LIMITS OF INSURANCE - UNINSURED MOTORISTS/UNDERINSURED MOTORISTS | DA14671 | 1207 | |
| TRADE OR ECONOMIC SANCTIONS ENDORSEMENT | ALL21101 | 1106 | |
| PORT AUTHORITY OF NEW YORK AND NEW JERSEY | ALL21858 | 0207 | |
| ADDITIONAL INSURED - LESSOR | CA2001 | 0306 | Any Lessor whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss.; Liability: 3,500,000 |
| AUTO MEDICAL PAYMENTS COVERAGE | CA9903 | 0306 | |
| POLLUTION LIABILITY - BROADENED COVERAGE FOR COVERED AUTOS | CA9948 | 0306 | |
| EARLIER NOTICE OF CANCELLATION AND NON-RENEWAL | ALL10617a | 0606 | 90 |
| UNINTENTIONAL ERRORS & OMISSIONS | DA14672a | 0907 | |

ACE Risk Management ®

| DRIVE OTHER CAR COVERAGE - BROADENED COVERAGE FOR NAMED INDIVIDUALS | CA9910 | 0902 | Limits and coverages: Per policy Dec; Name of Individual: Any Executive Officer assigned a company auto who is not covered under a personal auto liability policy |
|---|---|---|---|
| MOTOR CARRIER ENDORSEMENT | MCS90 | 0400 | Primary; 3,500,000 |
| NUCLEAR ENERGY LIABILITY EXCLUSION | IL0021 | 0908 | |
| GARAGEKEEPERS COVERAGE | CA9937 | 0310 | |
| NOTICE TO OTHERS ENDORSEMENT - SCHEDULE - NOTICE BY INSURED'S REPRESENTATIVE | ALL32686 | 0111 | |
| NOTIFICATION OF PREMIUM ADJUSTMENT | ALL18057 | 1211 | |
| ADDITIONAL INSURED – DESIGNATED PERSONS OR ORGANIZATIONS | DA-9U74a | 0411 | Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss |
| ADDITIONAL INSURED – DESIGNATED PERSONS OR ORGANIZATIONS | DA-9U74a | 0411 | County of Kern, County Board Members, Officials, Agents, Officers, and Employees 1115 Truxtun Ave. Bakersfield, CA 93301 |
| ADDITIONAL INSURED – DESIGNATED PERSONS OR ORGANIZATIONS | DA-9U74a | 0411 | APC Capital Partners, LLC 60 Madison Avenue, Suite 1215 New York, NY 10006 |
| NON-CONTRIBUTORY ENDORSEMENT FOR ADDITIONAL INSUREDS | DA-21886a | 0411 | Organization: All persons or entities added as additional insureds through an endorsement with the term "Additional Insured" in the title. |
| NOTICE OF OCCURRENCE | DA-14673a | 0411 | |
| STATED AMOUNT INSURANCE | CA9928 | 1001 | |

Laws in many states require that an insurance company provide uninsured and/or underinsured motorist coverage (UM/UIM) for automobile Policies in an amount equal to the automobile Policy's Liability limits unless the insured either rejects coverage entirely (where allowed) or selects lower limits. Likewise, many states require that an insurance company provide Personal Injury Protection coverage (PIP) unless the insured rejects coverage entirely (where allowed) or selects the lowest available option. The Insured will need to consult with its insurance and/or legal advisers to determine the choice most appropriate for the Insured and its business operations. This proposal assumes the insured will make the selections delineated below.

Uninsured &, if applicable, Underinsured Motorist Coverages

| State | Rejection Permitted | Proposed Herein |
|---|---|---|
| AL | Yes | Coverage Rejected |
| AK | Yes | Coverage Rejected |
| AZ | Yes | Coverage Rejected |
| AR | Yes | Coverage Rejected |
| CA | Yes | Coverage Rejected |
| CO | Yes | Coverage Rejected |
| CT | No | $40,000 Combined Single Limit |
| DE | Yes | Coverage Rejected |
| DC | No for Uninsured Motorist Yes for Underinsured Motorist | $55,000 Combined Single Limit for Uninsured Motorist Coverage Rejected for Underinsured Motorist |
| FL | Yes | Coverage Rejected |
| GA | Yes | Coverage Rejected |
| HI | Yes | Coverage Rejected |
| ID | Yes | Coverage Rejected |

