<b>Hearing Date and Time:  TBD</b><br><b>Objection Deadline:  TBD</b>

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball
Heather Lennox
Lisa Laukitis
Veerle Roovers

  - and -

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Ryan T. Routh

Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
: 
In re:                                                          :     Chapter 11
                                                                :
Hostess Brands, Inc., *et al.,*[1]                              :     Case No. 12-22052 (RDD)
                                                                :
                                    Debtors.                    :     (Jointly Administered)
                                                                :
---------------------------------------------------------------x

### MOTION PURSUANT TO BANKRUPTCY RULE 9019 TO APPROVE SETTLEMENT AGREEMENT BETWEEN ACE AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, DANNY HINTON, III AND JANET HINTON

---

[1]    The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Hostess Brands, Inc. (0322), IBC Sales Corporation (3634), IBC Services, LLC (3639), IBC Trucking, LLC (8328), Interstate Brands Corporation (6705) and MCF Legacy, Inc. (0599).

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Hostess Brands, Inc. and its five domestic direct and indirect subsidiaries, as debtors and debtors in possession (collectively, "Hostess" or the "Debtors"), submit this motion (the "Motion") pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to approve a settlement agreement that has been negotiated by the Debtors' insurer regarding a lawsuit arising out of a prepetition accident involving one of the Debtors' employees. Contemporaneously herewith, the Debtors have filed a motion requesting an order shortening notice of the Motion.  In support of the Motion, the Debtors respectfully represent as follows:

## BACKGROUND

### The Chapter 11 Cases

1.      On January 11, 2012 (the "Petition Date"), the Debtors commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated and are being administered jointly for procedural purposes only.

2.      The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On January 18, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors Committee") pursuant to section 1102 of the Bankruptcy Code.  The U.S. Trustee subsequently amended such appointments to the Creditors' Committee on January 30, 2012.

NYI-4454675v4

4.      Founded in 1930, Hostess is one of the largest wholesale bakers and distributors of bread and snack cakes in the United States.  Today, Hostess sells an array of popular products under new and iconic brands such as Butternut®, Ding Dongs®, Dolly Madison®, Drake's®, Home Pride®, Ho Hos®, Hostess®, Merita®, Nature's Pride®, Twinkies® and Wonder®.

***The Lawsuit***

5.      Danny Hinton, II and Janet Hinton (together, "Plaintiffs") commenced the action styled *Danny Hinton, II and Janet Hinton v. ESIS, Inc., Interstate Brands Corporation and Richard D. Pilgrim*, No. 08-3104 (the "Lawsuit") in the 4th Judicial District Court, Ouachita Parish, Louisiana.

6.      In the Lawsuit, Plaintiffs sought recovery of damages arising from a motor vehicle accident that occurred in Ouachita Parish, Louisiana on April 21, 2008.  The accident involved a collision between a vehicle driven by Plaintiff Danny Hinton, II and a tractor trailer unit owned by Debtor Interstate Brands Corporation ("IBC") and driven by Mr. Pilgrim. Plaintiffs' petition sought an unspecified amount of "damages reasonable and commensurate with their losses, together with interest from date of judicial demand, and for all costs of these proceedings."  Petition at ¶ 12, Danny Hinton, II and Janet Hinton v. ESIS, Inc., Interstate Brands Corporation and Richard D. Pilgrim, No. 08-3104 (4th Jud. Dist. Ct., Ouachita Parish).

7.      After the Lawsuit was filed, Liberty Mutual Insurance Company ("Liberty Mutual" or the "Intervenor") filed an intervention seeking recovery of workers' compensation payments it made to and on behalf of Plaintiff Danny Hinton, II.

8.      Under the Debtors' insurance agreements with ACE American Insurance Company (together with its affiliates, including ESIS, Inc. ("ACE") provides automobile liability

insurance.  The Debtors, in turn, are required to pay ACE certain amounts, including deductibles. The insurance coverage that was implicated by the Lawsuit concerned the automobile liability policy, which contains a $1,500,000 deductible per accident or loss.

***The Settlement Agreement***

9.      Under Louisiana law, the Plaintiffs are permitted to bring a direct action against ACE.  ACE is permitted, under the Debtors' insurance coverage, to defend the litigation against itself and make payments under the policy, which the Debtors must then reimburse. Because of this direct action, the Lawsuit proceeded despite the fact that the commencement of the Debtors' chapter 11 cases stayed the Lawsuit against the Debtors and Mr. Pilgrim.

