```
1   UNITED STATES BANKRUPTCY COURT
    SOUTHERN DISTRICT OF NEW YORK
2   - - - - - - - - - - - - - - - - - -x

3   In re:                                          Chapter 11

4   HOSTESS BRANDS, INC.,                           12-22052-rdd

5                Debtors.

6   - - - - - - - - - - - - - - - - - -x

7
            MODIFIED BENCH RULING ON MOTION OF THE ACE COMPANIES
8       TO COMPEL ARBITRATION RELATED TO DEBTORS' CASH COLLATERAL
                                   MOTION
9

10  APPEARANCES:

11  JONES DAY

12       Attorneys for Debtors

13       222 East 41st Street

14       New York, NY  10017

15  BY:  ROBERT HAMILTON, ESQ.

16       HEATHER LENNOX, ESQ.

17       MICHAEL SILBERFARB, ESQ.

18

19  DUANE MORRIS LLP

20       Attorneys for ACE Companies

21       1540 Broadway

22       New York, NY  10036

23  BY:  LEWIS OLSHIN, ESQ.

24       WENDY M. SIMKULAK, ESQ.

25
```

1    **HON. ROBERT D. DRAIN, UNITED STATES BANKRUPTCY JUDGE:**

2    The debtors in this case filed a motion, dated November 5,

3    2012, for authority to use cash collateral of ACE American

4    Insurance Company pursuant to section 363(c) of the

5    Bankruptcy Code, and, as applicable, sections 361 (dealing

6    with adequate protection) and 105.

7             The motion was adjourned on consent to January

8    2013. However, in the meantime ACE has moved to compel

9    arbitration of what it terms a contract dispute underlying

10   the debtors' cash collateral motion.  And it is that motion

11   to compel arbitration that is presently before me.

12            The reply brief submitted by ACE succinctly

13   summarizes the facts. Pursuant to prior agreements, which

14   have been, by order of the Court, assumed (and I'm

15   compressing a lot into that phrase, because the orders

16   themselves are important and affect the interpretation of

17   the agreements), the debtors have agreed to provide the cash

18   collateral to the ACE Companies for purposes of securing

19   their obligations under the agreements, including the

20   agreement to pay deductibles, that the debtors owe to the

21   ACE companies under their insurance program.

22            Those obligations continue to accrue, although the

23   policies have now been replaced or expired, because,

24   obviously, there's a continuing expectation that injuries

25   covered by the policies will manifest themselves.

1          ACE asserts, simply, the collateral was provided
2    pursuant to the collateral agreement, the collateral secures
3    their obligations under the collateral agreement, the
4    collateral agreement, in Article 4, expressly requires the
5    debtors to continue to provide collateral until ACE
6    determines that there is no longer any need for such
7    security, before the calculation of the insurance
8    obligation, as defined in the collateral agreement, and that
9    calculation may only be determined by interpreting the
10   collateral agreement.  Therefore, ACE contends, the motion
11   contemplates a breach of the collateral agreement, and,
12   therefore, ACE contends, that breach, or that dispute, must
13   be arbitrated under the arbitration clause in the agreement.
14          That arbitration clause states, "Any controversy,
15   dispute, claim, or question arising out of or relating to
16   this agreement, including, without limitation,
17   interpretation, performance, or non-performance by any
18   party, or any breach thereof, (hereinafter collectively
19   "controversy") shall be referred to and resolved exclusively
20   by three arbitrators through private confidential
21   arbitration conducted in Philadelphia, Pennsylvania."
22          There's a mechanism for selecting the arbitration
23   panel:  "One arbitrator shall be chosen by each party, and a
24   third by the two so chosen. If either party refuses or
25   neglects to appoint an arbitrator within 30 days after

```
 1   receipt of written notice from the other party requesting it

 2   to do so, the requesting party may choose a total of two

 3   arbitrators who shall choose a third.  If those arbitrators

 4   fail to select a third arbitrator within ten days, after

 5   both have been named, the party plaintiff shall notify the

 6   American Arbitration Association, which shall appoint the

 7   third arbitrator," who shall be disinterested and neutral.

 8           Further, "The arbitrators may abstain from

 9   following the strict rules of law and shall make their

10   decision with regard to the custom and usage of insurance

11   business as of the effective date of this agreement."

12           The ACE insurers contend in their motion that

13   under applicable law the foregoing provision requires

14   arbitration of the dispute regarding the debtors proposed

15   breach of the applicable insurance program, and, as laid out

16   on the record today by counsel for ACE, at least part of the

17   issue relating to the cash collateral motion, which is what

18   is the exact amount of the debtors' obligations that are

19   secured under the applicable agreement.

20           The debtors contend, to the contrary, that the

21   issue before the Court is not a breach of contract issue,

22   but, rather, their right, whether or not the contract is

23   breached by exercising such right, to use cash collateral

24   pursuant to section 363(c)(2) of the Bankruptcy Code, which

25   states that "The trustee" (and, for these purposes, a debtor
```

