**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Old HB, Inc. | : | Case No. 12-22052 (RDD) |
| (f/k/a Hostess Brands, Inc.), *et al.*,[1] | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |

---------------------------------------------------------------x

## ORDER (I) AUTHORIZING THE SALE OF CERTAIN REAL ESTATE, MACHINERY & EQUIPMENT AND FLEET ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (II) GRANTING RELATED RELIEF

This matter coming before the Court on the Motion (the "Motion") (Docket No. 2661)

of Debtors and Debtors in Possession for (I) an Order (A) Approving Bidding Procedures for the

Sale of Certain Real Estate, Machinery & Equipment and Fleet Assets, (B) Approving Bidder

Protections, (C) Scheduling a Final Sale Hearing and Approving the Form and Manner of Notice

Thereof and (D) Granting Related Relief; and (II) an Order (A) Authorizing the Sale of Certain

Real Estate, Machinery & Equipment and Fleet Assets Free and Clear of Liens, Claims, Interests

and Encumbrances and (B) Granting Related Relief, filed by the above-captioned debtors and

debtors-in-possession (the "Debtors") seeking, among other things, the entry of an order (the

"Sale Order"), pursuant to sections 105 and 363 of the United States Bankruptcy Code, 11 U.S.C.

§§ 101, et seq. (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 6004-1 and 9006-1(b) of the Local

Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York

---

[1]     The Debtors are the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Old HB, Inc. (f/k/a Hostess Brands, Inc.) (0322), IBC Sales Corporation (3634), IBC Services, LLC (3639), IBC Trucking, LLC (8328), Interstate Brands Corporation (6705) and MCF Legacy, Inc. (0599).

(the "Local Bankruptcy Rules"), authorizing and approving the sale of certain of the Debtors' real

estate, machinery & equipment and fleet assets described in the Motion (the "Remaining

Assets"); and the Court having taken into consideration this Court's prior order, dated July 19,

2013 (Docket No. 2712) (the "Bidding Procedures Order"), approving competitive bidding

procedures for the Remaining Assets (the "Bidding Procedures"); and the Auction[2] having taken

place in accordance with the Bidding Procedures on August 16, 2013, and Buyer having been

chosen by the Debtors as the Successful Bidder at the Auction; and the Court having conducted a

hearing on the Sale Motion on August 21, 2013 (the "Sale Hearing"), at which time all interested

parties were offered an opportunity to be heard with respect to the Sale Motion; and, after due

notice, there being no remaining objections to the Sale Motion or the proposed sale to the Buyer;

and the Court having reviewed and considered (i) the Sale Motion and the exhibits thereto,

(ii) the Asset Purchase Agreement (the "Purchase Agreement"), substantially in the form

attached hereto as Exhibit A, dated July 3, 2013 and as amended on August 19, 2013, by and

among Buyer and Old HB, Inc., Interstate Brands Corporation and IBC Sales Corporation,

whereby the Debtors have agreed, among other things, to sell the Remaining Assets to Buyer

(the "Sale Transaction"), (iii) the Declaration of David Rush in Support of the Sale Motion,

(iv) the Declaration of Joel Schneider in Support of the Sale Motion, (v) all objections to the Sale

Transaction filed in accordance with the Bidding Procedures Order, all of which have been

withdrawn or otherwise resolved, and (vi) the arguments of counsel made, and the evidence

proffered or adduced, at the Sale Hearing; and it appearing that due notice of the Sale Motion,

the Bidding Procedures Order, the Auction and the form of order (substantially in the form of

this Order) proposed by the Debtors to be entered granting the Sale Motion and approving the

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

NYI-4522646v8

sale of the Remaining Assets (the "<u>Proposed Sale Order</u>") has been provided in accordance with

the Bidding Procedures Order; and it appearing that the relief requested in the Sale Motion is in

the best interests of the Debtors, their estates and creditors and all parties in interest in these

bankruptcy cases; and upon the record of the Sale Hearing and these cases; and after due

deliberation thereon; and good cause appearing therefor, it is hereby **FOUND AND**

