**DUANE MORRIS LLP**
Wendy M. Simkulak, Esquire
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000 (Telephone)
(212) 692-1020 (Facsimile)
and
Lewis R. Olshin, Esquire (admitted *pro hac vice*)
Catherine B. Heitzenrater, Esquire (PA 205597)
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000 (Telephone)
(215) 979-1020 (Facsimile)
Counsel for the ACE Companies

**Hearing Date: September 9, 2014 at 10:00 a.m.**
**Objection Deadline: September 2, 2014 at 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Old HB, Inc. | : | |
| (f/k/a Hostess Brands, Inc.), *et al.*,[1] | : | Case No. 12-22052 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------x

## MOTION OF THE ACE COMPANIES
## FOR A NARROWLY-TAILORED STAY PENDING APPEAL

---

[1]    The Debtors are comprised of the following six entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Old HB, Inc. (f/k/a Hostess Brands, Inc.) (0322), IBC Sales Corporation (3634), IBC Services, LLC (3639), IBC Trucking, LLC (8328), Interstate Brands Corporation (6705) and MCF Legacy, Inc. (0599).

# **TABLE OF CONTENTS**

PROCEDURAL BACKGROUND .......................................................................1

JURISDICTION AND VENUE ........................................................................ 3

RELIEF REQUESTED ................................................................................... 3

BASIS FOR RELIEF ..................................................................................... 3

    A.    The ACE Companies Will Suffer Irreparable Harm Absent A Stay
        Pending Appeal. .................................................................................5

    B.    The Harm to the ACE Companies Outweighs Any Potential Harm
        to the Debtors ...................................................................................8

    C.    There Is A Substantial Possibility That The ACE Companies Will
        Prevail On The Merits Of The Appeal ......................................................10

        1.    The Law Permits AL Claimants To Recover Insurance
            Proceeds Without Filing A Claim In The Bankruptcy Case..........11

        2.    Bankruptcy Law Does Not Permit The Injunction
            Contained In The Order ...............................................................13

        3.    State Law Required The Debtors To Procure The AL
            Polices, and State Law Requires The ACE Companies To
            Handle And Pay Claims Arising Under Those Policies. ...............15

    D.    The Public Interest Supports Granting A Stay..........................................16

CONCLUSION ............................................................................................ 16

NOTICE .................................................................................................... 17

NO PRIOR REQUEST ................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337 (S.D.N.Y. 2007)..................................................................................4

*Admiral Ins. Co. v. Grace Indus.*, 409 B.R. 275 (Bankr. E.D.N.Y. 2009) ......................6

*In re Allied Prods. Corp.*, 288 B.R. 533 (Bankr. N.D. Ill. 2003) ....................................6

*In re American Hardwoods*, 885 F.2d 621 (9th Cir. 1989)............................................14

*Deutsch-Sokol v. Northside Sav. Bank (In re Deutsch-Sokol)*, 290 B.R. 27 (S.D.N.Y. 2003) ...............................................................................................................12

*Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. N.Y. 2005) ....................14

*In re Doug Baity Trucking, Inc.*, No. 04-13537, 2005 Bankr. LEXIS 1099 (Bankr. M.D.N.C. Apr. 21, 2005)..............................................................................11

*In re Family Showtime Theatres, Inc.*, 67 B.R. 542 (Bankr. E.D.N.Y. 1986)..............10

*Green v. Welsh*, 956 F.2d 30 (2d Cir. 1992) ................................................................13

*In re Hechinger Inv. Co. of Del., Inc.*, No. 99-2261, 2001 Bankr. LEXIS 148 (Bankr. D. Del. Jan. 29, 2001) ...................................................................................13

*Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993)......................11

*Jones v. Golden Eagle Ins. Corp.*, 201 Cal. App. 4th 139 (Cal. App. 1st Dist. 2011) ...................6

*Kiernan v. Zurich Cos.*, 150 F.3d 1120 (9th Cir. 1998)..................................................7

*Law v. Siegel*, --- U.S. ---, 134 S. Ct. 1188 (2014) ......................................................14

*Lopez & Median Corp. v. Marsh USA, Inc.*, No. 05-1595, 2009 U.S. Dist. LEXIS 132047 (D.P.R. 2009) .......................................................................................12

*Merchants Mut. Auto. Liability Ins. Co. v. Smart*, 267 U.S. 126 (1925) ........................7

*Minafri v. UA Theatres, Inc.*, 5 Misc. 3d 474 (N.Y. Sup. Ct. 2004)................................6

*Mohammed v. Reno*, 309 F.3d 95 (2d Cir. N.Y. 2002)............................................4, 10

*Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9 (Bankr. E.D.N.Y. 1999), *aff'd* 2000 U.S. Dist. LEXIS 22005 (E.D.N.Y. Mar. 2, 2000).......................................11

DM3\2970215.2

*Owaski v. Jet Florida Systems, Inc. (In re Jet Florida Systems, Inc.)*, 883 F.2d 970 (11th Cir. 1989) ...................................................................................................... 11-12

*In re Pettibone Corp.*, 156 B.R. 220 (Bankr. N.D. Ill. 1993) ....................................................12

*In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000) ...............................................................13

*Saravia v. 1736 18th Street, N.W., Ltd. Partnership*, 844 F.2d 823 (D.C. Cir. 1988) ..................15

*Shakir v. U.S. Leasing Intl., Inc.*, 831 N.Y.S.2d 362 (N.Y. Sup. Ct. 2006) ....................................6

*Silverman v. Nat'l Union Fire Ins. Co. (In re Suprema Specialties, Inc.)*, 330 B.R. 93 (S.D.N.Y. 2005) ......................................................................... 4-5, 10, 16

*In re St. Johnsbury Trucking Co.*, 185 B.R. 687 (S.D.N.Y. 1995) ............................................ 7-8

*In re Traylor*, 94 B.R. 292 (Bankr. E.D.N.Y. 1989) ...................................................................16

*In re Turner*, 207 B.R. 373 (B.A.P. 2d Cir. 1997) ......................................................................10

*In re W. Real Estate Fund*, 922 F.2d 592 (10th Cir. 1990) ........................................................14

**Statutes**

11 U.S.C. § 105 ..................................................................................................................1, 14

11 U.S.C. § 105(a) ..................................................................................................................14

11 U.S.C. § 503(a) .......................................................................................................... 1, 11-12

11 U.S.C. § 524(a)(2) ..........................................................................................................12, 14

11 U.S.C. § 524(a)(3) ..............................................................................................................14

11 U.S.C. § 524(e) ............................................................................................................. 12-14

28 U.S.C. § 157 .......................................................................................................................3

28 U.S.C. § 157(b) ...................................................................................................................3

28 U.S.C. § 1334 ......................................................................................................................3

28 U.S.C. § 1408 ......................................................................................................................3

28 U.S.C. § 1409 ......................................................................................................................3

N.Y. Ins. Law § 109 ..................................................................................................................7

N.Y. Ins. Law § 2601 ................................................................................................................7

iii

N.Y. Ins. Law § 3420 ...................................................................................................... 6-7

N.Y. Ins. Law § 3420(a)(1) ................................................................................................. 6

N.Y. Veh. & Tr. Law § 312 ...............................................................................................15

**Other Authorities**

FED. R. BANKR. P. 8005 .............................................................................................. 1, 3-4

DM3\2970215.2

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY JUDGE:**

ACE American Insurance Company (collectively with its affiliates, the "ACE
Companies") respectfully files this Motion (the "Stay Motion"), pursuant to Federal Rule of
Bankruptcy Procedure 8005, for an Order **staying the effectiveness of the permanent**
**injunction of certain claims against the ACE Companies** contained in this Court's *Order*
*Pursuant to Sections 105 and 503(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and*
*3003, Establishing A New Bar Date For Filing Certain Automotive Liability Claims, Enjoining*
*The Pursuit Of Such Late-Filed Claims Against The Debtor And Its Insurer And Approving Form*
*and Manner Of Notice Thereof* [Docket No. 3309] (the "Order,") pending ACE's appeal of **the**
**portion of the Order that permanently bars, estops, and/or enjoins (i) claims against the**
**ACE Companies, (ii) recovery from proceeds of insurance policies issued by the ACE**
**Companies, and/or (iii) participation in distribution from the ACE Companies**. In support
of the Stay Motion, the ACE Companies respectfully represent as follows:

## PROCEDURAL BACKGROUND

1.      On January 11, 2012 (the "Petition Date"), Old HB, Inc. (f/k/a/ Hostess Brands,
Inc.) and its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under
chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

2.      On June 17, 2014, the Debtors filed the *Motion Of The Debtors and Debtors In*
*Possession, Pursuant to Sections 105 and 503(a) of the Bankruptcy Code and Bankruptcy Rules*
*2002 and 3003, For An Order Establishing A New Bar Date For Filing Certain Automotive*
*Liability Claims And Approving Form and Manner Of Notice Thereof* [Docket No. 3262] (the
"AL Claim Bar Date Motion")[1] seeking an order (i) establishing a New Bar Date for a discrete

---

[1]     Terms not defined herein shall have the meaning attributed to them in the AL Claim Bar Date Motion.

group of approximately 160 claimants who the Debtors identified as having a Potential Claim

against the Debtors (the "AL Claimants") which may be covered by an automobile liability

insurance policy issued by the ACE Companies to the Debtors (each, an "AL Policy" and

collectively, the "AL Policies"), (ii) approving the form and manner of notice of the New Bar

Date, and (iii) providing that any of those claimants who fails to file a claim by the New Bar

Date be forever barred, estopped and enjoined from asserting a Potential Claim against the

Debtors or the ACE Companies.