ACE Risk Management ®

| IL | No for BI for Uninsured Motorist<br>Yes for PD for Uninsured Motorist<br>Yes for BI for Underinsured Motorist,<br>if minimum UM limits are accepted | $40,000 Combined Single Limit for Uninsured Motorist<br>PD Coverage rejected for Uninsured Motorist<br>Coverage rejected for Underinsured Motorist |
|---|---|---|
| IN | Yes | Coverage Rejected |
| IA | Yes | Coverage Rejected |
| KS | No | $50,000 Combined Single Limit |
| KY | Yes | Coverage Rejected |
| LA | Yes | Coverage Rejected |
| ME | No | $100,000 Combined Single Limit |
| MD | No | $75,000 Combined Single Limit |
| MA | No for Uninsured Motorist<br>Yes for Underinsured Motorist | $20,000 Bodily Injury per Person, $40,000 Bodily Injury<br>per Accident |
| MI | Yes | Coverage Not Offered |
| MN | No | $50,000 Combined Single Limit |
| MS | Yes | Coverage Rejected |
| MO | Yes if 5 or more vehicles.<br>If less than 5 then:<br>No for Uninsured Motorist<br>Yes for Underinsured Motorist | If 5 or more vehicles: Coverage Rejected<br>If less than 5 then: $50,000 Combined Single Limit for<br>Uninsured Motorist Coverage<br>Coverage Rejected for Underinsured Motorist |
| MT | Yes | Coverage Rejected |
| ND | Only for vehicles greater than 20,000<br>pounds GVW | Coverage rejected for vehicles greater than 20,000<br>pounds GVW and limits of $50,000 Combined Single<br>Limit for all other vehicles |
| NE | No | $50,000 Combined Single Limit |
| NV | Yes | Coverage Rejected |
| NH | No | Liability Policy Limit for Bodily Injury and $25,000 for<br>Property Damage |
| NJ | No | $35,000 Combined Single Limit |
| NM | Yes | Coverage Rejected |
| NY | No | Basic coverage with $50,000 Combined Single Limit |
| NC | No | $85,000 Combined Single Limit |
| OH | Yes | Coverage Not Offered |
| OK | Yes | Coverage Rejected |
| OR | No | $50,000 Combined Single Limit |
| PA | Yes | Coverage Rejected |
| PR | Yes | Coverage Not Offered |
| RI | Only for Property Damage | $50,000 Combined Single Limit  for Bodily Injury<br>Coverage Rejected for Property Damage |
| SC | No | $75,000 Combined Single Limit for Uninsured Motorist<br>Coverage Rejected for Underinsured Motorist |
| SD | No | Equal to Bodily Injury Limit but not greater than<br>$300,000 Combined Single Limit for Uninsured<br>Motorist and Underinsured Motorist |
| TN | Yes | Coverage Rejected |
| TX | Yes | Coverage Rejected |
| UT | Yes | Coverage Rejected |
| VT | No | $100,000 Combined Single Limit for Bodily Injury<br>$10,000 for Property Damage |
| VA | No | $70,000 Combined Single Limit |
| WA | Yes | Coverage Rejected |
| WI | No for Uninsured Motorist<br>Yes for Underinsured Motorist | $50,000 Combined Single Limit for Uninsured Motorist<br>Coverage Rejected for Underinsured Motorist |
| WV | No for Uninsured Motorist<br>Yes for Underinsured Motorist | $50,000 Combined Single Limit for Uninsured Motorist<br>Coverage Rejected for Underinsured Motorist |
| WY | Yes | Coverage Rejected |