10.      A mediation was held on March 29, 2012.  Following the mediation, Plaintiffs and Liberty Mutual agreed to settle the Lawsuit and their claims for the total sum of $1,912,000.00 (to be paid as $1,699,802.11 to Plaintiffs and $212,197.89 to Liberty Mutual) which sums were to be paid by ACE on behalf of itself and its insureds, IBC, Hostess Brands, Inc. and Mr. Pilgrim, in full settlement of all claims arising from the accident of April 21, 2008, including all claims asserted by Plaintiffs and Intervenor in the Lawsuit, or which could have been asserted by them therein.

11.      In consideration of the payments they received under the Settlement Agreement (defined below), Plaintiffs and Intervenor released all claims, actions, causes of action, demands, rights and damages which they have or which may hereafter result from the aforesaid accident of April 21, 2008.  This includes, without limitation, the claims numbered 1820 and 2804 filed by Plaintiffs against the Debtors in these chapter 11 cases.

12.     Claim number 1820 asserted a claim in the amount of $5,000,000.00.

Claim number 2804, an amended proof of claim attaching Plaintiffs' petition filed at the

commencement of the Lawsuit, again asserted Plaintiffs' claim in the amount of $5,000,000.00.

13.     A Receipt and Release and Indemnification Agreement (hereinafter, the

"Settlement Agreement") was signed by Plaintiffs and their counsel, Liberty Mutual and its

counsel and ACE and its counsel on May 23, 2012.  A copy of the Settlement Agreement is

attached hereto as Exhibit A.

14.     Following execution of the Settlement Agreement, ESIS, Inc. requested

that the Debtors pay the remaining deductible under their insurance policy with ACE relating to

the Hinton Lawsuit, in the amount of $1,412,821.88.  Due to an oversight in the Debtors'

payment procedures, this amount was paid to ESIS, Inc. prior to the submission of the Settlement

Agreement for this Court's review and approval.  ESIS, Inc. received the requested funds from

Hostess on May 8, 2012 and issued its own check to Plaintiffs on May 10, 2012.

## JURISDICTION

15.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§ 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

16.     By this Motion, the Debtors respectfully request the entry of an order

pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), authorizing the

Debtors' performance under the Settlement Agreement.[2]  As discussed in further detail below,

---

[2]     Although not a signatory to the Settlement Agreement, as discussed above, the Debtors were obligated to
pay the required deductible under their insurance policy with ACE, which negotiated and signed the
Settlement Agreement on behalf of its insureds, Hostess Brands, Inc., IBC and Mr. Pilgrim.

NYI-4454675v4

the Settlement Agreement provides a fair and equitable resolution to Plaintiffs' claims against the

Debtors' estates and is in the best interests of the estate.

## BASIS FOR RELIEF REQUESTED

### Relevant Standards Governing Approval of the Settlement Agreement

17.    Section 105 of the Bankruptcy Code permits a bankruptcy court to "issue

any order that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §

105(a).  Bankruptcy Rule 9019(a) governs the procedural prerequisites for approval of a

settlement and provides, in relevant part, that "[o]n motion by the trustee and after notice and a

hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

Accordingly, section 105(a) of the Bankruptcy Code together with Bankruptcy Rule 9019(a)

empower a bankruptcy court to approve proposed compromises or settlements.  Vaughn v.

Drexel Burnham Lambert Group (In re Drexel Burnham Lambert Group), 134 B.R. 499, 505

(Bankr. S.D.N.Y. 1991); In re Texaco, 84 B.R. 893, 901-02 (Bankr. S.D.N.Y. 1988).

18.    Significantly, the decision to approve a compromise or settlement is

subject to the sound discretion of the bankruptcy court.  Nellis v. Shugrue, 165 B.R. 115, 123

(S.D.N.Y. 1994).  In exercising such discretion, a bankruptcy court must determine that the

proposed settlement is both fair and equitable and in the best interests of the debtor's estate. See

Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478

F.3d  452, 462 (2d Cir. 2007) (applying "fair and equitable" standard to settlements pursuant to

Bankruptcy Rule 9019); In re Enron Corp., No. 02 Civ. 8489, 2003 WL 230838, at *2 (S.D.N.Y.

Jan. 31, 2003) ("A bankruptcy court may approve a settlement where the proposed settlement is

both fair and equitable and in the best interests of the estate.") (quotation omitted).  It is well

established that in exercising its discretion to approve a proposed settlement, a bankruptcy court

may consider general public policy favoring settlements.  See In re Hibbard Brown & Co., Inc.,

217 B.R. 41 (Bankr. S.D.N.Y. 1998) (recognizing that settlements are generally favored); see also Shugrue, 165 B.R. at 123 (noting that settlements are not only favored, but are encouraged).