1    in possession is the equivalent of a trustee) "may not use,

2    sell, or lease cash collateral under paragraph 1 of this

3    subsection, unless (a) each entity that has an interest in

4    such cash collateral consents, or (b) the court, after

5    notice and a hearing, authorizes such use, sale, or lease in

6    accordance with the provisions of this section."

7             The standard for such determination is set forth

8    in Section 363(e) of the Bankruptcy Code, which states,

9    "Notwithstanding any other provision of this section, at any

10   time on request of an entity that has an interest in

11   property sold, used, or leased, or proposed to be used,

12   sold, or leased, by the trustee, the court, with or without

13   a hearing, shall prohibit or condition such use, sale, or

14   lease as is necessary to provide adequate protection of such

15   interest."

16            "Adequate protection" is also referred to and

17   defined, although, in a fairly open-ended way, in section

18   361 of the Bankruptcy Code, which states that "when adequate

19   protection is required under Section 363, it may be provided

20   by," and then it lists several factors in the alternative,

21   which have been supplemented by the case law.

22            At this point, following the leading decisions of

23   In re United States Lines, Inc., 197 F.3d 631 (2d Cir.

24   1999), and MBNA America Bank v. Hill, 436 F.3d 104 (2d Cir.

25   2006), the law regarding when and under what circumstances

1    arbitration is required in a bankruptcy case, and when, if

2    it is not required, the Court should exercise its discretion

3    to stay it, is fairly well defined in the Second Circuit.

4           The law is well summarized by Bankruptcy Judge

5    Glenn in In re Bethlehem Steel Corp, 390 B.R. 784 (Bankr.

6    S.D.N.Y 2008).  He states, at 789, "When determining whether

7    to compel arbitration and stay proceedings pending

8    arbitration, a court must " (that is, the bankruptcy court

9    in particular) "undertake a multi-step process: first, it

10   must determine whether the parties agreed to arbitrate;

11   second, it must determine the scope of that agreement;