**DETERMINED THAT:**

### JURISDICTION, FINAL ORDER AND STATUTORY PREDICATES

A.      This Court has jurisdiction over the Sale Motion, the transactions

contemplated by the Purchase Agreement and any other ancillary documents and agreements

related thereto pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and 1334(a).  This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of these cases and the

Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory and other legal predicates for the relief sought in the Sale

Motion are sections 105(a), 362 and 363(b), (f), (m) and (n) of the Bankruptcy Code, Bankruptcy

Rules 2002 and 6004, Local Bankruptcy Rules 6004-1 and 9006-1(b), and the Amended

Guidelines for the Conduct of Asset Sales, Approved by Administrative Order Number 383 in

the United States Bankruptcy Court for the Southern District of New York.

C.      This Sale Order constitutes a final and appealable order within the

meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rule 6004(h) and Rules 6004-1

and 9006-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the

Southern District of New York, the Court expressly finds that there is no just reason for delay in

the implementation of this Sale Order, and expressly directs entry of judgment as set forth

herein.

NYI-4522646v8

## SOUND BUSINESS PURPOSE

D.      The Debtors have (1) demonstrated good, sufficient, and sound business purposes and justifications for the Sale Transaction, (2) appropriately exercised their business judgment by entering into the Sale Transaction and (3) demonstrated compelling circumstances for entry into the Sale Transaction pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a chapter 11 plan in that, among other things, the value of the Remaining Assets would be harmed by any delay of the Sale Transaction.  Business justifications for the Sale Transaction include the facts that (i) the Purchase Agreement constitutes the highest and best offer received for the Remaining Assets; (ii) the Purchase Agreement presents the best opportunity to maximize the value of the Remaining Assets; and (iii) the Sale Transaction enhances the Debtors' ability to successfully conclude the winddown of these estates.

## HIGHEST AND BEST OFFER

E.      The Bidding Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Remaining Assets.  The Debtors conducted the Auction and have complied with the Bidding Procedures Order.  Buyer participated in the Auction and complied with the Bidding Procedures Order in all respects.

F.      As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing, (1) the Debtors have adequately marketed the Remaining Assets; (2) the Purchase Agreement to which Buyer is a party constitutes the highest and best offer for the Remaining Assets and provides fair and reasonable consideration therefor; and (3) the consideration to be paid by Buyer under the Purchase Agreement constitutes reasonably equivalent value and fair consideration for the Remaining Assets under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia.

NYI-4522646v8

G.      Buyer was the Successful Bidder for the Remaining Assets in accordance with the Bidding Procedures and Bidding Procedures Order.  The process conducted by the Debtors pursuant to the Bidding Procedures obtained the highest and best value for the Remaining Assets for the Debtors and their estates.

H.      Buyer has provided the Debtors with a deposit in an amount equal to $5 million of the initial cash consideration contemplated by the Purchase Agreement (such amount, the "Good Faith Deposit"), which Good Faith Deposit is currently being held by U.S. Bank, N.A. (the "Escrow Agent") in an interest-bearing account.

### BEST INTEREST OF CREDITORS

I.      Approval of the Purchase Agreement and the consummation of the Sale Transaction with Buyer at this time are in the best interests of the Debtors, their creditors, their estates and all parties in interest.

### GOOD FAITH

J.      The Purchase Agreement and each of the transactions contemplated therein were negotiated, proposed and entered into by the Debtors and Buyer in good faith, without collusion and from arm's-length bargaining positions.  There has been no showing that the Debtors or the Buyer (i) have entered into the Purchase Agreement or proposes to consummate the purchase of the Remaining Assets for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors or (ii) are entering into the Purchase Agreement or proposing to purchase the Remaining Assets fraudulently, for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or other applicable law.  Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  Neither the Debtors nor Buyer have engaged in any conduct that would cause

- 5 -

or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  Buyer is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code.

### NOTICE OF THE SALE MOTION AND THE AUCTION

K.      As evidenced by the certificates of service filed with the Court, (1) proper, timely, adequate and sufficient notice of the Sale Motion, the proposed Sale Transaction, the Bidding Procedures, the Auction, the Sale Hearing and the Proposed Sale Order was provided by the Debtors, (2) such notice was good, legally sufficient and appropriate under the circumstances, and (3) no other or further notice of the Sale Motion, the proposed Sale Transaction, the Bidding Procedures, the Auction, the Sale Hearing or the Proposed Sale Order is or shall be required.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein was afforded to all interested persons and entities.