3.    In essence, the AL Claim Bar Date Motion sought to cut off the ability of those

third-party AL Claimants to recover proceeds of the AL Policies, which would otherwise

provide insurance coverage for appropriate Potential Claims.

4.    The ACE Companies filed an objection to the AL Claim Bar Date Motion (the

"Objection") on July 1, 2014.

5.    The Court held a hearing (the "Hearing") on the AL Claim Bar Date Motion on

July 8, 2014.

6.    On July 15, 2014, the Court entered the Order, which sets the New Bar Date and

specifically provides that any AL Claimant that does not file a claim by the New Bar Date "**shall

be forever barred, estopped and enjoined from: (a) asserting such Potential Claim against

the Debtors or their estates or property; (b) asserting such Potential Claim against the

Debtors' insurers, including ACE American Insurance Company ("ACE"); and (c)

participating in any distributions from the Debtors' estates or ACE on account of Potential

Claims.**" (Order at ¶ 7, emphasis in original).

7.    On July 29, 2014, the ACE Companies filed a Notice of Appeal, from **only** that

portion of the Order that permanently bars, estops, and/or enjoins AL Claimants who fail to file

claims by the AL Claim Bar Date from (i) proceeding against the ACE Companies on account of

those claims; (ii) recovering from the proceeds of the AL Policies on account of those claims;

and (iii) participating in a distribution from the ACE Companies on account of those claims.

**The ACE Companies are not appealing from the entirety of the Order, and specifically do**

**not appeal the Court's decision to establish the AL Claim Bar Date.**

## JURISDICTION AND VENUE

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

9.      Pursuant to Bankruptcy Rule 8005, the ACE Companies seek a narrowly-tailored

stay of **the portion of the Order that permanently enjoins AL Claimants that fail to file a**

**claim by the New Bar Date from asserting a claim against the ACE Companies**. The ACE

Companies *do not* request a stay of the portion of the Order that establishes the AL Claim Bar

Date. **The ACE Companies seek a <u>narrowly-tailored stay</u> of <u>only</u> the portion of the Order**

**that permanently enjoins the AL Claimants from asserting a Potential Claim against the**

**ACE Companies (the "<u>Requested Narrowly-Tailored Stay</u>").**

## BASIS FOR RELIEF

10.     Bankruptcy Rule 8005 provides that a bankruptcy court can protect the rights of

the parties while an appeal of one of its orders is pending:

> ...the bankruptcy judge may suspend or order the continuation of
> other proceedings in the case under the Code or make any other
> appropriate order during the pendency of an appeal on such terms
> as will protect the rights of all parties in interest.

3

Fed. R. Bankr. Pro. 8005.  Bankruptcy Rule 8005 permits the Court to grant a stay pending appeal.

11.    The Second Circuit has adopted a four-part test for determining whether a motion for stay pending appeal is proper pursuant to Bankruptcy Rule 8005: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007) (quoting *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993)); *Silverman v. Nat'l Union Fire Ins. Co. (In re Suprema Specialties, Inc.)*, 330 B.R. 93, 94-95 (S.D.N.Y. 2005).

12.    The "Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed," and therefore no single factor is determinative. *Id.*; *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. N.Y. 2002).  The more likely it is that the movant will suffer irreparable harm absent a stay, the less strong the showing of success on appeal needs to be, and *vice-versa*. *Mohammed*, 309 F.3d at 101 ("Simply stated, more of one [factor] excuses less of the other.") (citing *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) and *Ofosu v. McElroy*, 98 F.3d 694, 703 (2d Cir. 1996)).

13.    The Second Circuit has adopted the approach that "[t]he necessary 'level' or 'degree' of possibility of success [on the merits] will vary according to the court's assessment of the other [stay] factors." *Id.* (quoting *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) where applying this test, the court "granted a

4

stay pending appeal where the likelihood of success is not high but the balance of hardships favors the applicant"); *Silverman*, 330 B.R. at 95 ("The Court's decision on the requisite likelihood of success on appeal is therefore guided by its view of the competing harms and how the public interests are affected.").