ACE Risk Management ®

Personal Injury Protection Coverage

| State | Rejection Permitted | Proposed | | State | Rejection Permitted | Proposed |
|-------|---------------------|----------|---|-------|---------------------|----------|
| AL | | Coverage Not Available | | MT | | Coverage Not Available |
| AK | | Coverage Not Available | | ND | No | Basic Coverage |
| AZ | | Coverage Not Available | | NE | | Coverage Not Available |
| AR | Yes | Coverage Rejected | | NV | | Coverage Not Available |
| CA | | Coverage Not Available | | NH | | Coverage Not Available |
| CO | | Coverage Not Available | | NJ | No | Basic PIP Medical Expense Coverage |
| CT | | Coverage Not Available | | NM | | Coverage Not Available |
| DE | No | Basic Coverage | | NY | No | Basic Coverage |
| DC | Yes | Coverage Rejected | | NC | | Coverage Not Available |
| FL | No | Basic Coverage | | OH | | Coverage Not Available |
| GA | | Coverage Not Available | | OK | | Coverage Not Available |
| HI | No | Basic Coverage | | OR | No | Basic Coverage |
| ID | | Coverage Not Available | | PA | No | Basic Coverage |
| IL | | Coverage Not Available | | PR | | Coverage Not Available |
| IN | | Coverage Not Available | | RI | | Coverage Not Available |
| IA | | Coverage Not Available | | SC | | Coverage Not Available |
| KS | No | Basic Coverage | | SD | Yes | Coverage Rejected |
| KY | Yes | Coverage Rejected | | TN | | Coverage Not Available |
| LA | | Coverage Not Available | | TX | Yes | Coverage Rejected |
| ME | | Coverage Not Available | | UT | No | Basic Coverage |
| MD | Yes | Coverage Rejected | | VT | | Coverage Not Available |
| MA | No | Basic Coverage | | VA | Yes | Coverage Rejected |
| MI | No | Basic Coverage | | WA | Yes | Coverage Rejected |
| MN | No | Basic Coverage with No Stacking | | WI | | Coverage Not Available |
| MS | | Coverage Not Available | | WV | | Coverage Not Available |
| MO | | Coverage Not Available | | WY | | Coverage Not Available |

ACE Risk Management ®

# Section III

# ADDITIONAL PROPOSAL CONDITIONS

ACE Risk Management ®

# **Additional Proposal Conditions**

- Binding any ACE company under the terms of this proposal is conditioned upon compliance with the proposal's terms, and the following conditions:
  - o Receipt of properly executed state coverage selection forms prior to the effective date. Failure to return all required selection forms shall be deemed your consent and acceptance that the auto policy (ies) will be issued and rated to include the limits of UM/UIM coverage equal to the policy limits, or equal to the maximum limits required by law if lower than policy limits, and the limit for PIP coverage that we are required to offer for each state. In the event we do not receive the properly executed forms and we apply UM/UIM and PIP limits as described herein, an additional charge for this coverage will be added to your Auto premium. Please note that rules on whether or not selection or rejection of these benefits is required or permitted vary greatly from state to state.
- The premiums in the Notice of Election are contingent upon the Claims Administrator and the Claims Administration Expenses shown in the Notice of Election. If the Claims Administrator or the Claims Administration Expenses are changed the premiums including taxes and non-premium surcharges are subject to change.

ACE Risk Management ®

ACE Risk Management ®

# Section V
# TRIA DISCLOSURES

ACE Risk Management ®


**ace usa**

ACE AMERICAN INSURANCE COMPANY
Insurance Company

HOSTESS BRANDS INC FKA INTERSTATE
BAKERIES CORPORATION
Policyholder

XSL G27010271
Policy Number

LOCKTON COMPANIES LLC
Broker/Producer

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM
# INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2007, the definition of act of terrorism has changed.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury---in concurrence with the Secretary of State, and the Attorney General of the United States---to be an act of terrorism; to be a  violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of  certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced. The portion of your annual premium that is attributable to coverage for acts of terrorism is $2,110 , and does not include any charges for the portion of losses covered by the United States government under the Act.

**I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT, MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE MY COVERAGE AND I HAVE BEEN NOTIFIED OF THE PORTION OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.**

© 2007 National Association of Insurance Commissioners
TR-19606c (01/08) Printed in U.S.A



ace usa

ACE AMERICAN INSURANCE COMPANY
Insurance Company

HOSTESS BRANDS INC FKA INTERSTATE
BAKERIES CORPORATION
Policyholder

SCF C46786464
Policy Number

LOCKTON COMPANIES LLC
Broker/Producer

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM
# INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2007, the definition of act of terrorism has changed.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury---in concurrence with the Secretary of State, and the Attorney General of the United States---to be an act of terrorism; to be a  violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of  certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced. The portion of your annual premium that is attributable to coverage for acts of terrorism is $26,230 , and does not include any charges for the portion of losses covered by the United States government under the Act.