19.    In evaluating whether a proposed compromise or settlement is fair and equitable, a court should consider the following interrelated factors:

- the balance between the litigation's possibility of success and the settlement's future benefits;

- the likelihood of complex and protracted litigation, with its attendant expense, inconvenience and delay, including the difficulty in collecting on any judgment;

- the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

- whether other parties in interest support the settlement;

- the competence and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;

- the nature and breadth of releases to be obtained by officers and directors; and

- the extent to which the settlement is the product of arm's length bargaining.

Iridium Operating LLC, 478 F.3d at 462 (citing In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).  Although a court must consider "all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968), it need not conduct a "mini-trial" of the merits of the claims being settled, Cosoff v. Rodman (In re W.T. Grant, Co.), 699 F.2d 599, 608 (2d Cir. 1983), or conduct a full independent investigation.  In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991).  A court need

only ensure that the settlement does not fall "below the lowest point in the range of reasonableness." Id. at 496-97 (citation omitted).

**<u>Application of Relevant Standards</u>**

20.     The Settlement Agreement easily satisfies the standards for approval set forth above.

21.     First, the Settlement Agreement obviates the need for continuing the litigation of the Lawsuit and avoids the costs and risks associated with such litigation.  Indeed, aware that litigation is inherently uncertain, ACE determined to proceed with mediation in the hopes of avoiding a lengthy, and expensive, process, which led to the Settlement Agreement itself.  Continued litigation would be expensive and time consuming, potentially involving the retention of experts, discovery, and the appellate process.  Avoiding the costs and delays associated with further litigation in light of the compromise reached after the mediation between the parties is in the best interests of the Debtors, their estates and creditors.

22.     Second, the paramount interests of creditors are protected by the Settlement Agreement.  The existing creditors who arguably are affected by the Settlement Agreement are the secured lenders and the general unsecured creditors.  The Debtors' secured lenders have consented to the settlement and the payments thereunder.  The general unsecured creditors are affected by the Settlement Agreement to the extent that it resolves potential disputed unsecured claims by Plaintiffs in these cases.  The terms of the Settlement Agreement are fair and reasonable under the circumstances, and nothing in the Settlement Agreement deviates from any provision of the Bankruptcy Code.  Subject to any specific objections from these parties, the Debtors submit that the Settlement Agreement strikes a reasonable balance given the dispute between Plaintiffs and the Debtors.

NYI-4454675v4

23.     Third, as set forth in the Settlement Agreement, the officers, directors and employees of IBC and Hostess  have been granted releases from any claims and causes of action that Plaintiffs and the Intervenor may have as a consequence of the April 21, 2008 accident described above.

24.     Lastly, the Settlement Agreement is the result of several months of extensive arm's length negotiations between the Plaintiffs and the Debtors' insurer on behalf of itself and the Debtors, which were all represented by competent and experienced counsel.

25.     Accordingly, as set forth herein, entry into the Settlement Agreement is in the Debtors' best interests.  The Debtors have reasonably and appropriately exercised their sound business judgment in seeking approval of the Settlement Agreement to resolve the disputes arising out of this claim against their estates.

## NOTICE

26.     Pursuant to the Administrative Order, Pursuant to Rule 1015(c) of the Federal Rules of Bankruptcy Procedure, Establishing Case Management and Scheduling Procedures (Docket No. 371) (the "Case Management Order"), notice of this Motion has been given to (a) the parties identified on the Special Service List and the General Service List (as such terms are defined in the Case Management Order) and (b) the parties to the Settlement Agreement.  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

27.     No prior request for the relief sought in this Motion has been made to this or any other Court in connection with these chapter 11 cases.

NYI-4454675v4

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order, substantially in the form attached hereto as Exhibit B, approving and ratifying the Settlement Agreement; and (ii) grant such other and further relief as the Court may deem proper.

Dated:  June 12, 2012
      New York, New York

Respectfully submitted,

 /s/ Corinne Ball
Corinne Ball
Heather Lennox
Lisa Laukitis
Veerle Roovers
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

- and -

Ryan T. Routh
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION.

NYI-4454675v4

**<u>Exhibit A</u>**

[Settlement Agreement]

## RECEIPT AND RELEASE AND INDEMNIFICATION AGREEMENT

This Receipt and Release is granted by Danny Hinton, II and Janet Hinton (sometimes hereafter identified as "Plaintiffs") and by Liberty Mutual Insurance Company, the workers compensation insurer of Louisiana Lift and Equipment, Inc., the former employer of Danny Hinton, II, (sometimes identified as "Intervenor"). The Receipt and Release and Indemnification Agreement is granted to the following persons:

Richard D. Pilgrim ("Pilgrim") and his spouse;

Interstate Brands Corporation ("IBC");

Hostess Brands, Inc. ("Hostess");

ESIS, Inc.;

ACE American Insurance Company ("ACE"), as insurer of Pilgrim, IBC and Hostess; and

ACE North American Claims.