12   third, if federal statutory claims are asserted, it must

13   consider whether Congress intended those claims to be non-

14   arbitrable; and, fourth, if the court concludes that some,

15   but not all, of the claims in the case are arbitrable, it

16   must then decide whether to stay the balance of the

17   proceedings pending arbitration." (quoting Oldroyd v. Elmira

18   Bank, 134 F.3d 72, 75-76 (2d Cir. 1998).

19          When reading the case law, it is clear that in

20   applying that analysis the courts are motivated or swayed in

21   part by not just a simple determination of whether a matter

22   is non-core or core pursuant to 28 U.S.C. section 157(b),

23   although that is an important factor, but whether, even if

24   it is core under that section of the Judicial Code, it is,

25   in fact, "substantially" core or truly a function of the

```
 1    bankruptcy process.  They do so, I believe, in part because

 2    they are interpreting whether, in fact, the first factor is

 3    met, which is whether the parties agreed to arbitrate, and,

 4    also, whether the third factor is met, which is whether

 5    Congress intended the claims at issue to be non-arbitrable.

 6              Bankruptcy is a multi-party process that is rooted

 7    in the past but that in many cases drastically alters the

 8    parties' prebankruptcy rights.  It appears clear to me that

 9    using Judge Glenn's phrase "substantially core" from the

10    Bethlehem Steel case, whether a debtor has authority to use

11    cash collateral is clearly substantially core.  That is, it

12    is central to the bankruptcy process that Congress

13    contemplated as substantially altering otherwise existing

14    and enforceable rights under applicable non-bankruptcy law,

15    and that Congress did so in light of the fact that it is a

16    multi-party process, and not just a simple two-party

17    dispute.

18              Many courts apply that analysis in the context of

19    determining whether the parties actually agreed to arbitrate

20    the dispute, making the distinction between the prepetition

21    debtor and the postpetition trustee or debtor in possession.

22    See, for example, Bethlehem Steel, 390 B.R. at 790 and 793,

23    in which the court, citing many other authorities, holds

24    that bankruptcy law-created claims that are not derivative

25    of the prepetition debtor's rights are not subject to
```

```
 1    arbitration.  See also -- I appreciate it's the same judge,
 2    but the logic is the same, and equally telling -- In re S.W.
 3    Bach & Company, 425 B.R. 78 (Bankr. S.D.N.Y 2010), at 91
 4    through 92, as well as In re Salander-O'Reilly Galleries,
 5    LLC, 475 B.R. 9 (S.D.N.Y 2012), in which District Judge
 6    Seibel states, "There is no justification for binding
 7    creditors to an arbitration clause with respect to claims
 8    that are not derivative of one who is a party to it."
 9              I recognize that Judge Lane in In re Cardali, 2010
10    Bankr. LEXIS 4113 (Bankr. S.D.N.Y 2010), took the view that
11    a fraudulent transfer lawsuit could be subject to
12    arbitration, notwithstanding that the party in the shoes of
13    the debtor in that case was asserting rights under the
14    Bankruptcy Code created by Congress.  He did so because,
15    however, those rights specifically derived from state law
16    causes of action, and his view regarding Granfinanciera,
17    S.A. v. Nordberg, 492 U.S. 33 (1989).  That view, frankly,
18    conflicts with numerous other cases.  I don't need to decide
19    my own position on that issue, but it appears clear to me
20    that congressional authority to use cash collateral under
21    the requirements set forth in sections 363(e) and 361 of the
22    Bankruptcy Code is not at all rooted in a right that exists
23    pre-bankruptcy.  Indeed, the whole purpose of the sections
24    is to alter those rights, as created by Congress.
25              Therefore, it appears to me that with regard to
```

```
1    this particular dispute, the parties, in fact, did not agree
2    to arbitrate the use of cash collateral.  I say that
3    notwithstanding my belief that it is a broad arbitration
4    agreement, as phrased, and, therefore, would satisfy in
5    favor of ACE (and certainly the debtors would not carry
6    their burden to show otherwise) that the agreement is broad.
7    But, to me, it does not deal with the unique bankruptcy
8    context of the cash collateral motion.
9                 One can also approach the problem presented by the
10   motion from the perspective of whether Congress intended
11   this particular type of dispute to be non-arbitrable.
12   Obviously, Congress did not so state expressly in the
13   relevant provisions of the Bankruptcy Code.  On the other
14   hand, Congress did expressly provide for the Court to make
15   the relevant determination under section 363(e), and applied
16   it to a trustee or debtor in possession, not the prepetition
17   debtor.
18                 And, further, it is, as such, a core matter going
19   beyond the basic statutory definition of "core," 28 U.S.C.
20   section 157(b), to be a fundamental aspect of the bankruptcy
21   process.  It is hard to see how Congress would have meant to
22   turn over this particular type of determination, in which,
23   as the Second Circuit has recognized, other parties in
24   interest would have the right to intervene if they wanted to
25   (see In re The Caldor Corp., 303 F.3d 161 (2d Cir. 2002); 11
```

```
 1   U.S.C. section 1109(b)) to an arbitration panel in a two
 2   party dispute, which may abstain from following the strict
 3   rules of law and "shall make their decision with regard to
 4   the custom and usage of the insurance business."  See
 5   generally Randall G. Block, "Bound in Bankruptcy," 29 Los
 6   Angeles Lawyer (2007), in which the author states, "Other
 7   provisions of the Bankruptcy Code" (other than lift-stay
 8   motions) "that require the bankruptcy court to make findings
 9   or approve certain actions are arguably inconsistent with
10   resolution through arbitration. For example, the
11   confirmation of a plan, sale of property outside the
12   ordinary course, use of cash collateral, or assumption or
13   rejection of executory contracts all require express
14   authorization by the court.  Arguably this authorization
15   requirement does not comport with allowing disputes over
16   these matters to be handled through arbitration."
17            Again, all of those issues involve both multi-
18   party notice and determination, recognizing the multi-party
19   nature of bankruptcy issues in bankruptcy cases, and,
20   finally, in a summary proceeding manner, the exercise, as a
21   final call, of the bankruptcy judge's judgment as to the
22   propriety of the action to be taken.  See In re Orion
23   Pictures Corp., 4 F.3d 1095 (2d Cir. 1993).
24            It also appears to me that even if the arbitration
25   provision does, in fact, apply to this dispute, the Court
```

```
 1   should exercise its discretion and deny the arbitration
 2   demand.  The Court clearly has that authority, given that
 3   this is a core proceeding.  The cases stemming from the MBNA
 4   v Hill decision make that clear, as does the United States
 5   Lines decision, although MBNA also made it clear that to
 6   exercise the court's discretion on a core matter, that is,
 7   core under 28 U.S.C. section 157, the type of matter must be
 8   unique to or uniquely affected by bankruptcy proceedings,
 9   and the proceedings are a core bankruptcy function that
10   invokes substantial substantive rights that are created by
11   the Code and in severe conflict with arbitration under the
12   Federal Arbitration Act.
13              As I noted earlier, this is clearly that type of
14   proceeding.  Therefore, I see no contradiction in the logic
15   employed by Bankruptcy Judge Walsh in Delaware in the NEC
16   Holdings' case, which involved a similar request for cash
17   collateral (the transcript of which has been attached as
18   Exhibit B to the objection of the motion, which is Case No.
19   10-1890, Docket No. 1360, Bankruptcy D. Delaware, June 30,
20   2011), and Judge Walsh's written decision in In re Olympus
21   Healthcare Group, 352 B.R. 603 (Bankr. D. Del. 2006), which
22   involved not use of cash collateral, but a contract dispute,
23   a true contract dispute, which certainly would be subject to
24   arbitration.
25              If I were to exercise any discretion here, I
```