### SECTION 363(F) REQUIREMENTS MET FOR FREE AND CLEAR SALE

L.      The Debtors may sell the Remaining Assets free and clear of all liens (including, but not limited to, all judgment, mechanics', carriers', workers', repairers' and similar liens arising prior to or after the Petition Date), charges, claims, security interests, title defects, title exceptions and other encumbrances ("Claims"), except for any Assumed Liabilities and Permitted Exceptions, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Without limiting the generality of the foregoing, "Claims" shall include any and all liabilities or obligations whatsoever arising under or out of, in connection with, or in any way relating to:  (1) any of the multiemployer pension plans to which any of the Debtors is or was a contributing employer and any of the single employer defined benefit plans to which any of the Debtors is or was a contributor, (2) any claims related to unpaid contributions or current or potential withdrawal or

- 6 -

termination liability, (3) any of the Debtors' collective bargaining agreements, (4) the Worker

Adjustment and Retraining Notification Act of 1988 or (5) any of the Debtors' current and

former employees.  Those holders of Claims who did not object (or who ultimately withdrew

their objections) to the Sale Transaction or the Sale Motion are deemed to have consented

pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Claims who did object

that have an interest in the Remaining Assets fall within one or more of the other subsections of

section 363(f) of the Bankruptcy Code.  Such objecting parties are adequately protected by

having their Claims that constitute interests in the Remaining Assets, if any, attach solely to the

proceeds of the Sale Transaction ultimately attributable to the property in which they have an

interest, in the same amount and order of priority and with the same validity, force and effect that

such holders had prior to the Sale Transaction, subject to any defenses of the Debtors.  All

persons having Claims of any kind or nature whatsoever against the Debtors or the Remaining

Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting

such Claims against Buyer or any of its assets, property, Affiliates, successors, assigns, or the

Remaining Assets (other than the Assumed Liabilities and the Permitted Exceptions).

   M.  Buyer would not have entered into the Purchase Agreement and would not

consummate the transactions contemplated thereby, thus adversely affecting the Debtors and

their estates and their creditors, if the sale of the Remaining Assets was not free and clear of all

Claims, other than Assumed Liabilities and Permitted Exceptions, or if Buyer would, or in the

future could, be liable for any such Claims, including, as applicable, certain liabilities related to

the Debtors' business that will not be assumed by Buyer, as described in the Purchase

Agreement.

- 7 -

N.        On the earlier to occur of the Closing Date and the date upon which the

Breakup Fee becomes payable to Buyer, Buyer and its Affiliates and their respective

representatives shall be released by the Debtors and their successors and assigns from any and all

claims, causes of action, obligations, liabilities, demands, damages, losses, costs and expenses of

any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the

sale of the Remaining Assets, except for Buyer's liabilities and obligations under the Purchase

Agreement.  For the avoidance of doubt, nothing in the immediately preceding sentence shall

operate as a release of Buyer or its Affiliates in any respect in the event of a breach by Buyer of

the Purchase Agreement.

**V<small>ALIDITY</small> O<small>F</small> T<small>HE</small> T<small>RANSFER</small>**

O.        As of the effective time of the consummation of the Sale Transaction

pursuant to the Purchase Agreement (the "Closing"), the transfer of the Remaining Assets to

Buyer will be a legal, valid and effective transfer of the Remaining Assets, and will vest Buyer

with all right, title and interest of the Debtors in and to the Remaining Assets, free and clear of

all Claims, other than Assumed Liabilities and Permitted Exceptions.

P.        The Debtors (1) have full corporate power and authority to enter into the

Purchase Agreement and carry out the Debtors' obligations thereunder and (2) the execution,

delivery and performance of the Purchase Agreement by the Debtors and the consummation by

the Debtors of the transaction contemplated thereby have been duly authorized by all requisite

corporate action.