14.    Here, all four factors weigh in favor of granting a stay pending appeal of the permanent injunction portion of the Order, and accordingly, the Requested Narrowly-Tailored Stay should be granted.

**A.    The ACE Companies Will Suffer Irreparable Harm Absent A Stay Pending Appeal.**

15.    If the Court fails to enter the Requested Narrowly-Tailored Stay pending the ACE Company's appeal, the ACE Companies will be put in the untenable position of being forced to violate state law in order to comply with the Order.  Such forced violation of state law will have legal and regulatory impacts on the ACE Companies which will cause irreparable harm.

16.    State and federal law mandate that commercial entities like the Debtors procure and maintain insurance against personal injury and property damage caused by operation of their vehicles.  *See* Exhibit A attached hereto, column 5.[2]

17.    The Debtors procured the AL Policies from ACE in order to fulfill these mandates.  *See* Exhibit B, Sample AL Policy § IV.B.1 and MCS-90 Endorsement.

18.    Each of the AL Policies contains a 'bankruptcy clause' stating among other things that: "[b]ankruptcy or insolvency of the 'insured' or of the 'insured's' estate will not relieve [the

---

[2]    More than half of the 160 Potential Claims identified by the Debtors occur in the following states: California (19), New York (18), New Jersey (9), Connecticut (7), Missouri (6), Illinois (6), and 5 each in Texas, New Hampshire, Florida, Massachusetts and Maryland.  **Exhibit "A"** is a schedule of the law in each of those states on four issues: (i) the Insolvency Clause (as defined herein), (ii) requirement that an insurer timely handle, settle and/or pay claims, (iii) mandatory motor vehicle insurance and (iv) policy interpretation even if the state required provisions are not present therein.  Exhibit A was attached as Exhibit C to the Objection.

5

ACE Companies] of [their] obligations under this [AL Policy.]" *See* Exhibit B, Sample AL

Policy § IV.B.1 (the "Insolvency Clause").

19.    The bankruptcy clause is included in the AL Policies because state laws require

insurers to fulfill their obligations under insurance policies even though the insured is in

bankruptcy. For example, New York Insurance Law § 3420 provides:

> (a) No policy or contract insuring against liability for injury to person, except as
> provided in subsection (g) hereof, or against liability for injury to, or destruction
> of, property shall be issued or delivered in this state, unless it contains in
> substance the following provisions or provisions which are equally or more
> favorable to the insured and to judgment creditors so far as such provisions relate
> to judgment creditors: (1) A provision that the insolvency or bankruptcy of the
> person insured, or the insolvency of the insured's estate, shall not release the
> insurer from the payment of damages for injury sustained or loss occasioned
> during the life of and within the coverage of such policy or contract.

N.Y. Ins. Law § 3420 (2014). *See also* Exhibit A, column 2.

20.    Such provisions are strictly enforced. *See, e.g., Shakir v. U.S. Leasing Intl., Inc.*,

831 N.Y.S.2d 362 (N.Y. Sup. Ct. 2006) ("Insurance Law § 3420(a)(1). . . makes clear that

bankruptcy does not relieve the insurance company of its obligation to pay damages for injuries

or losses covered under an existing policy.") (internal citations omitted)).[3] *Accord Admiral Ins.*

*Co. v. Grace Indus.*, 409 B.R. 275, 281 (Bankr. E.D.N.Y. 2009) (enforcing § 3420 and noting

that the bankruptcy clause "must be given full force and effect as a matter of state insurance

law").

---

[3]    *See also Minafri v. UA Theatres, Inc.*, 5 Misc. 3d 474, 478 (N.Y. Sup. Ct. 2004) ("plaintiff's failure to have filed
a notice of claim during defendant['s]. . .bankruptcy proceedings is not a bar to plaintiff's recovery for any
liability attributed to [the defendant] to the extent that plaintiff seeks recovery from its insure[r]"); *Jones v.
Golden Eagle Ins. Corp.*, 201 Cal. App. 4th 139, 148 (Cal. App. 1st Dist. 2011) (discussing right of plaintiff to
pursue insurance proceeds but not estate assets); *In re Allied Prods. Corp.*, 288 B.R. 533, 538 (Bankr. N.D. Ill.
2003) (noting that Seventh Circuit decisions "recognize[ ] that claimants under a liability insurance policy have
an ultimate right to payment from the insurance carrier" and holding that a debtor discharged in bankruptcy is
nevertheless subject to a nominal suit by claimants under a liability insurance policy, for purposes of obtaining a
judgment that may be enforced against the carrier that issued the policy).

6

21.     In fact, the U.S. Supreme Court has found that the predecessor of N.Y. Insurance Law § 3420 was a proper exercise of the state's police power and did not conflict with bankruptcy law or policy. *Merchants Mut. Auto. Liability Ins. Co. v. Smart*, 267 U.S. 126, 130-31 (1925).