**I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT, MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE MY COVERAGE AND I HAVE BEEN NOTIFIED OF THE PORTION OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.**

© 2007 National Association of Insurance Commissioners
TR-19606c (01/08) Printed in U.S.A



ACE USA                          972.465.7810 tel
Risk Management                  972.465.7826 fax
Routing 7035
225 E. John Carpenter Frwy.      laura.vest@acegroup.com
Suite 1300                       www.acegroup.com
Irving, TX 75062

June 7, 2012

VIA OVERNIGHT MAIL

HOSTESS BRANDS INC FKA INTERSTATE BAKERIES CORPORATION
12 E Armour Blvd
Kansas City, Missouri 64111
Attention:  John Stewart

**Re:** Letter Agreement Regarding Nonrenewal and Termination of Your Insurance Policies

Dear John:

ACE American Insurance Company ("ACE American") has issued the following insurance polices (the "Policies") to Hostess Brands Inc. (f/k/a Interstate Bakeries Corporation) (the "Insured") which are scheduled to expire and terminate on July 1, 2012:

Workers Compensation Policy No.  WLR C46781703
Workers Compensation Policy No.  SCF C46781715
General Liability Policy No.         XSL G2700801A
Automobile Liability Policy No.      ISA H08696123

On or about April 1, 2012, ACE American sent you nonrenewal notices (the "Notices") notifying you that the Policies would not be renewed by ACE American upon their expiration and termination date, as stated in the Policies. After receiving the Notices, you, on behalf of the Insured, requested that ACE American, as an accommodation to the Insured, extend the termination date of the Policies until July 7, 2012 (the "Extended Termination Date") to allow for additional time to secure all necessary approvals and orders from the Bankruptcy Court presiding over the bankruptcy case of the Insured for the Insured's purchase of a new insurance program for the period commencing on July 7, 2012 and ending on October 7, 2012.

Strictly as an accommodation to the Insured and at your request, ACE American has agreed to extend the termination date of the Policies until the Extended Termination Date, subject to all of the following express terms and conditions:

First, that the Insured acknowledges that the extension of the expiration date of the Policies to the Extended Termination Date is done at the Insured's request and as an accommodation to the Insured to allow additional time to secure all necessary approvals and orders from the Bankruptcy Court presiding over the bankruptcy case of the Insured for the Insured's purchase of a new insurance program for the period commencing on July 7, 2012 and ending on October 7, 2012.

Second, that the Notices will serve as the termination and non-renewal notice for each of the Policies as of the Extended Termination Date, and that no further notice from any ACE insurance company to the Insured will be required to allow the Policies to expire and terminate on the Extended Termination Date.

Third, that the Insured will not request any further extensions of the termination date for the Policies and that it acknowledges and agrees that the Policies will expire and terminate on the Extended Termination Date.

If the Insured agrees to the foregoing terms and conditions by signing the acknowledgement at the bottom of this letter agreement, ACE American will issue endorsements to the Policies extending their policy periods to the Extended Termination Date.

This letter agreement may be modified or amended, and its terms and conditions may be waived, only by a writing signed by ACE American and the Insured.  Except as modified hereby, the terms and conditions of the Policies will remain in full force and effect as written.

Kindly sign and date a copy of this letter agreement and return it to the undersigned by no later than June 19, 2012. This letter agreement will not become effective until we receive a copy of it signed and dated on behalf of the Insured. If we do not receive such a signed and dated copy by 5:00 PM Eastern Time on June 19, 2012, this letter agreement will automatically expire with no further action required on the part of ACE American.  This letter agreement shall be effective when signed below or in counterpart, and photocopy, facsimile, electronic or other copies shall have the same effect for all purposes as an ink-signed original.

Sincerely yours,

ACE American Insurance Company

By_____

The undersigned, being duly authorized and empowered, hereby makes the acknowledgements and agrees to the terms and conditions of this letter agreement by and on behalf of the Company as of the date written below.