This Release shall inure in favor of Pilgrim and his spouse, and their heirs, successors, administrators and assigns, and IBC, Hostess, ESIS, Inc. and ACE, and all of their present and future affiliates, divisions, and parent and subsidiary entities, and all of the stockholders, directors, officers, agents, employees, reinsurers and attorneys of such entities (hereafter collectively referred to as "Released Parties").

This Release is a contract of compromise, binding on Plaintiffs and Intervenor, and their heirs, estates, executors, administrators, representatives, successors and assigns. By signing this Release, Plaintiffs and Intervenor warrant that they have read this Release and fully understand it.

## RECITALS

Plaintiffs are husband and wife, and are competent major residents of Jackson Parish, Louisiana. They are the plaintiffs in the suit styled "Danny Hinton, II and Janet Hinton v. ESIS, Inc., Interstate Brands Corporation and Richard D. Pilgrim" No. 08-3104, 4th Judicial District Court, Ouachita Parish, Louisiana (hereafter "the Lawsuit").

In the Lawsuit, plaintiffs seek recovery of damages arising from a motor vehicle accident which occurred on Interstate 20 in Ouachita Parish, Louisiana, on April 21, 2008, when a vehicle driven by Danny Hinton, II was struck by a tractor trailer unit owned by IBC and driven by Pilgrim while he was in the course and scope of his employment with IBC. Plaintiffs have averred that the accident occurred due to the fault of Pilgrim. Plaintiffs have alleged in the Lawsuit that Danny Hinton suffered serious injury, requiring multiple neck and low back surgeries, numerous medical procedures, causing pain, disability, distress, mental anguish, medical expenses, loss of past and future earnings, loss of enjoyment of life and other damages.

Liberty Mutual Insurance Company filed an intervention into the Lawsuit for recovery of the worker's compensation payments it made to and for Danny Hinton, II.

Following mediation held March 29, 2012, Plaintiffs and Intervenor agreed to settle the lawsuit and their claims against the Released Parties, fully and completely and without reservation, for the total sum of One Million Nine Hundred Twelve Thousand and No/100 ($1,912,000.00) Dollars, to be paid $1,699,802.11 to Plaintiffs and $212,197.89 to Intervenor, which sums are to be paid by ACE on behalf of itself and its insureds, IBC, Hostess and Pilgrim, all in full settlement of all claims arising from the accident of April 21, 2008, including all claims asserted by Plaintiffs and Intervenor in the Lawsuit, or which could have been asserted by them therein.

Now, to memorialize the payment to Plaintiffs and the Intervenor, the release granted by Plaintiffs and Intervenor to the Released Parties, the compromise of all of Plaintiffs' and Intervenor's claims, and to confirm the agreement between Plaintiffs and Intervenor, the Plaintiffs and Intervenor agree and declare under oath as follows:

## AGREEMENT

1.    Payments and Receipt:

A.    ACE, for itself and its insureds Pilgrim, IBC and Hostess, hereby pays to Plaintiffs and Plaintiffs hereby acknowledge receipt from ACE of the sum of One Million Six Hundred Ninety-Nine Thousand Eight Hundred Two and 01/100 ($1,699,802.11) represented by

(1) ACE's check number 023569 in the amount of One Million, Four Hundred Fourteen Thousand, Two Hundred Seventy-Five and 38/100 ($1,414,275.38) Dollars, dated May 10, 2012, payable to the order of "Russell Woodard, Danny Hinton II and Janet Hinton;" and

(2) ACE/ESIS check number GM40202979 dated May 10, 2012 in the amount of Two Hundred Eighty Five Thousand, Five Hundred Twenty-Six and 73/100 ($285,526.73) Dollars, payable to the order of "Russell Woodard, as attorney and Danny Hinton and Janet Hinton;"

B.    ACE, on behalf of itself and its insureds Pilgrim, IBC and Hostess, hereby pays to Intervenor and Intervenor hereby acknowledges receipt from ACE of the sum of Two Hundred Twelve Thousand, One Hundred Ninety-Seven and 89/100 ($212,197.89) Dollars, represented by ACE's check number GM40202980 dated May 10, 2012, payable to the order of "Liberty Mutual Insurance Company."

Plaintiffs and Intervenor acknowledge that these payments are the full amounts due them under the terms of their settlement agreement following mediation, and that no additional amounts are due them, unless set forth below.

2.    Release: For and in consideration of the above described payments, Plaintiffs and Intervenor forever release, acquit and discharge The Released Parties and their agents, servants and employees, partners, officers, affiliates, directors, stockholders, successors, attorneys, assigns and insurers, and said insurance company's insureds and omnibus insured, reinsurers and any and all

other persons, firms, corporations, partnerships and associations legally liable or responsible for their actions, whether such are herein specifically named, of and from any and all claims, actions, causes of action, demands, rights and damages that Plaintiffs and Intervenor may have as a consequence of the above described accident of April 21, 2008, as is more fully described in the aforementioned Lawsuit.  Specifically, in consideration of the payments set forth above, Plaintiffs and Intervenor release all claims, actions, causes of action, demands, rights and damages which they have or which may hereafter result from the aforesaid accident of April 21, 2008, including but not limited to the following:

a.      all past and future costs, medical and hospital expenses, physicians and surgeons' fees, nursing and other expenses, and compensation;

b.      any and all known or unknown, past and future, foreseen or unforeseen, mental and psychological injuries, back injuries, bodily and personal injuries, pain, suffering and discomfort, temporary or permanent physical impairment or disability, and personal damages of every sort, kind and nature, including claims for loss of consortium, services and society;

c.      all past and future loss of earnings, fringe benefits, loss of earning power or potential, loss of employment potential, loss of revenues, additional operating expenses, wages and services;

d.      all claims for attorney fees, legal interest, punitive damages, costs, and expenses;

e.      all claims for reimbursement of weekly compensation payments and payments of medical expenses; and,

f.      all claims filed or asserted by Plaintiffs  in the bankruptcy proceedings filed by Hostess Brands, Inc. and Interstate Brands Corporation, as debtors and debtors in possession in the United States Bankruptcy Court for the Southern District of New York, jointly administered under Case No. 12-22052 (RDD) under chapter 11 of title 11 of the United States Code.

Plaintiffs and Intervenor acknowledge and agree that this Release is to be read and understood in its broadest sense, and includes release of every possible claim held by them and their heirs, successors or assigns against the Released Parties, whether such claim is known or unknown, knowable or unknowable and whether such is asserted or not asserted in the Lawsuit.   Plaintiffs and Intervenor acknowledge that they and their heirs, successors and assigns are prohibited from ever asserting another claim or cause of action against any of the Released Parties or any other person or entity based in any respect upon the facts asserted in the Lawsuit described above, or upon any facts which could have been asserted in such Lawsuit and they covenant that they will not sue the Released Parties based upon such facts.

Liberty Mutual Insurance Company acknowledges that Danny Hinton II may claim future worker's compensation benefits from Liberty Mutual Insurance Company, subject to Liberty

Mutual Insurance Company's right to offset against its past, present, and future obligations under the workers' compensation laws for payments made to or on behalf of Danny Hinton II in this settlement related to his individual claims. Plaintiffs and Intervenor acknowledge that this agreement between Plaintiffs and Intervenor does not affect, limit or modify the scope of the full and complete release granted by Plaintiffs and Intervenor to the Released Parties.

**Plaintiffs further agree to indemnify, defend and hold harmless the Released Parties from any claim or suit by Plaintiffs, their heirs, successors and assigns, or any person whose right derives from Plaintiffs based upon or arising from the accident of April 21, 2008.**

3.    <u>Liability Disputed</u>:  Plaintiffs and Intervenor acknowledge that this Release is in full settlement and release of all of their rights under law against the Released Parties for recovery of damages arising from the accident of April 21, 2008, or as a result of anything else that may have occurred through the date of this Release. They acknowledge that the settlement is made in compromise of disputed claims; that their claims have been denied and disputed by the Released Parties; that the payment made to Plaintiffs and Intervenor is not an admission of liability on the part of the Released Parties; that the Released Parties deny any and all liability to them, and that this settlement is made solely to put an end to litigation and to avoid future litigation.

4.    <u>Taxes</u>: Plaintiffs and Intervenor acknowledge that ACE has not withheld any federal or state income taxes, social security taxes or any other taxes from the settlement proceeds. They agree that they, and no other person, shall be responsible for payment of any taxes, including any federal or state income taxes, which may be required by law due to their receipt of the sums hereinabove specified. Plaintiffs and their attorney Russell Woodard and Intervenor acknowledge that Russell Woodard and Intervenor will each receive a Tax Form 1099 reflecting the payments made under this agreement. Plaintiffs acknowledge that they have not relied on any information provided by ACE, its employees, or its attorneys concerning the tax consequences of payments made under this Agreement. They acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of any amount that is paid under this Agreement. **Plaintiffs agree to indemnify, defend, and hold harmless the Released Parties from any claim or liability asserted against them or for any taxes and related penalties and/or interest, relating to the manner in which payments are allocated under this Agreement.** Nothing in this Agreement is intended to or shall be construed to impede the right or duty of the Parties to file taxes honestly, to report income honestly, to testify truthfully, or to cooperate with any governmental investigation.

5.    <u>Dismissal of Lawsuit and of Claim Asserted in Hostess Bankruptcy</u>:  As additional consideration for this settlement, Plaintiffs and Intervenor hereby agree, bind and obligate themselves to dismiss the Lawsuit with full and complete prejudice as to all of their rights, claims, demands and actions as against all of the Released Parties. They hereby instruct their attorneys to sign a joint motion to dismiss with prejudice all claims asserted against the Released Parties in the lawsuits and to file such dismissal concurrent with the execution of this Release. The Parties agree that ACE will pay to the Clerk of Court those court costs assessed by the Clerk to Court to Plaintiffs and Defendants, and Intervenor will bear those court costs assessed by the Clerk of Court to Intervenor. Plaintiffs further agree as a condition of this settlement that they will dismiss with

prejudice every claim filed by them in the pending bankruptcy proceedings filed by Hostess Brands, Inc. and Interstate Brands Corporation, as debtors and debtors in possession in the United States Bankruptcy Court for the Southern District of New York, jointly administered under Case No. 12-22052 (RDD) under chapter 11 of title 11 of the United States Code.  Intervenor warrants that it has not filed and will not file in the aforesaid bankruptcy proceedings any claim for recovery arising from or related to the accident of April 21, 2008 or as asserted by it in the Lawsuit.

6.    Medical Bills, Privileges, Liens and Worker's Compensation:  Plaintiffs and Intervenor further warrant that all of Danny Hinton II's medical expenses arising from the above described accident of April 21, 2008, have been paid by Intervenor and that there are no medical or hospital liens of any sort.  **They further agree to indemnify, defend and hold harmless the Released Parties from any and all claims by medical care providers and lien holders who may assert claims against the Released Parties arising from or related to the medical treatment of Danny Hinton II for injuries sustained by him in the accident of April 21, 2008, regardless of the validity of such claims.**

Plaintiffs further warrant that they have had no attorney represent them other than Russell Woodard and that they are solely responsible for his fees and expenses.

Plaintiffs and Intervenor warrant that no person, firm, corporation or government body is entitled to any portion of the settlement proceeds other than the parties to this Release.

7.    Medicare:  Plaintiffs warrant that Danny Hinton II is not currently a qualified Medicare beneficiary, but that nevertheless, the Parties hereto have taken into account the interests of Medicare when entering into this settlement. Plaintiffs warrant that any future medical expenses which may be needed arising from the above described accident of April 21, 2008, will be paid from the settlement funds received and that they shall not submit any such expenses for payment to Medicare. **The Plaintiffs agree to hold the Released Parties harmless and indemnify the Released Parties from any claim, lien, or cause of action brought by any entity pursuant to Medicare Secondary Payer Act (42 U.S.C. § 1395y (b)) related to this claim.**  Plaintiffs release, acquit and forever discharge the Released Parties from any claim or the action the Undersigned may have had pursuant to 42 U.S.C. § 1395y (B)(3)(A).  Should the Centers for Medicare & Medicaid Services (CMS) (or any of its affiliates or subcontractors) submit or make any claim, allegation, investigation, or otherwise inquire about any Medicare-related expenses alleged by CMS to be associated with this claim at any time in the future, the Plaintiffs expressly agree to cooperate with the Released Parties or any of their agents, subsidiaries, or designees in responding to or addressing the claims raised by CMS. This includes, but is not limited to, providing the Released Parties with a consent form so it can transmit and receive data to and from CMS (including medical information), providing the Released Parties with details about any alleged expenses CMS claims is related to this claim, and any other information that is reasonably necessary to allow the Released Parties to properly address any claim(s) by CMS.

Plaintiff Danny Hinton II declares and expressly warrants that he is not Medicare eligible nor within thirty (30) months of becoming Medicare eligible; is not 65 years of age or older; is not suffering from end stage renal failure or amyotrophic lateral sclerosis; has not received Social Security benefits for 24 months or longer; and has not applied for Social Security benefits, and/or

has not been denied Social Security disability benefits and appealing the denial. Relying on these representations to the Released Parties, they have not established a Medicare Set Aside Allocation ("MSA"). In the event that any of the above information provided by Danny Hinton II is false or in any way incorrect, Plaintiffs shall be solely liable for any and all actions, causes of actions, penalties, claims, costs, services, compensation or fee resulting from these inaccuracies. Plaintiffs acknowledge that Medicare may require Danny Hinton II to exhaust the entire settlement proceeds on Medicare covered expenses should he become Medicare eligible within thirty (30) months. Plaintiffs specifically waive any claims for damages against the Released Parties, including a private cause of action provided in the MSP, 42 U.S.C. Section 1395(b)(3)(A), should Medicare deny coverage for any reason, including the failure to establish a set aside allocation to protect Medicare's interest. Plaintiffs, upon advice of counsel, and in accord with this release, agree that any and all applicable medical and other liens related to this litigation are to be paid out of the settlement proceeds, and that Medicare and any other lien claims are the sole responsibility of Plaintiffs, with nothing further to be sought from the Released Parties. In the event that this information is false or in any way incorrect, Plaintiffs expressly warrant and agree that said liens will be their sole responsibility and will be paid from these settlement proceeds with nothing further to be sought from the Released Parties.

**The Plaintiffs agree to hold harmless, indemnify and defend the Released Parties from any cause of action, including but not limited to an action to recover or recoup Medicare benefits paid or a loss of Medicare benefits, if CMS determines that money should have been set aside or allocated to cover future medical expenses which Medicare would otherwise cover, or for any recovery sought by Medicare including past, present and future claims/liens.**

The Plaintiffs understand that the receipt of settlement proceeds in this case without CMS' pre-approval may result in a loss of Medicare benefits for the injuries described herein. Despite this possibility, the Plaintiffs desire to enter into this Agreement to settle this claim as set forth hereinabove.

The Plaintiffs hereby waive any and all private causes of action which may exist under the Medicare Secondary Payer Statute related to the injuries alleged in connection with this claim.

The Plaintiffs hereby agree to fully cooperate with the Released Parties and their representatives regarding any and all requests for information or documentation needed to comply with the Medicare Secondary Payer Act. The Plaintiffs specifically agree to provide documentation and/or information timely and to execute any and all documents necessary for Medicare Secondary Payer Act compliance.

8.    Confidentiality: Plaintiffs and Intervenor and their attorneys agree that they have not disclosed to anyone the terms and negotiation of this settlement, the existence of this Release, the amount of the settlement payments, the other terms of this Release, the circumstances giving rise to the execution of this Release, and the negotiations leading to this Release, (collectively "Confidential Settlement Information"). They agree that the Confidential Settlement Information shall remain confidential and shall not be divulged unless such disclosure is (i) lawfully required by any government agency; (ii) otherwise required to be disclosed by law (including legally required financial reporting) and/or by court order; or (iii) necessary in any legal proceeding in

order to enforce any provision of this Release. They shall respond to any inquiry about the status and/or resolution of this litigation by stating that the matter has been resolved. If necessary that Plaintiffs disclose Confidential Settlement Information to financial advisors or accountants, they will make such person aware of the confidential nature of this information. Plaintiffs and Intervenor acknowledge that their promise of confidentiality is a material inducement to and is of essence to the settlement of the Lawsuit and that a breach of this confidentiality provision shall be a material breach entitling the Released Parties to seek judicial remedy, including injunctive relief. They further agree that this Release cannot be used in evidence in any action except an action arising from this Agreement.

     9. <u>Entire Agreement and Applicable Law</u>: The Plaintiffs further declare that no promise, inducement or agreement not herein expressed to them has been made to them and that this release and settlement agreement contains the entire agreement between them and the Released Parties; that the terms of this agreement are contractual and are not merely recitative; and that they have read this receipt and release and fully understand it. They further recognize that this receipt and release shall be binding upon them, their successors, heirs, assigns, executors and administrators. The Parties agree this Agreement is to be interpreted in accordance with the law of the State of Louisiana, without regard to its conflicts of laws.

     10. <u>Mediation Costs</u>: The cost of mediation is divided equally between Plaintiffs, Intervenor and ACE, with each to pay 1/3 of said cost.

     11. <u>Multiple Counterparts</u>: This Release shall be executed in multiple counterparts, any one of which or a copy thereof, shall be proof of this Agreement.

Receipt and Release by Danny Hinton II, Janet Hinton and Liberty Mutual Insurance Company

Thus done and signed in Ruston, Louisiana in the presence of the undersigned competent witnesses and me notary public who sign with Danny Hinton, II and Janet Hinton after due reading of the entire agreement on this **23** day of May, 2012.

Witnesses:

_Rachel M. Shively_
Rachel M. Shively

_Monique B. Clement_
Monique B. Clement

_Danny Hinton, II_
Danny Hinton, II

_Janet Hinton_
Janet Hinton

_Weita Z. Gaskin_
Notary Public

Approved And Accepted:

_Russell Woodard_
Russell Woodard, Attorney for Danny Hinton, II and Janet Hinton

WEITA Z. GASKIN
NOTARY PUBLIC, LINCOLN PARISH
My Commission Expires at Death
Commission #49793

Thus done and signed in _Wausau_ , ~~Louisiana~~ _Wisconsin_ in the presence of the undersigned competent witnesses and me notary public who sign with _Justin Hoyt_ , after due reading of the entire agreement on this _14th_ day of May, 2012.

Witnesses:

_____

_____

Liberty Mutual Insurance Company

By: _____

_____
Notary Public

Approved And Accepted:

_____
Dan Boudreaux, Attorney for Liberty Mutual Insurance Company

Thus done and signed in _Chatsworth_ , State of _Ca._ , in the presence of the undersigned competent witnesses and me notary public who sign after due reading of the entire agreement on this _23_ day of May, 2012.

Witnesses: _____

_____

ACE American Insurance Company

By: _____

_____
Notary Public

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Los Angeles }

On May 23, 2012 before me, Veronica Herrera Garcia, Notary Public
Date                                    Here Insert Name and Title of the Officer

personally appeared Alma Magana.
                                    Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    Signature of Notary Public

**VERONICA H. GARCIA**
Commission # 1821505
Notary Public - California
Los Angeles County
My Comm. Expires Nov 3, 2012

Place Notary Seal Above

─── *OPTIONAL* ───

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: Receipt and Release by Danny Hinton II, Janet Hinton and Liberty Mutual Insurance Co.

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

**RIGHT THUMBPRINT OF SIGNER**
Top of thumb here

Signer Is Representing: _____
_____

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

**RIGHT THUMBPRINT OF SIGNER**
Top of thumb here

Signer Is Representing: _____
_____

© 2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Item #5907    Reorder: Call Toll-Free 1-800-876-6827

**<u>Exhibit B</u>**

[Proposed Order]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                              :
In re:                                        :   Chapter 11
                                              :
Hostess Brands, Inc., et al.,¹               :   Case No. 12-22052 (RDD)
                                              :
                    Debtors.                  :   (Jointly Administered)
                                              :
------------------------------------------------------------x
```

**ORDER PURSUANT TO SECTION 105(a) OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY RULE**
**9019 APPROVING A SETTLEMENT AGREEMENT BETWEEN**
**ACE AMERICAN INSURANCE COMPANY, LIBERTY**
**MUTUAL INSURANCE COMPANY, DANNY HINTON, II AND JANET HINTON**

This matter coming before the Court on the Motion (the "Motion") of Debtor Interstate Brands Corporation ("IBC") for an Order Pursuant to Section 105(a) of the Bankruptcy Code[2] and Bankruptcy Rule 9019 Approving a Settlement Agreement Between ACE American Insurance Company, Liberty Mutual Insurance Company, Danny Hinton, II and Janet Hinton, filed by the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"); the Court having reviewed the Motion; the Court finding that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b) and (iii) notice of the Motion was sufficient under the circumstances; and the Court having found and determined the relief sought in the Motion is in the best interests of the Debtor, its estates and creditors, and all parties in interest and that the legal and factual bases

---

[1] The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Hostess Brands, Inc. (0322), IBC Sales Corporation (3634), IBC Services, LLC (3639), IBC Trucking, LLC (8328), Interstate Brands Corporation (6705) and MCF Legacy, Inc. (0599).

[2] Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed to them in the Motion.

set forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefore;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement, attached as <u>Exhibit A</u> to the Motion, is

approved in its entirety.  The Debtors are authorized to perform their obligations that arise from

the Settlement Agreement pursuant to Bankruptcy Rule 9019, and any actions taken heretofore in

furtherance of these obligations are hereby ratified.

3.      The Debtors are authorized to take any and all actions necessary or

appropriate to implement the terms of this Order and the Settlement Agreement.

4.      The Court shall retain jurisdiction to hear and determine all matters arising

from, related to or in connection with the implementation, interpretation, enforcement or

application of this Order and the Settlement Agreement.


Dated: _____, 2012      _____
        White Plains, New York              UNITED STATES BANKRUPTCY JUDGE

NYI-4454675v4