1   believe it would not be over whether I should hear the

2   section 363(e) matter, because clearly I need to hear it, I

3   have a duty to hear it, but, rather, whether I should parcel

4   out a piece of that litigation to an arbitration panel.

5   But, as I stated during oral argument, it would seem to me

6   that that piece would only be a piece to fix a specific fact

7   that might be at issue, as opposed to underlying rights of

8   the parties.

9             It would be analogous to compelling a piece of a

10  lift stay motion to go to arbitration, and then have that

11  fact come back to me.  I suppose under certain

12  circumstances, applying the Second Circuit's factors laid

13  out in In re Sonnax, a court might do that, particularly if

14  the non-bankruptcy tribunal or arbitrable panel was about to

15  rule on that key issue.  See In re Sonnax Industries, Inc.,

16  907 F.2d 1280, 1286 (2d Cir. 1990), laying out the twelve

17  factors that the Circuit believes relevant to whether to

18  lift the stay for another decision-making body to determine

19  an issue.

20            But it would be in that context, as opposed to

21  requiring arbitration, and it is the approach that has been

22  taken by countless courts in the analogous situation where

23  there was a lift-stay motion and parts of the issue were

24  involved in arbitration and where the courts applied the

25  Sonnax factors as opposed to saying that pieces of the lift

1   stay issue were to be sent to the arbitrators.  See, for
2   example, Salander-O'Reilly Galleries, 479 B.R. at 25; In re
3   St. Vincent's Catholic Medical Centers of New York, 2012
4   U.S. Dist. LEXIS 139584 (S.D.N.Y September 27, 2012), at 8
5   through 10; and In re Quigley Company, Inc., 361 B.R. 723,
6   743 through 44 (Bankr. S.D.N.Y 2007).  See also In re
7   Spectrum Information Technologies, Inc., 183 B.R. 360
8   (Bankr. E.D.N.Y 1995), although I recognize that that case
9   predates MBNA v Hill.
10          I conclude, in exercising my discretion with
11  respect to this core matter under 28 U.S.C. section
12  157(a)(2) (and it is "substantially" core under the
13  arbitration/bankruptcy court analysis), that the issues,
14  which substantially affect both bankruptcy policy as well as
15  the conduct of this case, are such that even if the parties
16  did, in fact, agree to arbitrate the cash collateral issue,
17  and, further, that Congress did not intend to preclude the
18  arbitration of this issue, having considered the nature of
19  the claim and the facts of this case, clearly the whole
20  dispute (and even the portion of dispute which would not
21  result in anything more than providing a data point for the
22  Court in deciding the dispute), should not be determined by
23  an arbitration panel.
24          To do so would seriously jeopardize the objectives
25  of the Bankruptcy Code as expressed in section 363(c) and

1   (e) and conflict with the integrity of the bankruptcy

2   process in this case.  So I'll deny the motion.  The debtors

3   can submit an order, and they should e-mail a copy of it to

4   counsel for ACE before they submit it, to make sure it's

5   consistent with my ruling.

6

7   **Dated:** White Plains, New York
            January 7, 2013
8

9                                      /s/Robert D. Drain_____  __
                                       **UNITED STATES BANKRUPTCY JUDGE**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25