NYI-4522646v8

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED
THAT:**

### GENERAL PROVISIONS

1.        The Sale Motion is granted as set forth herein, and the Sale Transaction is
approved as set forth in this Sale Order.

2.        The findings of fact set forth above and conclusions of law stated herein
shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy
Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent
any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and
to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so
deemed.

3.        All objections, if any, to the Sale Motion or the relief requested therein
that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or
by stipulation filed with the Court, and all reservations of rights included therein, are hereby
overruled on the merits.

### APPROVAL OF THE PURCHASE AGREEMENT

4.        The Purchase Agreement, all transactions contemplated therein and all of
the terms and conditions thereof are hereby approved.

5.        Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are
authorized to perform their obligations under and comply with the terms of the Purchase
Agreement and consummate the Sale Transaction, pursuant to and in accordance with the terms
and conditions of the Purchase Agreement and this Sale Order.

6.        The Debtors and their officers, employees and agents, are authorized to
execute and deliver, and authorized to perform under, consummate and implement, the Purchase

NYI-4522646v8

Agreement, in substantially the same form as attached hereto as <u>Exhibit A</u>, together with all

additional instruments and documents that may be reasonably necessary or desirable to

implement the Purchase Agreement and to take all further actions as may be (a) reasonably

requested by Buyer for the purpose of assigning, transferring, granting, conveying and conferring

to Buyer, or reducing to possession, the Remaining Assets or (b) necessary or appropriate to the

performance of the obligations contemplated by the Purchase Agreement, all without further

order of the Court.

### <u>TRANSFER OF ASSETS FREE AND CLEAR</u>

7.      Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code,

the Debtors are authorized to transfer the Remaining Assets in accordance with the terms of the

Purchase Agreement.  The Remaining Assets shall be transferred to Buyer, and upon

consummation of the Purchase Agreement, such transfer shall (a) be legal, valid, binding and

effective; (b) vest Buyer with all right, title and interest of the Debtors in the Remaining Assets;

and (c) be free and clear of all Claims, except for Assumed Liabilities and Permitted Exceptions,

with all Claims that represent interests in property to attach to the net proceeds of the Sale

Transaction constituting proceeds of such interests, in the amount and order of their priority and

with the same validity, force and effect which they now have against the Remaining Assets,

subject to any claims and defenses the Debtors may possess with respect thereto.

8.      Except as otherwise provided, in the Purchase Agreement, all persons and

entities (and their respective successors and assigns) including, without limitation, all debt

security holders, equity security holders, governmental, tax and regulatory authorities, lenders,

employees, former employees, pension plans, multiemployer pension plans, labor unions, trade

creditors and any other creditors holding Claims, except for Assumed Liabilities and Permitted

Exceptions, are hereby forever barred, estopped and permanently enjoined from asserting or

- 10 -

pursuing such Claims against Buyer, its Affiliates, successors or assigns, its property of the

Remaining Assets, including without limitation, taking any of the following actions with respect

to a Claim (other than an Assumed Liability or Permitted Exception): (a) commencing or

continuing in any manner any action or other proceeding against Buyer, or its affiliates,

successors, assigns, assets, or properties; (b) creating, perfecting or enforcing any liens, claims,

encumbrances, or other interests against Buyer, its successors, assigns; or (c) commencing or

continuing any action in any manner or place that does not comply, or is inconsistent, with the

provisions of this Sale Order, the Purchase Agreement or the agreements or actions contemplated

or taken in respect thereof.  No such person or entities shall assert or pursue against Buyer or its

Affiliates, successors or assigns any such Claim, except for Assumed Liabilities and Permitted

Exceptions.

9.      Except as expressly set forth in the Purchase Agreement, Buyer and its

successors and assigns shall have no liability for any Claim.  By virtue of the Sale Transaction,

Buyer shall not be deemed to: (a) be a legal successor, or otherwise be deemed a successor to

any of the Debtors; (b) have, *de facto* or otherwise, merged with or into any or all Debtors; or

(c) be a mere continuation or substantial continuation of any or all Debtors or the enterprise or

operations of any or all Debtors.  Further, except for Assumed Liabilities and the Permitted

Exceptions, Buyer shall have no liability for any Claim, whether known or unknown as of the

Closing Date, now existing or hereafter arising, whether fixed or contingent, whether as a

successor, vicariously, or otherwise, of any kind, nature or character whatsoever, including

Claims arising under, without limitation: (i) any employment or labor agreements including

without limitation any collective bargaining agreements of any of the Debtors or the termination

thereof; (ii) any pension, welfare, compensation or other employee benefit plans, agreements,

- 11 -

practices and programs, including, without limitation, any pension plan of or related to any of the

Debtors or any Debtor's Affiliates or predecessors or any current or former employees of any of

the foregoing; (iii) any employee, worker's compensation, occupational disease or

unemployment or temporary disability related law, including, without limitation, claims that

might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of

1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of

1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act,

(f) the Worker Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination

and Employee Act of 1967 and Age Discrimination in Employment Act, as amended,

(h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget

Reconciliation Act of 1985, (j) the Multiemployer Pension Plan Amendments Act of 1980,

(k) state discrimination laws, (l) state unemployment compensation laws or any other similar

state laws, (m) state workers' compensation laws or (n) any other state or federal employee

benefit laws, regulations or rules or other state or federal laws, regulations or rules relating to

employment with any or all Debtors or any predecessors; (iv) any antitrust laws; (v) any product

liability or similar laws, whether state or federal or otherwise; (vi) any environmental laws, rules,

or regulations, including, without limitation, under the Comprehensive Environmental Response,

Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes;

(vii) any bulk sales or similar laws; (viii) any tax statutes or ordinances, including, without

limitation, the Internal Revenue Code of 1986, as amended; (xi) any common law doctrine of

*de facto* merger or successor or transferee liability, successor in- interest liability theory or any

other theory of or related to successor liability; (x) or from the Debtors' business operations or

the cessation thereof; and (xi) or from any litigation involving one or more of the Debtors.

- 12 -

Nothing in this Sale Order or in the Purchase Agreement shall be held to limit any independent

bargaining or other obligations of Buyer that may arise from and after the closing of the Sale

Transaction pursuant to the National Labor Relations Act, 29 U.S.C. § 151, *et seq*.

10.     This Sale Order (a) shall be effective as a determination that, as of the

Closing, all Claims, other than Claims that constitute Permitted Exceptions and the Assumed

Liabilities under the Purchase Agreement, have been unconditionally released, discharged and

terminated as to Buyer and the Remaining Assets, and that the conveyances and transfers

described herein have been effected, and (b) is and shall be binding upon and govern the acts of

all entities, including all filing agents, filing officers, title agents, title companies, recorders of

mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental

departments, secretaries of state, federal and local officials and all other persons and entities who

may be required by operation of law, the duties of their office, or contract, to accept, file, register

or otherwise record or release any documents or instruments, or who may be required to report or

insure any title or state of title in or to any lease; and each of the foregoing persons and entities is

hereby directed to accept for filing any and all of the documents and instruments necessary and

appropriate to consummate the transactions contemplated by the Purchase Agreement.

11.     If any person or entity that has filed financing statements, mortgages,

mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against or in

the Debtors or the Remaining Assets shall not have delivered to the Debtors prior to the Closing

of the Sale Transaction, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfaction, releases of all interests which the person or

entity has with respect to the Debtors or the Remaining Assets or otherwise, then with regard to

the Remaining Assets that are purchased by Buyer pursuant to the Purchase Agreement and this

NYI-4522646v8

Sale Order (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Remaining Assets and (b) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Remaining Assets other than the Assumed Liabilities and the Permitted Exceptions.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

12.    Nothing in this Sale Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any liability (including for penalties, damages, cost recovery or injunctive relief but excluding any liability arising in connection with any employee benefit plan of any Debtor or an Affiliate of any Debtor) to a Governmental Unit under police and regulatory statutes or regulations (including but not limited to environmental laws or regulations) that any entity would be subject to as the owner, lessor, lessee, or operator of property that is sold or transferred pursuant to this Sale Order.  For the avoidance of doubt, the foregoing sentence refers only to liability arising from an entity's status as the owner, lessor, lessee or operator of property, and not pursuant to any theory of successor liability.  Nothing in this Sale Order or in the Purchase Agreement shall in any way diminish the obligation of any entity, including the Debtors, to comply with applicable environmental laws.  Nothing in this Sale  Order or the Purchase Agreement authorizes the transfer to the Buyer of any governmental licenses, permits, registrations, authorizations or approvals without the Buyer's compliance with all applicable legal requirements under the law governing such transfers.  Further, nothing in this

- 14 -

Sale Order shall be construed to create for any Governmental Unit any substantive right that does not already exist under law.

**ADDITIONAL PROVISIONS**

13.     On the Closing Date, the Debtors and the Buyer will cause the Reserve Amount (as defined in the Purchase Agreement) to be held by the Title Company (as defined in the Purchase Agreement) in escrow for a period of 6 months from the Closing Date to pay for Losses (as defined in the Purchase Agreement) to the Remaining Assets in accordance with the terms of the Purchase Agreement, including section 3.6 thereunder.

14.     The Debtors are authorized and directed to use, pay or retain all proceeds from the Sale Transaction as required by paragraph 3 of the Stipulation and Agreed Order By and Among the Debtors, the DIP Agent and the Pre-Petition Agents Modifying the Final Orders in Certain Respects [Docket No. 2521], which provides, among other things, that:

(a) the Debtors are authorized and directed to use the net proceeds from the Sale Transaction (after a deduction from the gross proceeds of the Sale Transaction for any existing tax liens, mechanics' liens or other similar statutory liens (the "Senior Statutory Liens") that are, by operation of law, senior in priority to the Prepetition Liens and the Adequate Protection Liens (as such terms are defined in the Final Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364 and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Adequate Protection to Pre-Petition Secured Parties [Docket No. 254] (as subsequently amended, the "Final DIP Order")) to pay the Breakup Fee, to the extent due and owing; (b) claims secured by Senior Statutory Liens that are not in dispute may also be paid from the gross proceeds of the Sale Transaction at the closing or at any time thereafter in the undisputed amount of such claims; and (c) to the extent that certain claims secured by Senior Statutory Liens are disputed or otherwise unresolved as of the closing of the

- 15 -

Sale Transaction as to the amount or priority thereof, the Debtors shall segregate proceeds in an amount sufficient in the Debtors' reasonable judgment to satisfy such claims if the lienholders' contentions with respect to such claims and their senior priority status are proven correct, and such segregated proceeds will be held within the Debtors' existing bank concentration account and shall not be used for any other purpose absent a court order to do so or consent of the applicable lienholder.

15.     With regard to certain 2011, 2012 and 2013 *ad valorem* real and personal property taxes owed to the Duval County Tax Collector, the Debtors shall pay to the Duval County Tax Collector a sum of $35,381.83 from the proceeds of the Sale Transaction within two (2) business days of the Closing.

16.     With regard to certain 2011 and 2012 *ad valorem* real property taxes owed to the Wayne County Treasurer, the Debtors shall pay to the Wayne County Treasurer a sum of $65,645.24 from the proceeds of the Sale Transaction within two (2) business days of the Closing.  The Debtors also shall place in escrow in the segregated funds account referred to in paragraph 14 of this Order (a) $3,833.31 of such proceeds with regard to certain disputed 2011 and 2012 *ad valorem* real property taxes allegedly owed to the Wayne County Treasurer and  (b) $7,399.82 of such proceeds with regard to certain disputed 2007 and 2008 *ad valorem* real property taxes allegedly owed to the Wayne County Treasurer.  The Debtors shall not use such funds for any purpose other than payment to the Wayne County Treasurer absent an order of this Court or the agreement of the Wayne County Treasurer.

17.     With regard to certain 2011 and 2012 ad valorem real and personal property taxes owed to Henrico County, Virginia ("Henrico County"), the Debtors shall pay to Henrico County a sum of $7,933.33 from the proceeds of the Sale Transaction within

two (2) business days of the Closing.  The Debtors also shall place $6400.87 of such proceeds in

escrow in the segregated funds account referred to in paragraph 14 of this Order with regard to

certain 2013 ad valorem real and personal property taxes owed to Henrico County.  The Debtors

shall not use such funds for any purpose other than payment to Henrico County absent an order

of this Court or the agreement of Henrico County.

18.     With regard to the mechanic's liens asserted by Sentry Roofing, Inc.

against 140 Dupree Street, Charlotte, NC and 350 West Johnstown Road, Gahanna, OH,

the Debtors shall pay to Sentry Roofing, Inc. $179,293.34 from the proceeds of the Sale

Transaction within five (5) business days of the Closing.

19.     Notwithstanding anything in this Order to the contrary, and in addition to

the amounts retained by the Debtors under paragraph 14, the Debtors will not distribute, but will

retain and segregate within the Debtors' accounts, the amount of $3,500,000 from the proceeds of

the Sale Transaction for the purpose of consensually resolving the Maeva Advisors, LLC

objection to the Sale (the "Maeva Objection").  Such retention and segregation of funds shall be a

reserve with respect to the claim of MAEVA described in the Maeva Objection.  Unless the

Court orders otherwise, the segregation of such funds shall discontinue on October 9, 2013 at

3:00 p.m. ET.  The rights of parties in interest, including the Debtors, any Fourth Lien Debt

Holders and the Fourth Lien Indenture Trustee, to object to the allowance and/or payment of the

Maeva claim on any applicable factual or legal ground are hereby preserved, as are the rights and

remedies of the Fourth Lien Debt Holders and Fourth Lien Indenture Trustee with respect to the

proceeds of the Sale Transaction, including with respect to the funds being segregated pursuant

to this paragraph.

NYI-4522646v8

20.     This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects), to adjudicate disputes related to this Sale Order or the Purchase Agreement, and to enforce the injunctions set forth herein.

21.     No bulk sales law, or similar law of any state or other jurisdiction, shall apply in any way to the transactions contemplated by the Purchase Agreement, the Sale Motion and this Sale Order.

22.     The transactions contemplated by the Purchase Agreement are undertaken by Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Remaining Assets to Buyer, free and clear of Claims, unless such authorization is duly stayed before the Closing pending such appeal.

23.     The terms and provisions of the Purchase Agreement and this Sale Order shall be binding in all respects upon, or shall inure to the benefit of, the Debtors, their estates and their creditors, Buyer, and their respective Affiliates, successors and assigns, and any affected third parties including all persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner or receiver.

- 18 -

24.     The failure specifically to include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

25.     The Purchase Agreement, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the Purchase Agreement.

26.     In the event that there is a direct conflict between the terms of this Sale Order and the terms of (i) the Purchase Agreement, or (ii) any other order of this Court, the terms of this Sale Order shall control.

27.     Each and every federal, state and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

28.     Any discharge of indebtedness that might otherwise be recognized for U.S. income tax purposes as income from discharge of indebtedness by the Debtors as a result of the performance of any obligation or taking of any other action contemplated by the Purchase Agreement, and any discharge or release of indebtedness as result of the Purchase Agreement, is hereby granted by the Court.

29.     Heritage Global Partners, Inc., Biditup Auctions Worldwide, Inc. and Maynards Industries (collectively, "HGP") is hereby declared the Next Highest Bidder for the Remaining Assets.  Subject to, and in accordance with, the terms of this Sale Order, the Debtors

are authorized to consummate, complete and close the sale of the Remaining Assets with HGP in the event that the Sale Transaction with Buyer does not close for any reason whatsoever, without further order of this Court.

30.     Notwithstanding Bankruptcy Rules 6004 and 7062, General Order M-383, and Local Bankruptcy Rule 6004-1, this Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a), and shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the stay contemplated by Bankruptcy Rule 6004(h) is waived and the Debtors and the Buyer are authorized to close the sale following entry of this Order in accordance with the terms of the Purchase Agreement.


Dated:    August 21, 2013
          White Plains, New York


                                        /s/Robert D. Drain
                                        HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

NYI-4522646v8

## EXHIBIT A

## PURCHASE AGREEMENT