22.     Further, insurers are required to submit their policy forms to state regulators for approval. Policy provisions which conflict with state statutory requirements are deemed inapplicable and disregarded. Instead, the policy is enforced as if it were in express compliance with the statutory requirements. *See, e.g., Kiernan v. Zurich Cos.*, 150 F.3d 1120 (9th Cir. 1998); Exhibit A, column 3.

23.     As the AL Policies reflect, the insurance industry is highly regulated. Once an insurer has knowledge of a claim, it has a duty to handle, settle and/or pay that claim. *See, e.g.,* N.Y. Ins. Law § 2601 (2014); Exhibit A, column 4. Failure to do so can expose the insurer to regulatory action. *See* N.Y. Ins. Law §§ 109, 2601 (2014).

24.     The Order, by prohibiting the ACE Companies from fulfilling their obligations under state law, has put the ACE Companies in the untenable position of having to choice between either (a) abiding by this Court's Order and violating state laws, or (b) violating the requirements of the Order while abiding by their obligations under state law.

25.     Absent the Requested Narrowly-Tailored Stay pending the ACE Companies' appeal, the ACE Companies will be irreparably injured by having to make the Hobson's choice between complying with their state law obligations or abiding by the Order.

26.     The Southern District of New York has recognized that a stay is necessary and proper where, as here, where a bankruptcy court order has the effect of possibly violating non-bankruptcy law. *See In re St. Johnsbury Trucking Co.*, 185 B.R. 687 (S.D.N.Y. 1995) (holding

that stay pending appeal must be granted where bankruptcy court order providing for a third-party release may violate non-bankruptcy law).

27.    The ACE Companies are seeking appellate review to determine how to manage their obligations under both this Court's Order and the state laws that they are required to follow. While awaiting this clarity, the ACE Companies should not be forced to choose between which legal obligation to honor.

28.    Without a stay of the portion of the Order permanently enjoining holders of Potential Claims who do not file a claim by the New Bar Date from asserting a claim against the ACE Companies, the ACE Companies will be irreparably harmed.

29.    Consequently, this factor weighs heavily in favor of granting the Requested Narrowly-Tailored Stay pending appeal. *See St. Johnsbury Trucking Co.*, 185 B.R. 687, 689-91.

**B.    The Harm to the ACE Companies Outweighs Any Potential Harm to the Debtors**

30.    The Debtors will suffer no harm if a stay of the permanent injunction against the ACE Companies is issued.

31.    The ACE Companies' appeal does not seek to undo the AL Claim Bar Date, which can proceed as planned even if the Requested Narrowly-Tailored Stay is granted.

32.    Accordingly, even if the ACE Companies lose on appeal (which, as discussed *infra*, the ACE Companies believe is unlikely), the Requested Narrowly-Tailored Stay will leave the Debtors no worse off.

33.    The Debtors' goal in seeking a permanent injunction against AL Claimants is to set up an argument that (a) the Bar Date Order insulates the ACE Companies from liability to the AL Claimants, and (b) therefore, the ACE Companies accordingly do not need collateral for such claims.

DM3\2970215.2

34.    Such an argument is illegitimate, as it is based on false assumptions that the ACE

Companies are oversecured and that a limitation on the scope of claims under the AL Policies

will somehow result in a return of collateral to the Debtors.

35.    In fact, the collateral secures *all* of the Debtors' obligations to the ACE

Companies, *including the obligation to reimburse the ACE Companies for payments made under*

***high-deductible workers' compensation policies***.

36.    The Debtors' reimbursement obligations under the AL Policies are just a fraction

of their obligations under the workers' compensation policies.

37.    The ACE Companies are actually presently undersecured.  Whether or not any

excess collateral may exist will be determined in  an arbitration for which a panel has not yet

even been selected.  *See* D.I. 3275 ¶¶ 6-7.

38.    Moreover, the Requested Narrowly-Tailored Stay will have no impact upon the

Debtors.  As disclosed during the status conference portion of the Hearing, the Debtors intend,

before the end of this calendar year, to transfer, abandon, or sell their remaining assets to their

fourth lien lenders.  Tr. of July 8, 2014 hearing at 12:16-13:2; 13:17-22; 15:3-8.  The Debtors

thus will be divesting themselves of their remaining assets before the end of the year.  Failure to

enter the Requested Narrowly-Tailored Stay, therefore, would have the inequitable effect of

preferring one secured creditor (the Debtors' fourth lien lenders) over another (the ACE

Companies).

39.    Similarly, the Debtors' unsecured creditors will not be affected by the Requested

Narrowly-Tailored Stay, because unsecured creditors are expected to receive nothing from the

Debtors' liquidation.  *See* Third Status Report of the Debtors and Debtors In Possession [D.I.

3275], ¶ 22 ("The Debtors believe that it is highly unlikely that they will ultimately be able to

9

pay their fourth lien secured notes in full and, thus, the Debtors anticipate that they will not have any funds available for distribution to administrative creditors whose claims are not included in the Liquidation Budget pursuant to the Winddown Order or to holders of prepetition priority claims or prepetition unsecured claims.").

40.    For the foregoing reasons, this factor also weighs heavily in favor of the ACE Companies. *See Silverman*, 330 B.R. at 95 (holding that stay requested as to only a portion of the Court's order pending appeal was appropriate where movant's risk of harm outweighed any possible harm to trustee).

### C.    There Is A Substantial Possibility That The ACE Companies Will Prevail On The Merits Of The Appeal

41.    The third factor in the four-part test requires that the movant demonstrate that there is a substantial possibility of success on the appeal. This element, however, does not require a showing that the movant most likely will succeed; rather, the movant must show "only that its arguments raise a substantial possibility, although less than a likelihood, of success." *In re Family Showtime Theatres, Inc.*, 67 B.R. 542, 552 (Bankr. E.D.N.Y. 1986). As the court in *In re Turner*, 207 B.R. 373 (B.A.P. 2d Cir. 1997) explained:

> [The movant must] demonstrate a 'substantial possibility' of success on appeal. Although those words have not been specifically defined in this Circuit, it is noteworthy that *Hirschfeld* took a middle approach between the more onerous requirement of 'likelihood of success on appeal' and the more relaxed standard of mere possibility of a successful appeal. This intermediate level between probable and possible success reflects the Court of Appeals' intent to restrict appellate review to those parties with colorable claims while at the same time conserving judicial resources by eliminating frivolous appeals.

*Id.* at 376-77 (citing *Hirschfeld*, 984 F.2d at 39).

42.    The level or degree of possibility of success on appeal will vary according to the court's assessment of the other stay factors. *Mohammed*, 309 F.3d at 101.

DM3\2970215.2

43.     In the instant case, the ACE Companies have a substantial possibility of success

on their appeal of the portion of the Order that permanently enjoins AL Claimants (who do not

file a claim by the New Bar Date) from pursing claims against the ACE Companies.

### 1.     The Law Permits AL Claimants To Recover Insurance Proceeds Without Filing A Claim In The Bankruptcy Case.

44.     It is widely held that a creditor does not need to file a claim in order to proceed

against a debtor nominally and recover from proceeds of a debtor's insurance policy.   It is also

universally held that the proceeds of a third-party liability insurance policy are not property of

the debtor's estate. *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9 (Bankr. E.D.N.Y.

1999), *aff'd* 2000 U.S. Dist. LEXIS 22005 (E.D.N.Y. Mar. 2, 2000) (an insurance policy is estate

property but policy proceeds are not); *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th

Cir. 1993); *In re Doug Baity Trucking, Inc.*, No. 04-13537, 2005 Bankr. LEXIS 1099 (Bankr.

M.D.N.C. Apr. 21, 2005).  As such, when paid by the ACE Companies, the AL Claimants are

not receiving property of the Debtors' estate.

45.     The seminal case that addresses the ability of a claimant to proceed nominally

against a debtor in order to reach the debtor's insurance coverage is *Owaski v. Jet Florida*

*Systems, Inc. (In re Jet Florida Systems, Inc.)*, 883 F.2d 970, 976 (11th Cir. 1989).  In *Jet*

*Florida*, a creditor moved to vacate a § 524(a) injunction in order to seek a judgment of liability

against the debtor on a prepetition claim and then collect liability insurance proceeds.  The

debtor argued that a creditor's failure to file a claim in the bankruptcy case bars that creditor

from proceeding with his claim to collect from insurance.

46.     On appeal, the Eleventh Circuit ruled in favor of the creditor and noted that

§ 524(a) rendered void only judgments for the "'personal liability of the debtor'" and, as such,

did "not preclude the determination of the debtor's liability upon which the damages would be

11

owed by another party, such as the debtor's liability insurer." *Jet Florida,* 883 F.2d. at 973. The

*Jet Florida* court further noted that § 524(e) permits a creditor to seek recovery from "any other

entity" who may be liable on behalf of the debtor. *Id.*

47.    The Eleventh Circuit in *Jet Florida* noted the following:

- "the goals of section 524(a) would not be advanced by preventing a plaintiff from maintaining an action against the debtor in order to establish the debtor's liability when that was a prerequisite to recovery from the insurer"
- "when an insurer is liable for the debtor's torts, this liability is 'personal' within the meaning of section 524(a)(2) only to the extent necessary to sustain recovery against the insurer, not the debtor-insured"
- "the insurer's obligation remains commensurate with the underlying insurance contract"
- "[t]he 'fresh-start' policy is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured"

*In re Jet Florida Systems, Inc.*, 883 F.2d at 974-75 (internal citations omitted).[4] *See also*

*Deutsch-Sokol v. Northside Sav. Bank (In re Deutsch-Sokol)*, 290 B.R. 27, 31 (S.D.N.Y. 2003)

("The sole purpose of a proof of claim is to allow the creditor to assert a right to participate in the

distribution of assets"); *Lopez & Median Corp. v. Marsh USA, Inc.*, No. 05-1595, 2009 U.S.

Dist. LEXIS 132047 (D.P.R. 2009) (allowing a claimant to assert a claim against the debtor's

insurer even though the claimant's proof of claim filed in the debtor's bankruptcy case was

subsequently disallowed); *In re Pettibone Corp.*, 156 B.R. 220 (Bankr. N.D. Ill. 1993) (same).

48.    As noted in the  Objection, in order for there to be some effect on the Debtors'

estate from the ACE Companies' handling of claims under the AL Policies (which were assumed

---

[4]    While the court in *Jet Florida* did note that "to allow suits of this nature to go forward could possibly have the effect of draining funds that would more properly be used in the revitalization of the reorganized corporation," as noted by this Court at the Hearing, the same is not true here.  No funds will be used in the "revitalization" of the Debtors, as the Debtors are liquidating.  Furthermore, and as discussed above, none of the Debtors' unsecured creditors will receive a distribution from the estate in any event, so there is no possibility of harm to this constituency, either.

12

by the Debtors), seven (7) separate and distinct transactions must be improperly collapsed into one. Objection [D.I. 3284], at 14-17. This collapsing is improper and undermines the Debtors' argument that the ACE Companies' handling of claims has an immediate negative impact on the Debtors. Contrary to the Debtors' argument in their Reply in support of the AL Claim Bar Date Motion, the legal realities of these separate transactions cannot be overlooked simply because the Debtors prefer to do so.

49.    Further, as to the proceeds of a letter of credit that the ACE Companies hold, collapsing these separate and distinct transactions into one also upsets the well-established independence principle that governs letters of credit both in and outside bankruptcy courts. *See In re Hechinger Inv. Co. of Del., Inc.*, No. 99-2261, 2001 Bankr. LEXIS 148 (Bankr. D. Del. Jan. 29, 2001) (noting that when a bank pays on a letter of credit, it does so from its ***own funds*** and ***not from the debtor's property***).

**2.    Bankruptcy Law Does Not Permit The Injunction Contained In The Order**

50.    Section 524(e) of the Bankruptcy Code provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e); *see also Green v. Welsh*, 956 F.2d 30 (2d Cir. 1992); *In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) ("Section 524(e), by its terms, only provides that a discharge of the debtor does not affect the liability of non-debtors on claims by third parties against them for the debt discharged in bankruptcy.") (citations omitted).

51.    The Debtors are not going to receive a discharge in this case. However, if the Bankruptcy Code precludes the insurer of a *discharged* debtor from avoiding liability to third parties, then it would be illogical and unfair to allow the insurer of a *non-discharged* debtor to escape such liability.

13

52.    Accordingly, the Bankruptcy Code expressly prohibits the injunction that is contained in the Order.

53.    To the extent that the injunction was based on § 105, this broad use of that provision was improper. *See Law v. Siegel*, --- U.S. ---, 134 S. Ct. 1188, 1194 (2014) ("Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits... We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.").

54.    Because the Order essentially discharges the ACE Companies from any liability to the AL Claimants in violation of § 524(e), § 105(a) cannot be used as a basis for reaching this result. *See Law*, 134 S. Ct. at 1194.

55.    Further, any statement that a discharge is not the same as an injunction is incorrect.  In fact, section 524(a)(2) and (3) of the Bankruptcy Code provide that "A discharge in a case under this title . . . operates an *injunction* against the commencement or continuation . . . ." (emphasis added); *see also In re Am. Hardwoods*, 885 F.2d 621, 626 (9th Cir. 1989) (noting that a discharge and an injunction are indistinguishable, because they achieve the same result); *In re W. Real Estate Fund*, 922 F.2d 592, 601-02 (10th Cir. 1990) (holding that a permanent injunction against a non-debtor is an improper discharge where it has the effect of relieving the non-debtors of its liability to debtor's creditor).

56.    Additionally, while the Second Circuit does allow, under very limited circumstances, third-party releases *as part of a debtor's plan of reorganization*, none of the strict and unusual prerequisites for grant of a third-party release were found, or even addressed, in this case. *See Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re*

14

*Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. N.Y. 2005) (noting that nondebtor releases may be appropriate where such releases are necessary for the debtor's reorganization, but that "[n]o case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique").

57.    Importantly, the Debtors in this case *are not* reorganizing, and so there can be no argument that any release or injunction is necessary for such reorganization.

58.    Accordingly, the ACE Companies are likely to prevail on appeal because the injunction contained in the Order contravenes the provisions of the Bankruptcy Code.

### 3.    State Law Required The Debtors To Procure The AL Polices, and State Law Requires The ACE Companies To Handle And Pay Claims Arising Under Those Policies.

59.    Every state mandates that all vehicle owners procure and maintain liability insurance for injury to persons and property. *See, e.g.*, N.Y. Veh. & Tr. Law § 312 (2014); Exhibit A, column 5.

60.    The Order permanently enjoining AL Claimants from pursing their claims against ACE effectively nullifies these statutes in violation of state and federal law.

61.    As discussed in detail in Section A, *supra*, state laws also obligate the ACE Companies to handle and pay valid claims, notwithstanding the bankruptcy of the insured.

62.    Accordingly, the permanent injunction against the ACE Companies should not have been included in the Order. *See generally, Saravia v. 1736 18th Street, N.W., Ltd. P'ship*, 844 F.2d 823, 827 (D.C. Cir. 1988) (finding that the bankruptcy policy of fostering the rehabilitation of debtors does not "serve to preempt otherwise applicable state laws dealing with public safety and welfare").

63.    For all of the foregoing reasons, the ACE Companies are likely to succeed on the merits of their appeal, the third factor also weighs in favor of granting a stay pending appeal.

DM3\2970215.2

**D.    The Public Interest Supports Granting A Stay**

64.    The Requested Narrowly-Tailored Stay will not delay the administration of the Debtors' liquidation, nor will it harm any parties-in-interest to the bankruptcy case, or harm the public interest.

65.    In fact, the requested stay is favored by the public interest, as it will protect the interest of parties with valid Potential Claims and the interests of the legislative and regulatory bodies that have mandated the procurement and maintenance of the liability coverage that is provided by the AL Policies.    *See, e.g.*, *In re Traylor*, 94 B.R. 292 (Bankr. E.D.N.Y. 1989) ("[I]t would not be in accordance with sound public policy to deem a discharge in bankruptcy as releasing an insurance company from liability under a policy which the law requires every automobile driver to carry for the protection of the public.").

66.    Because the stay will not negatively impact the Debtors' bankruptcy proceedings, and will not otherwise harm, and in fact will benefit, the public interest of having valid insured claims properly paid, granting the Requested Narrowly-Tailored Stay is in the public interest. *Silverman*, 330 B.R. at 95 (holding that because the proceeds of the order appealed from would not be distributed to creditors, the public interest in the efficient administration of a bankruptcy case did not outweigh the movant's interest in a stay pending appeal).

67.    Accordingly, this factor, as well, weighs in favor of granting the ACE Companies' Requested Narrowly-Tailored Stay.

## CONCLUSION

68.    Based on the foregoing analysis, all four factors considered by the Second Circuit in determining whether a stay pending appeal is appropriate weigh in favor of granting the ACE Companies' Requested Narrowly-Tailored Stay.

16

**NOTICE**

69.     Notice of this Motion has been given to (a) the Debtors; (b) the U.S. Trustee; and

(c) all parties requesting notice through the Court's electronic filing system.  The ACE

Companies submit that no other or further notice need be provided.

**NO PRIOR REQUEST**

70.     No prior request for the relief sought in this Stay Motion has been made to this or

any other Court.

WHEREFORE, the ACE Companies respectfully request that the Court: (i) enter an order

in substantially the form attached hereto as Exhibit "C", granting the relief requested herein; and

(ii) grant such other and further relief as the Court may deem proper.

Dated: July 29, 2014

Respectfully submitted,

DUANE MORRIS LLP

By: _/s/ Wendy M. Simkulak_
    Wendy M. Simkulak, Esquire
    1540 Broadway, 14th Floor
    New York, NY 10036-4086
    Telephone: (212) 692-1000

and

Lewis R. Olshin, Esquire (admitted *pro hac vice*)
Catherine B. Heitzenrater, Esq. (PA 205597)
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000

*Counsel for the ACE Companies*