_____
Hostess Brands Inc. (f/k/a Interstate Bakeries Corporation)

Name and Title:_____

Dated: _____

**EXHIBIT B**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                         :
In re                           :    Chapter 11
                              :
Hostess Brands, Inc., *et al.,*[1]      :    Case No. 12-22052 (RDD)
                              :
              Debtors.       :    (Jointly Administered)
                              :
-------------------------------------------------------------x

**ORDER (A) APPROVING THE DEBTORS'**
**ENTRY INTO NEW 3-MONTH POLICIES WITH ACE AMERICAN**
**INSURANCE COMPANY AND (B) GRANTING CERTAIN RELATED RELIEF**

      This matter coming before the Court on the Motion of Debtors and Debtors in

Possession for an Order (A) Approving the Debtors' Entry Into New 3-Month Policies with ACE

American Insurance Company and (B) Granting Certain Related Relief (the "Motion")[2] filed by

the debtors and debtors in possession in the above captioned cases (collectively, the "Debtors");

the Court having considered the statements of counsel with respect to the Motion at a hearing

before the Court (the "Hearing"); and the Court having found that (i) the Court has jurisdiction

over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to

28 U.S.C. § 157(b), (iii) notice of the Motion and the Hearing was sufficient under the

circumstances, (iv) the relief sought in the Motion is in the best interests of the Debtors' estates,

their creditors and other parties in interest and is supported by good business reasons, (v) there is

good cause to lift the automatic stay, to the extent it applies, as set forth herein and (vi) there is

good cause to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it

---

[1]      The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Hostess Brands, Inc. (0322), IBC Sales Corporation (3634), IBC Services, LLC (3639), IBC Trucking, LLC (8328), Interstate Brands Corporation (6705) and MCF Legacy, Inc. (0599).

[2]      Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Motion.

is applicable; and the Court having determined that the legal and factual bases set forth in the

Motion and the Declaration and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors' entry into the Agreement and the New 3-Month Policies, the

payment of the New Premiums to ACE in connection therewith, the execution and delivery of all

related documents and agreements or amendments thereto and the Debtors' performance of their

obligations thereunder are hereby approved.

3.      The Debtors are authorized, but not directed, in the ordinary course of

business and without further order of this Court to (a) enter into future renewals or extensions of

the New 3-Month Policies and/or the Agreement, (b) enter into new policies and related

agreements and (c) execute such documents, pay amounts when due, and take other actions in

order to effectuate such renewal, extension or new policies and to perform and secure any

obligations of the Debtors to ACE.

4.      The claims of ACE with respect to the New Program (including any and

all renewals and extensions thereof) shall be paid in the ordinary course.

5.      ACE shall have an allowed administrative expense claim against the

applicable Debtor or Debtors pursuant to section 503(b)(1)(A) of the Bankruptcy Code (subject

to the Debtors' rights and defenses under the policies issued in connection with the Agreement),

to be paid in the ordinary course of business, for all payment obligations of the Debtors under the

New 3-Month Policies and any new policies (including any and all renewals and extensions

thereof), regardless of when such amounts are or shall become liquidated, due or paid and no

proof of claim bar date for prepetition claims shall apply to any claims of ACE that it may assert

in respect of the New Program, _provided_, _however_, that ACE shall not have duplicative allowed administrative expense claims against any Debtors.

6.      The automatic stay, if and to the extent applicable, shall be lifted without further order of this Court, to permit:  (a) claimants with valid workers' compensation claims that are covered by the New 3-Month Policies to proceed with their claims; and (b) ACE , in the ordinary course of business, to (i) administer, handle, defend, settle and/or pay all workers' compensation claims arising in connection therewith; (ii) cancel any New 3-Month Policies in accordance with their terms; and (iii) take other actions to the extent permitted under applicable non-bankruptcy law and the Agreement.

7.      The New Program, including without limitation, any agreement to arbitrate disputes between the Debtors and ACE, and this Order shall not be altered by any plan of reorganization or other order of the Court.

8.      This Order shall be immediately enforceable by the Debtors and ACE upon entry hereof.  The stay set forth in the Federal Rule of Bankruptcy Procedure 6004(h) shall be waived to the extent it is applicable.

9.      Nothing in this Order shall be deemed to alter, impair or otherwise modify the Insurance Order.

10.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation, implementation and/or enforcement of this Order.


Dated:  White Plains, New York
        _____, 2012

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE